**E-FILED**
Friday, 09 May, 2008  04:54:19 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| PATSY MESTER, EVERETT LINGLEO, | ) | |
| TERRY DAVIS and RICHARD HAYNES, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.  08-3080 |
| | ) | |
| JAKE RETTBERG, JUDY BIVIN, | ) | |
| RONALD JOMBOCK, ALLEN BUTCHER, | ) | |
| FRANK MAYNERICH, TODD HATALLA, | ) | |
| GARY WHITSON and MICHAEL | ) | |
| McCARTHY, Individually and as Board | ) | |
| members of the Otter Lake Water Commission, | ) | |
| OTTER LAKE WATER COMMISSION, | ) | |
| ADGPTV, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS THE COMPLAINT**

Defendants, Otter Lake Water Commission, ADGPTV, and E. Jacob Rettberg, Judi Bivin, Ronald Jombock, O. Allen Butcher, Frank Maynerich, M. Todd Hatalla, Garry Whitson and Michael McCarthy, by their attorney, John M. Myers, respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and state as follows:

**FACTS**

The Complaint in this matter comprises two counts.  The allegations of the Complaint, of course, must be taken as true.  They are as follows.

In the Allegations Common to All Counts, the Plaintiffs allege that the Defendant, Otter Lake Water Commission, ADGPTV, is a municipal corporation providing water services to multiple counties in the State of Illinois (Complaint, ¶1). The individual Defendants, Rettberg, Bivin, Jombock, Butcher, Maynerich, Hatalla, Whitson and McCarthy are members of the Board of the Commission. (Complaint, ¶2). The individual Defendants are sued both in their individual and official capacities.

The Commission has, over the last 30 years, leased lots in a campground at Otter Lake to various individuals who include the Plaintiffs. Plaintiffs are currently tenants at Otter Lake. Pursuant to their leases, the Plaintiffs have placed camping vehicles on the campsites. (Complaint, ¶4).

The Plaintiffs were "permitted and encouraged" by unspecified "vendors" and by the Commission to improve campground lots with decks, landscaping, walkways and other improvements, and the Plaintiffs were permitted to stay on a particular lot for many consecutive years. (Complaint, ¶8). The improvements were made with permission and encouragement of the Commission and were made in order to adhere to ordinances of the Commission. This costs the Plaintiffs "in cash and time". (Complaint, ¶9).

The improvements are attached to the real estate and are not easily removed. Prior to June 20, 2007, Plaintiffs bought and sold trailers and improvements on the open market and assigned or sublet leases with the full knowledge and acquiescence and encouragement of the Commission. (Complaint, ¶11). As a result, the Plaintiffs believed they had a reasonable expectation of reaping a reasonable return on their investment in the improvements on and to the lots. (Complaint, ¶12).

Because the "current vendor's lease was scheduled to terminate in 2007", the Commission announced that it would be taking over the operations of the campground. On June 20, 2007, the Commission adopted Ordinance No. 2007-02, and the individual Defendants all voted in favor of the measure. (Complaint, ¶¶13-14).

The Complaint quotes only section of Ordinance No. 2007-02, Section 7(M):

M.    Campsite leases are not assignable, nor may a tenant sublet all or any portion of a Campsite. In no event shall a tenant transfer title to a Permitted Camping Vehicle to a third party while it is on Campsite. However, a tenant may remove and replace the Permitted Camping Vehicle at any time, so long as the tenant produces evidence of ownership of the replacement vehicle prior to placing it on the Campsite.

(Complaint, ¶15).

The remainder of Ordinance No. 2007-02 is not attached to the Complaint, but a complete copy of the Ordinance is attached to this Memorandum of Law as Exhibit A, together with a copy of its precursor ordinance, Ordinance No. 2001-01, which is attached as Exhibit B.[1] Due to Ordinance No. 2007-02, Plaintiffs allege, "much, if not all of the value of the trailer and the modifications and improvements were destroyed." (Complaint, ¶17).

In Count I of the Complaint, the Plaintiffs contend that in adopting Ordinance No. 2007-02, the Commission and its individual members violated the Fifth and Fourteenth

---

[1] This court may take judicial notice of a matter of public record without converting a 12(b)(6) motion into a motion for summary judgment. *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1996). The Court may also take judicial notice of an ordinance. *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977). As will be discussed below in the argument section, these two Ordinances control the viability of many of the Plaintiffs' claims in this matter

Amendments of the Constitution of the United States, Article I, Section 15 of the Illinois Constitution and 42 U.S.C. 1983 by subjecting "the Plaintiffs to deprivation of their constitutional rights by taking, damaging and destroying the Plaintiffs' personal property and expectation of return on investment without just compensation." (Complaint, Count I, ¶28).   Count I seeks a declaration that Ordinance 2007-02 is null and void, an injunction precluding the Defendants from enforcing the Ordinance and, in the alternative, damages to be proven at trial.

Count II is a State Law inverse condemnation/regulatory taking count claiming that the private property of the Plaintiffs has been "effectively taken for public use" but that the Commission has "failed to commence eminent domain proceedings, or offer compensation to the Plaintiffs" in violation of 735 ILCS 30/10-5-5.   Count II also says that the value of the Plaintiffs' property has been "effectively destroyed and the property is now unsuitable for economically viable purposes." (Complaint, Count II, ¶32).  Count II seeks the same relief as Count I.

The Defendants have filed a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Complaint.  This Memorandum is in support of that motion.

## **ARGUMENT**

**1.      A Civil Rights Lawsuit Against the Individual Defendants is Barred by Absolute Immunity because Ordinance No. 2007-02 is a Legislative Act**

### A.      A Water Commission Legislates by Adopting Ordinances.

A water commission such as Defendant Otter Lake Water Commission, ADGPTV, is a creature of state law governed by Division 135 of Article 11 of the Illinois Municipal Code, 65 ILCS 5/11-135-1, *et seq.* ("Division 135"). Division 135 water commissions are established to provide a joint source of water supply for the municipalities which are members thereof, as well as other retail customers in unincorporated areas of the county. Water commissions are defined as "public corporation[s]" in Section 2 of Division 135, 65 ILCS 5/11-135-2. The Commissioners—that is, the individual defendants in this matter—are appointed by the Presidents and Boards of Trustees of the member municipalities (here, Auburn, Divernon, Girard, Pawnee, Thayer, Virden and Nilwood) with one Commissioner appointed by the County Board of the county ( here, Macoupin) in which the commission is located. *Id.*

A commission not only has broad powers to manage a common source of water supply for the member municipalities, but in addition, it has the power "to develop, promote and provide for recreational facilities on property acquired in and for the operation of its common source of supply of water and to include reasonable charges for such recreational facilities as part of the cost of operation and maintenance of the water works system." It is the recreational facilities, the campground at Otter Lake, and the Commission's power to govern the recreational facilities, which are at issue in this case.

Water commissions, in short, are municipal corporations. See, e.g., *Jones v. Willow Springs*, 240 Ill.App.3d 245 (4th Dist. 1994); *Northwest Water Commission v. Carlos v. Santucci, Inc.,* 162 Ill.App.3d 877 (1st Dist. 1987). Water commissions have

legislative powers within their sphere of operations, and they exercise that power by enacting ordinances.

For example, the power to condemn real property is exercised by the passage of an ordinance, as provided in Section 6 of Division 135, 65 ILCS 5/11-135-6.  Similarly, Section 5 of Division 135, 65 ILCS 5/11-135-5, states that the commission "may determine by ordinance" charges and rates for water.  Section 4 provides for ordinances or resolutions authorizing bonds to finance improvements of the commission's water supply system.

Section 3 of Division 135, 65 ILCS 5/11-135-5, provides that a commission "has full and complete supervision, management and control of the waterworks system, or the common source of supply of water, or both, as provided in the ordinances or resolutions for acquiring and operating the same."  The Ordinances at issue in this case were adopted pursuant to the grant of power in Section 3.

A water commission's power to enact ordinances was recognized by the Illinois Supreme Court in *People ex rel. Bower v. Elmhurst-Villa Park-Lombard Water Commission*, 20 Ill.2d 139 (1960).

By definition, enactment of an ordinance is a legislative act.  *Ashley Libertyville, LLC v. Village of Libertyville*, 2008 Ill.App.Lexis 9 (2d Dist. 2008); *Hawthorne v. Village of Olympia Fields*, 204 Ill.2d 243, 253 (2003).

In sum, in enacting the ordinance challenged here, Ordinance No. 2007-02, the Commission and its Commissioners unquestionably engaged in a legislative act.

B.     Legislators are Absolutely Immune From Civil Rights Lawsuits
       for their Legislative Acts

Local legislators are entitled to absolute immunity from civil liability from Federal civil rights suits arising from their legislative acts.  *Bogen v. Scott-Harris*, 523 U.S. 44 (1988);  *Ira Iglesia de la Biblia Abierta v. Banks*, 129 F.3d 99 (7th Cir. 1997); *Cathy's Tap, Inc. v. Village of Mapleton*, 65 F.Supp.2d 874 (C.D. Ill., 1999).  As this Court held in *Cathy's Tap*, "absolute immunity afforded to legislators includes immunity for damages, declaratory and injunctive relief."  Moreover, as is clear from *Cathy's Tap*, the defense of absolute immunity may be brought to this Court's attention via a Rule 12(b)(6) motion.

The sole acts of the individual Commissioner Defendants in this matter are the legislative act of adopting Ordinance 2007-02.  Therefore, these Defendants must be dismissed from the case with prejudice.

**2.     Count I Fails to State a Claim Under 42 U.S.C. §1983 Because There Is No Property Right At Issue Here**

In Count I, the Plaintiffs contend that their private property has been taken or damaged for public use without just compensation (a) in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States; and (b) in violation of Article I, Section 15 of the Illinois Constitution.

The second of these contentions can be disposed of with little discussion, for Section 1983 provides no remedy for State constitutional violations.  Thus, as the Court said in *Swick v. Chicago*, 1992 U.S. Dist. Lexis 15578 (N.D. Ill., 1992) "Swick asserts in a single sentence that Defendants have not challenged §1983 claims based on the Illinois

Constitution.  We need not address this issue, however, because §1983 provides a remedy for violations of Federal, not State, rights.  See, *Jackson v. Byrne*, 738 F.2d 1443, 1445 (7th Cir. 1984)."  Similarly, in *Whitmore v. Board of Education of Dekalb Community School District No. 248*, 1992 U.S. Dist. Lexis 4688 (N.D. Ill. 1992), the court said, "Claims under §1983 must be based on deprivations of rights secured by the Federal Constitution or Federal laws.  *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Tavarez v. O'Malley*, 826 F.2d 671, 677 (7th Cir. 1987)."

Turning to first contention, the deprivation alleged under the Fifth Amendment of the United States Constitution, it is essential that the Plaintiffs allege deprivation of a "recognized liberty or property interest".  *Anspach v. City of Philadelphia*, 503 F.3d 256, 262 (3rd Cir. 2007); *Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005); *Carpenter Outdoor Advertising Company v. City of Fenton*, 251 F.3d 686, 689 (8th Cir. 2001).

This the Complaint does not do.  The only property interest alleged by the Plaintiffs is in permanent improvements to the Commission's property made over the years by the Plaintiffs pursuant to a series of leases.  But such a property interest does not exist under state law, being precluded both by Illinois landlord-tenant law and by the ordinances of the Commission.

*A Tenant Has No Property Rights in Improvements*
 *to the Landlord's Property*

Under Illinois law, a tenant has no right to a permanent improvement to the landlord's property.  As the Appellate Court said many years ago in *Seiberling v. Miller*, 106 Ill. App. 190 (2d Dist. 1902) "All improvements of a permanent character placed

upon land, designed for its better enjoyment, are deemed a part of the land." More recently, the Appellate Court summarized the law in *Nokomis Quarry Company v. Dietl*, 333 Ill.App.3d 480, 484, (5th Dist. 2002) as follows:

> In Illinois, a fixture is real property that is incorporated into or attached to realty. *A & A Market, Inc. v. Pekin Insurance Co.*, 306 Ill. App. 3d 485, 488, (1999). **A fixture is deemed a part of the real estate and therefore cannot be removed by a tenant without incurring liability. Whether something is a fixture rather than a piece of personal property depends upon the nature of its attachment to the real estate, its adaptation to and necessity for the purpose for which the premises are devoted, and whether or not it was intended that the item should be considered to be a part of the realty.** *Harrisburg Community Unit School District No. 3 v. Steapleton,* 195 Ill. App. 3d 1020 (1990). Intent is the critical factor to be considered in determining whether the item is a fixture or personal property. *Harrisburg Community Unit School District No. 3,* 195 Ill. App. 3d at 1024, 553 N.E.2d at 79. The intent at issue is the intent to permanently improve real estate. *B. Kreisman & Co. v. First Arlington National Bank of Arlington Heights,* 91 Ill. App. 3d 847, 852-53, 415 N.E.2d 1070, 1074-75, 47 Ill. Dec. 757 (1980).  (emphasis added).

Paragraph 10 of the Complaint states that the improvements at issue are "attached to the real estate." Taking this allegation as true, then the improvements are fixtures and become the property of the landlord upon the termination or expiration of the Plaintiffs' leases.

The Complaint admits in paragraph 4 that the Plaintiffs are currently tenants of the Commission. Hence, as far as can be gleaned from the Complaint, their leases have neither expired nor been terminated.[2] Accordingly, there has as yet been no deprivation of a property right because the Plaintiffs are entitled to possess their campsites with the improvements intact. But had these leases had expired or had they been terminated, then

---

[2] Actually, all four Plaintiffs have entered into brand new leases good through October, 2008. But this is a matter outside the Complaint, to be proved another day.

there would have been no deprivation of property right, because there is no property right in a permanent improvement.

*Plaintiffs Have No Right to Permanent Improvements Pursuant to Commission Ordinances.*

In any event, in stating that the improvements at issue here are permanent, the Plaintiffs admit that they have acted contrary to law in making permanent improvements in the first place. Paragraph 7 of the Complaint makes reference to "previously passed ordinances" which have "included compliance requirements for each campsite" which "often mandate that campers make modifications and/or improvements to their lots." A copy of Ordinance 2001-01, the precursor ordinance to Ordinance 2007-02, is attached hereto as Exhibit B. This ordinance is the selfsame "previously passed ordinance" referred to in paragraph 7 of the Complaint.

Section 13E.4 of Ordinance No. 2001-01 provides:

Roofs, decks and antennas may be constructed to Commission specifications (See Exhibit A). Fixtures including, but is [sic] not limited to concrete patios, fences, trailers skirting, oil drum stands, clotheslines, television towers and the like are not permitted. No stairs, steps or sidewalks, etc. shall be excavated, cut into, protruding or disturbing the existing soil.

Section 19 of Ordinance No. 2001-01 governed nonconforming structures in the campsite. It grandfathered in existing nonconforming structures and provided an amortization period of seven years, stating: "All nonconforming structures shall be removed in any event on or before January 1, 2008."

The combined effect of Sections 13E.4 and 19 of Ordinance No. 2001-01 are that permanent fixtures are not allowed, and any that existed in 2001 had to be amortized over a seven-year period.

The Complaint does not state whether the Plaintiffs' improvements were constructed after the effective date of Ordinance No. 2001-01 or before. But assuming they were constructed before Ordinance No. 2001-01, the 7-year amortization period in Ordinance No. 2001-01 fully comports with Illinois law. Illinois courts have consistently upheld even the destruction of property rights pursuant to a regulatory ordinance so long as there is a reasonable amortization period to give people a chance to recoup their investments. For example, in the *Village of Skokie v. Walton on Dempster*, 119 Ill.App.3d 299 (1st Dist. 1983), the Appellate Court considered an ordinance requiring removal of billboards over a period from 2 to 7 years, varying with the original cost of the sign. The Appellate Court upheld the ordinance, stating:

> We find the amortization schedule embodied in plaintiff's sign ordinance to be reasonable both on its face and as applied to defendant. In *Village of Gurnee v. Miller* (1966), 69 Ill. App. 2d 248, we upheld the validity of an amortization period of 36 months for discontinuance of a nonconforming use of property.

> Amortization periods similar to the provisions here at issue have been upheld in other jurisdictions. For example in *Modjeska Sign Studios, Inc. v. Berle* (1977), 43 N.Y.2d 468, appeal dismissed (1978), 439 U.S. 809, the New York Court of Appeals upheld an ordinance which required the removal of all billboards within seven years. In *Metromedia, Inc. v. City of San Diego* (1980), 26 Cal. 3d 848 rev'd on other grounds (1981), 453 U.S. 490, the California Supreme Court upheld an amortization schedule which required removal of billboards within one to four years based on the adjusted market value of the sign. The court stated "that a one-year amortization period was unreasonable except as to signs which had been fully depreciated for federal income tax purposes." 26 Cal. 3d 848, 883.

To the extent these Plaintiffs made permanent improvements to real property after the passage of Ordinance No. 2001-01, they violated the ordinance.

To the extent these Plaintiffs may have purchased a preexisting nonconforming improvement, they took the improvement subject to the amortization period expiring on January 1, 2008.

Whatever the relevant chronology, there is no "recognized liberty or property interest" at stake for §1983 purposes, and the Complaint fails to state a claim upon which relief may be granted.

### 3. Count II Fails to State a Claim for Inverse Condemnation/Regulatory Taking

For similar reasons, Count II fails to state a claim upon which relief can be granted for inverse condemnation and regulatory taking. First, the individual Commissioners must be dismissed, because while Illinois law allows a unit of government to be the defendant in a regulatory taking action, there is no authority to name individual members of the corporate authority. *Pelfresne v. Village of Lindenhurst*, 2004 U.S. Dist. Lexis 14176 at 34 (N.D. Ill. No. 03 C 6905, 2004)).

Count II should be dismissed for yet another reason, however—it alleges neither a physical invasion nor the destruction of the value of the Plaintiffs' property.

In *Stahelin v. The Forest Preserve District of DuPage County*, 376 Ill.App.3d 765, 771 (2d Dist. 2007), the Illinois Appellate Court summarized the law of inverse condemnation and regulatory takings in three succinct paragraphs, as follows:

An inverse condemnation action is a proceeding by a landowner against a responsible government entity to compel the institution of eminent domain proceedings where there has been a taking without just compensation. *Luperini v. County of Du Page*, 265 Ill. App. 3d 84, 89 (1994). The takings clause of the fifth amendment provides that private property shall not "be taken for   public use, without just compensation." U.S. Const., amend. V. The takings clause is made applicable to the states through the fourteenth amendment. *Chicago, Burlington & Quincy R.R. Co. v. Chicago*, 166 U.S. 226 (1897).

"A governmental taking of private property for public use can occur in different ways." *Forest Preserve District of Du Page County v. West Suburban Bank,* 161 Ill. 2d 448, 456, (1994). One manner of taking occurs when there is an actual physical invasion by the government onto an individual's property. Where there is even the slightest physical intrusion onto the property by the government, and despite any legitimate public purpose, a taking requiring just compensation has occurred. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015, (1992).

A second manner of taking property occurs where governmental regulation radically curtails a property owner's rights such that "all economically beneficial or productive use of land" is denied. *Lucas*, 505 U.S. at 1015.   Under this standard, only the most severe governmental regulation  amounts to a taking requiring  just compensation. The Supreme Court has recognized that governmental regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster, and such "regulatory takings" may be compensable under the fifth amendment. *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922).

The *Stahelin* Court also stated that a "land use regulation does not constitute a taking if it substantially advances legitimate State interest and does not deny any owner economically viable use of its land."

While the Complaint here *says* that the value of Plaintiffs' property has been "effectively destroyed" (Complaint, Count II, ¶32), the Court is not bound by such a characterization.  As the *Stahelin* court said, "We need not accept as true Plaintiffs' subjective description of the ordinances' effects upon them.  We need determine only

whether the ordinances' regulation of Plaintiffs' property is tantamount to direct appropriation or ouster."

From the discussion above pertaining to §1983, it is readily apparent that there has been no property right taken here, for the simple reason that the Plaintiffs have no right in any permanent improvement either under the common law of Illinois or pursuant to Ordinance No. 2001-01.

But assuming there were property rights in permanent improvements, or assuming that Plaintiffs have property rights in temporary improvements, Ordinance No. 2007-02 simply does not amount to a "direct appropriation or ouster" of such rights. Rather, Section 5B of Ordinance No. 2007-02 contemplates that these Plaintiffs will be able to *renew* their campsite leases year after year so long as they are in compliance with Ordinance No. 2007-02 and have not breached their leases in the previous season.

Indeed, Paragraph 4 of the Complaint admits that the Plaintiffs have *not* been ousted from these campsites by saying that as of the filing date of the Complaint, March 3, 2008, the Plaintiffs "are tenants at Otter Lake." Nor does the Complaint say anywhere that any Plaintiff has been forced to remove any trailer or any other property from the Otter Lake Campground. Any characterization of such a state of affairs as a "direct appropriation or ouster" or "denial of economically viable use" of the Plaintiffs' trailers and improvements, is manifestly untrue. The Court need not "accept as true Plaintiffs' subjective description of the ordinances' effects upon them" when such a description is patently unsupported by the other facts stated in the Complaint and rebutted by the ordinance attached to this memorandum.

### **CONCLUSION**

In conclusion, the Complaint and both Counts thereof must be dismissed for

failure to state a claim upon which relief can be granted.

Respectfully submitted,

E. JACOB RETTBERG, JUDI BIVIN,
RONALD JOMBOCK, O. ALLEN BUTCHER,
FRANK MAYNERICH, M. TODD
HATALLA, GARRY WHITSON and
MICHAEL McCARTHY, Individually and as
Board members of the Otter Lake Water
Commission, OTTER LAKE WATER
COMMISSION, ADGPTV,

Defendants,

By:    /s/  John M. Myers_____
One of Their Attorneys

John M. Myers
Rabin, Myers & Hanken, P.C.
1300 South Eighth St.
Springfield, IL 62703
217.544.5000
217.544.5017 (fax)
jmyers@springfieldlaw.com

E-FILED
Friday, 09 May, 2008  04:55:26 PM
Clerk, U.S. District Court, ILCD

# OTTER LAKE WATER COMMISSION, ADGPTV

---

## ORDINANCE NO. 2007- 02

# AN ORDINANCE PERTAINING TO THE CAMPGROUND AT OTTER LAKE, MACOUPIN COUNTY, ILLINOIS

---

ADOPTED BY THE OTTER LAKE WATER COMMISSION

THIS __28th__ DAY OF __June__, 2007

---

Published in pamphlet form by the authority of the Otter Lake Water Commission, ADGPTV, this __28th__ day of __June__, 2007.

EXHIBIT
A

Ordinance No. 2007- 0 2

## AN ORDINANCE PERTAINING TO THE CAMPGROUND AT OTTER LAKE, MACOUPIN COUNTY, ILLINOIS

*BE IT ORDAINED BY THE OTTER LAKE WATER COMMISSION, ADGPTV, AS FOLLOWS:*

### SECTION 1  DEFINITIONS:

A.     As used herein, "Commission" refers to the Otter Lake Water Commission, ADGPTV, a public corporation of Illinois.

B.     As used herein, "Otter Lake" and "Lake" refers to that certain lake owned by the Commission in Macoupin County, Illinois, as a source of public water supply, known as Otter Lake. "Otter Lake Area" refers to Otter Lake and the lands owned by the Commission surrounding Otter Lake, including but not limited to boat docks, parking lots and campgrounds.

C.     As used herein, "General Manager" refers to the general manager of the Commission. "Manager" refers to the person or persons designated by the Commission to manage the Otter Lake Area. "Patrol Officer" is an enforcement officer designated by Commission.

D.     "Campground" is the designated camping area in the Otter Lake Area.

E.     "Campsite" is a designated sub-area in the Campground with a separate electrical hookup.

F.     "Permitted Camping Vehicle" includes and is limited to the following categories of vehicles, which shall have current and valid titles issued by the Illinois Secretary of State.

1.     A camping trailer, defined by Section 1-109.01 of the Illinois Motor Vehicle Code as follows: A trailer, not used commercially, constructed with partial side walls which fold for towing and unfold to provide temporary living quarters for recreational camping or travel use and of a size or weight not requiring an overdimension permit when towed on a highway.

2.    A travel trailer, defined by Section 1-210.01 of the Illinois Motor Vehicle Code as follows: A trailer, not used commercially, designed to provide living quarters for recreational, camping or travel use, and of a size or weight not requiring an overdimension permit when towed on a highway.

3.    A motor home, mini motor home or van camper, defined by Section 1-145.01 of the Illinois Municipal Code as follows: A self-contained motor vehicle, not used commercially, designed or permanently converted to provide living quarters for recreational, camping or travel use, with direct walk through access to the living quarters from the driver's seat. Such vehicles must include at least four of the following:

a) A cooking facility with an on-board fuel source;

b) A gas or electric refrigerator;

c) A toilet with exterior evacuation;

d) A heating or air conditioning system with an on-board power or fuel source separate from the vehicle engine;

e) A potable water supply system that includes at least a sink, a faucet, and a water tank with an exterior service supply connection;

f) A 110-125 volt electric power supply.

Provided, however, that "Permitted Camping Vehicle" does not include any vehicle exceeding 35 feet in length; nor does it include any vehicle from which wheels have been removed, or, in the case of a trailer, the tongue has been removed; nor does it include a manufactured home as defined in the National Manufactured Housing Construction and Safety Standards Act of 1974; nor does it include a converted school bus, mobile home, or homemade

- 2 -

vehicle. The Manager or General Manager's determination of whether or not a vehicle is a Permitted Camping Vehicle is final, subject only to appeal to the full Commission at its next regularly scheduled meeting after the determination is made.

**SECTION 2**    **APPLICABILITY**

This Ordinance governs the operation of the Campground and supplements the regulations contained in Ordinance No. 2007-03, "An Ordinance Regulating Recreational Activities In And Around Otter Lake, Macoupin County, Illinois."

**SECTION 3**    **CAMPING REGULATIONS: GENERAL PROVISION**

A.    Camping is prohibited on Commission property except in the Campground and pursuant to a Camping Permit issued by the Manager or pursuant to a seasonal Campsite Lease executed by the Manager or General Manager.

B.    Any person who camps on Commission property in violation of subsection A is a trespasser.

**SECTION 4**    **CAMPING PERMITS**

A.    The Manager shall issue a Camping Permit upon application and payment of a fee by an individual or group. Each Camping Permit shall pertain to a designated Campsite and will be for a specific duration. Camping Permits shall be issued by the Manager only to a person over the age of 18, who shall have responsibility for supervising the conduct of all persons in his or her party under the age of 18. Camping Permits shall be issued on a first-come, first-served basis, except that preference for camping permits will be given to local Boy Scouts, Girl Scouts and other youth organizations.

- 3 -

B.      Fees for a Camping Permit are as set forth in Ordinance No. 2007-_04_ , "An Ordinance Establishing Fees and Charges within the Otter Lake Area", as amended from time to time (the "Fee Ordinance").

C.      A Camping Permit is a revocable license for the permittee and the other members of the permitee's party to use a Campsite in accordance with this Ordinance.  In the event a Camping Permit is revoked, the fees are nonrefundable.

D.      No person whose Camping Permit has been revoked may receive another Camping Permit in the same camping season.

### SECTION 5          SEASONAL CAMPSITE LEASES

A.      Except as set forth in subparagraph B, Seasonal Campsite Leases are executed by the Manager on behalf of the Commission on a first come, first-served basis.  The Manager will maintain a waiting list in such form and such manner as is prescribed by the Commission.

B.      In any season, the Manager may elect not to lease any particular Campsite in the exercise of his or her discretion.  However, whenever the Manger elects to lease a Campsite, then the tenant of such Campsite during the previous season shall have the right to renew the lease for the current season at the current fees established by the Fee Ordinance, so long as the tenant is in compliance with this Ordinance and has not breached the lease in the previous season..

C.      Fees for seasonal Campsite Leases are as set forth in the Fee Ordinance.

D.      After January 1, 2008, the Commission shall not enter into or renew any Campsite Lease for any Campsite not in compliance with Section 6C of this Ordinance.

**SECTION 6        CAMPSITE RULES AND REGULATIONS**

All persons using the Campsite, whether by permit or pursuant to a Seasonal Campsite Lease, shall comply with the following regulations.

A.    The following vehicles may occupy a Campsite:

1.    Permitted Camping Vehicles

2.    An automobile which has towed a Permitted Camping Vehicle, if the Permitted Camping Vehicle is a trailer;

3.    Subject to Section 7, an automobile belonging to a guest of a person with a Seasonal Campsite Lease.

B.    The campsite includes the area within 12 feet of the Permitted Camping Vehicle in all directions or one-half the distance to the next camper, whichever is smaller, and shall not include any area within 15 feet of the Otter Lake shoreline.  (This 15 foot area along the shoreline is useable by anyone.)

C.    Roofs, decks, and antennas may be constructed to Commission standards set forth in Exhibit A.  No concrete patios, decks, fences, awnings, trailer skirts, oil drum stands, clotheslines, television towers or similar fixtures are permitted.  No person shall excavate or disturb the soil to construct or maintain any stairs, steps, sidewalks, or similar features.

D.    All trash and refuse shall be placed in plastic bags, and then in covered trash barrels provided by the Commission

E.    No waste water may be dumped into or onto the ground or Lake.

F.    Sewage generated within a Permitted Camping Vehicle must be held in the

-5-

Permitted Camping Vehicle and may be dumped at the dump station provided.

G.    No sanitary waste hose or pipe shall extend from the Permitted Camping Vehicle into the ground at any time.

H.    No gravel pit and dry well connections are allowed.

I.    Campsites shall be maintained in a clean and sanitary manner.

J.    No person shall bring or allow horses, cattle, livestock or domestic pets in the Campground, except that cats and dogs are allowed within a Permitted Camping Vehicle or on a leash no more than 10 feet in length that prevents the animal from crossing the boundary of the Campsite. Cats and dogs that bark, cry or otherwise disturb other campers are not allowed.

K.    All visitors to the campground must leave their cars in designated parking areas. Visitors shall leave camping areas by 11:00 p.m.

L.    The camping season is from March 1 to November 30, weather permitting, unless changed by the Commission. No camping will be allowed except during the camping season.

M.    The Manager shall designate a boat and trailer storage area for use by campers, and shall charge a storage fee which will be established from time to time by the Commission. No storage of boats and trailers is permitted other than in this designated area. Boats and trailers may be brought into the camping area by campers on a temporary basis, but must be attended at all times and shall be removed to the storage area by sunset.

N.    Electrical hookups are available at campsites, and will be billed separately by the Commission.

O.    Fires shall be confined to fireplaces, grills and other facilities designed for and

-6-

designated by the Commission.  Fires shall be attended at all times by a responsible person over 16 years of age.

P.    Wildlife or soil conservation projects, tree cutting or removal of vegetation, or other similar activity shall have the prior approval of the Commission before being started. Completion of approved conservation projects shall be reason for awarding preference upon re-application for future camping permits.

Q.    No person shall deliberately or negligently destroy, deface, damage, impair or remove any part of the Campsite, or related facilities (including but not limited to rest rooms, shower facilities, other common areas); Otter Lake, its shoreline, wildlife (except for permitted fishing), trees or other vegetation other than grass on the Campsite, which shall be kept mowed, or water treatment facilities, or any other Commission property, or knowingly permit any guest to do so.

### SECTION 7          SEASONAL CAMPSITE LEASES

The following regulations shall govern Seasonal Campsite Leases.

A.    As used in this Section, the term "tenant" refers to a single individual, or two adult individuals sharing a single household.  The Manager may require a prospective tenant to produce photoidentification, and may require proof that two individuals share a single household.

B.    Seasonal Campsite Leases will be on a form prescribed by the General Manager and shall allow the tenant to place on the campsite a single Permitted Camping Vehicle owned by the Lessee and specifically identified by its VIN in the lease.  The tenant may use the Permitted Camping Vehicle, the campsite, and the facilities of the Campground for recreational purposes

-7-

only. Up to 2 automobiles belonging to the tenant and the Permitted Camping Vehicle may be parked on the Campsite, but only when the tenant is present, but only so long as the automobiles and Permitted Camping Vehicle do not interfere with use by others of the campground and roads.

C.    The tenant's guests have a revocable license from the Commission to use the Campground in accordance with the regulations of this Ordinance.

D.    Tenant's guests may park automobiles at the Campsite only when the tenant is present, and only if the automobiles do not interfere with use by others of the campground and roads. The tenant's and tenant's guests' automobiles shall be registered with the Park Office.

E.    Rent shall be as set forth in the Fee Ordinance, payable in advance in two equal installments on November 1, or the date of execution of the lease, and May 1. Rent shall be paid to the Manager at the Park Office or may be mailed to Otter Lake Water Commission, P.O. Box 468, Virden IL 62690. There will be no prorations of rent.

F.    For an additional fee as set forth in the Fee Ordinance and paid by November 1, a tenant may store the Permitted Camping Vehicle on the Campsite from December 1 of the year of this lease through and including the end of February of the following year. For an additional fee as set forth in the Fee Ordinance, paid not later than the due date of the second installment, a tenant may have a boat dock of approved design and location with the Campsite during the term of this lease.

G.    Potable water is included as part of the rent. Garbage services for the Campsite, are included in the rent and shall consist of the availability of dumpsters, The Commission shall provide electric services, which shall be metered and charged to the tenant from time to time in

-8-

separate bills in an amount prescribed by the Fee Ordinance, and shall be payable within 30 days of mailing or delivery.

H.    Along with the first installment of rent, the tenant shall pay a security deposit as prescribed by the Fee Ordinance for electric service which shall be returned without interest to the tenant after the tenant has vacated the Campsite, provided that the Tenant has paid all electric charges in full. If the tenant leases the Campsite for successive and additional terms, the Commission shall apply the deposit to the subsequent term, provided all bills are then current.

I.    The legal occupants of the Campsite shall be limited to the tenant and the tenant's guests. The tenant's guests shall be accompanied by the tenant at all times. Guests shall abide by this Ordinance and the Recreation Ordinance, and their failure to do so shall be treated as a breach by the tenant of the lease. All guests shall register themselves, their vehicles and their boat trailers with the Park Office.

J.    The General Manager may terminate a campground lease in the event of any breach by the tenant of any provision of the lease or this Ordinance, or in the event of any violation by the tenant's guests of this Ordinance.

K.    In the event the Commission terminates a campground lease, or in the event a tenant holds over after expiration of this lease, Landlord shall be entitled to all remedies available pursuant to law, including money damages and eviction. All leases shall provide that if the tenant holds over, the Commission shall be entitled, in addition to any other remedies, (a) to rental in the amount of twice the rental rate specified in this lease; (b) to move the tenant's trailer and have it towed to a storage lot, in which case the tenant shall be liable to the owner of the lot

-9-

for all towing and storage expenses and may be subject to a lien therefor; and (c) to remove and dispose of any structures or personal property that have been erected or placed by tenant on the campsite, without further liability to the tenant.

L.    No person whose Campsite Lease has been terminated by the Commission for cause may enter into another Campsite Lease in the same season or the subsequent season. This provision does not bar a person whose Campsite Lease has expired from entering into a subsequent Campsite Lease.

M.    Campsite Leases are not assignable, nor may a tenant sublet all or any portion of a Campsite. In no event shall a tenant transfer title to a Permitted Camping Vehicle to a third party while it is on the Campsite. However, a tenant may remove and replace the Permitted Camping Vehicle at any time, so long as the tenant produces evidence of ownership of the replacement vehicle prior to placing it on the Campsite.

N.    Upon the expiration and nonrenewal of a lease, the tenant shall remove all structures or personal property that have been erected or placed by tenant on the campsite, unless the Manager allows such structures and property to remain.

### SECTION 9    AUTHORITY OF THE MANAGER, THE GENERAL MANAGER, AND THE PATROL OFFICER; ENFORCEMENT OF ORDINANCE.

A.    The General Manager, through his agents, including but not limited to the Manager and the Patrol Officer, is charged with the issuance of permits and the enforcement of this Ordinance.

-10-

B.      All persons found in the Campground shall comply with the instructions and orders of the General Manager, the Manager, the Patrol Officer and their agents.

### SECTION 10        REVOCATION OF PERMIT AND LICENSE

A.      In addition to the authority set forth in Section 9, in the event that the Manager or the General Manager believes that the holder of a Camping Permit, or a member of such person's party, or a guest of tenant under a seasonal Campsite Lease, has willfully violated any provision of this Ordinance, then the Manager, General Manager or Patrol Officer may suspend or revoke such person's permit or license established pursuant to Section 4C or Section 7B of this Ordinance to be in the Campground, and may order such person immediately to vacate the Campground and to remove his or her dependents, guests, vehicles, water craft and personal property.

B.      Any person who does not promptly comply with such an order to vacate is a trespasser and may be prosecuted as such.

C.      Any person whose license to be on or about the Campground has been suspended or revoked may appeal to the Commission for reinstatement at the next regular meeting of the Commission.

### SECTION 11        SEVERABILITY CLAUSE

If any portion of this ordinance shall be determined to be invalid, said determination shall not effect the validity of any remaining portions of said ordinance.

-11-

**SECTION 12**      **EFFECTIVE DATE**

This ordinance shall take effect on November 1, 2007.  The Clerk shall publish this

Ordinance in pamphlet form.

PASSED this 28th day of ___June___, 2007.


_____
Commission Chairman

ATTEST:


_____
Commission Clerk


AYES: Meynerich, Whitson, McCarthy, Bivin, Butcher, Rettberg
NAYS: Timbuk, Hatalla

PASSED: Yes
APPROVED: 6

ABSENT: 0

-12-

## ORDINANCE CERTIFICATE

STATE OF ILLINOIS      )
           ) SS.
COUNTY OF MACOUPIN   )

   I, the undersigned, do hereby certify that I am the duly qualified and acting Clerk of the

Otter Lake Water Commission, ADGPTV, Macoupin County, Illinois.

   I do further certify that the ordinance attached hereto is a full, true, and exact copy of

Ordinance No. 2007-02, adopted by the corporate authorities of said Commission on the

28th day of June , 2007, said Ordinance being entitled:

### AN ORDINANCE PERTAINING TO THE CAMPGROUND AT OTTER LAKE, MACOUPIN COUNTY, ILLINOIS

   I do further certify that prior to the making of this certificate, the said Ordinance was

spread at length upon the permanent records of said Commission, where it now appears and

remains.

   IN WITNESS WHEREOF, I have hereunto set my hand and affixed the official seal of

said Commission this 28th day of June , 2007.

_Laura C. Sommerfeld_
Commission Clerk

-13-

STATE OF ILLINOIS          )
                           ) ss.
COUNTY OF MACOUPIN         )

### CERTIFICATE

I certify that I am the duly elected and acting Clerk of the Otter Lake Water Commission, Sangamon and Macoupin Counties, Illinois.

I further certify that on _____June  28_____, 2007, the corporate authorities of such Commission passed and approved Ordinance No. 2007-_02_ entitled:

**AN ORDINANCE PERTAINING TO THE CAMPGROUND AT OTTER LAKE, MACOUPIN COUNTY, ILLINOIS**

which provided by its terms that it should be published in pamphlet form.

The pamphlet form of Ordinance No. 2007-_02_, including the Ordinance and a cover sheet thereof, was prepared, and a copy of such Ordinance was posted in the Commission's Business Office, commencing on _____June  28_____, 2007, to continue for at least ten days thereafter.  Copies of such Ordinance were also available for public inspection upon request in the office of the Clerk.

DATED at Virden, Illinois, this _28th_ day of _____June_____, 2007.

(SEAL)

_____
Commission Clerk

## Exhibit A

No construction will be allowed to any campsite that does not currently meet Commission standards. This includes, but is not limited to campers, roofs, decks, stairs and screened in decks. All construction permits and inspections will be performed by the Commission's designee. All construction and maintenance must be done with new materials.

Camper Roof:
- 1. Length
  - A.    Maximum 35' not to exceed length of camper.  Length not to include hitch.
- 2. Poles
  - A.    4' deep, minimum 4"x4" backfilled with two (2) 60 lb. bags of concrete mix.
  - B.    Maximum 8' oc        2 rows pole for roof over camper
    3 rows pole for roof over camper & deck
- 3. Rafters
  - A.    2 x 6 minimum
  - B.    Low side minimum 12" above camper on the sides.  Maximum 18"
  - C.    Roof Pitch
    2"/12"
- 4.    Steel Roofing
  - A.    1 piece roof steel maximum 12'
  - B.    29 ga. factory painted steel
  - C.    Factory colored trim to match
- 5.    Sides, Ends & Gables
  - A.    30" maximum on low sides
  - B.    Bottom of enclosure to be level around all sides
  - C.    Trailer hitch end to be easily removable

Deck Roof
- 1. Length
  - A.    Maximum 35' not to exceed length of camper.  Length includes any steps.
- 2. Poles
  - A.    Minimum 4"x4" backfilled with 4' deep 2-60 lb. bags of concrete mix.
  - B.    Maximum 8' oc  2 rows poles for camper
    3 rows for camper & decks
- 3. Rafters
  - A.    2"x6" minimum

03/15/01

B.    2"/12" pitch

4.    Steel Roofing
    A.    1 piece roof steel 10' maximum
    B.    29 ga. factory painted steel
    C.    Factory colored trim to match

Deck
1. Made to fit under deck roof
    A.    Joist 2" x 6"  16" oc minimum.
    B.    Joist 2" x 8"  24" oc minimum.
    C.    Floor 5/4" x 6" minimum.
    D.    Lattice exceptable around bottom of deck, under safety rail, also exceptable as skirting around deck.
    E.    Support post to be minimum 4" x 4".  No special backfill material required.
    F.    Safety rail around deck.

Screening of Decks
1.  Screening of "deck area" is defined as, Surrounding of deck parameter using charcoal finish fiberglass screen cloth from deck roof to deck floor.  Screening of trailer and the area below the deck floor to the ground, is not permitted.  Screening of the underside of the deck is allowed, on top or on the underside of floor joist, which must be secured in a manner to prevent sagging.  No screens shall be installed on top of deck floor.

2.  Attach screen material to deck structure using either manufactured plastic screen channel and bead stripping, or nail/staple and cover with treated wood or cedar screen bead.  48" maximum width of screen supports.

3.  Only pre-manufactured screen doors, which may have a maximum of 48" solid panel measured from floor up, are permitted.

4.  Sealing the space between the deck and the camper will be accomplished using either treated material (CCA treated) or soffit material, factory color trim to match, attached to deck structure only.
    A. Attachment of screen material to camper using nails, staples, screws, bonding and/or gluing is not permitted.

5.  Screened areas must be maintained at all times.  Rusty, torn and/or sagging screen material will not be tolerated, and shall be repaired at the park Managers discretion.

6. No solid enclosure is permitted.
    A. Enclosing any portion of the deck with any other materials is strictly prohibited.  This includes walls, partitions and plastic/vinyl materials.

03/15/01

Roof & Deck

1. All lumber to be of material treated (CCA treated).  No untreated lumber permitted.

2. All steel for roofing & trim to be 29 ga. factory painted.

**Special Notes**

1. Outside walls may be covered from top down maximum 30".

2. Center wall between roof & deck may also be covered.
   A.    Material for above must be 29 ga. factory painted steel & trim.

3. End to be left open on deck & roof.

4. Skirting of any type not allowed around camper.

5. Specifications for TV antenna:
   Minimum 1" galvanized pipe, maximum 2".
   Maximum 20' tall with no guide wire.  Attached only to camper or post of deck, or pole of roof over camper.

03/15/01

NOTE: 12' Sheet of Steel (Max.)

30" Max.

12
2

11'-7" (Max.)

NOTE: 10' Sheet of Steel (Max.)

12
2

9'-8¼" (Max.)

21'-6" (Max.)

June 28, 2007

Exhibit B

## DOCK SPECIFICATIONS



Side rails & center stringer 2" by 10" treated lumber.

Decks to be made of 5/4" boards treated lumber.

Posts to be 2" galvanized pipe, driven to solid ground.

Post to be bolted to side rails with 1/2" carriage bolts.  Post may extend above boat dock for hand rails.

**E-FILED**
Friday, 09 May, 2008  04:55:58 PM
Clerk, U.S. District Court, ILCD

# OTTER LAKE WATER COMMISSION

ORDINANCE NO. <u>2001-01</u>

## AN ORDINANCE PERTAINING TO RECREATIONAL USES IN OTTER LAKE MACOUPIN COUNTY, ILLINOIS

ADOPTED BY THE OTTER LAKE WATER COMMISSION, ADGPTV

THIS <u>8th</u> DAY OF <u>March</u>, 2001

Published in pamphlet form by the authority of the Otter Lake Water Commission, ADGPTV, this <u>8th</u> day of <u>March</u>, 2001.



EXHIBIT
B

Ordinance No. 2000-01

# AN ORDINANCE PERTAINING TO RECREATIONAL USES IN OTTER LAKE, MACOUPIN COUNTY, ILLINOIS

BE IT ORDAINED BY THE Otter Lake Water Commission, ADGPTV, as follows:

## SECTION 1 - DEFINITIONS:

A.     As used herein, "Commission" refers to the Otter Lake Water Commission, ADGPTV, a public corporation of Illinois.

B.     As used herein, "Otter Lake Area" refers to that certain lake known as Otter Lake area which is owned by the Commission in Macoupin County, Illinois, as a source of public water supply, and the lands owned by the Commission surrounding the lake, including but not limited to boat docks, parking lots and campgrounds.

C.     As used herein, "Manager" refers to the person or persons to whom the Otter Lake Area is leased and manages that area on behalf of Commission.

D.     "Customer" means a retail water customer of the Commission or of the municipalities of Auburn, Divernon, Girard, Pawnee, Thayer, Virden and Nilwood.

E.     "Non Customer" is any person who is not a customer.

F.     "Patrol Officer" is an enforcement officer designated by the Commission and deputized by the Sheriff of Macoupin County.

## SECTION 2 - APPLICABILITY

This Ordinance shall apply within the Otter Lake Area.

## SECTION 3 - TRESPASSING PROHIBITED:

03/15/01

Certain grounds within the Otter Lake Area are open to the public. Other grounds within the Otter Lake Area are not open to the public. Such grounds are posted with signs or notices prohibiting public access. No persons shall enter any lands within the Otter Lake Area which are posted with a notice prohibiting public access.

### SECTION 4 - POLLUTION PROHIBITED:

Pollution of Otter Lake is prohibited and will be prosecuted to the maximum extent of the law.

### SECTION 5 - DAMAGE TO PROPERTY:

The Commission and Lessee is not responsible for the safety or custody of private property within the Otter Lake Area, including but not limited to structures, boats, camping gear, personal effects and all other personal property. The Commission and Lessee disclaims any liability for damage of such personal property; all persons using the Otter Lake Area do so at their own risk.

### SECTION 6 - LAND SPEED REGULATIONS:

Speed limits within the Otter Lake Area shall be as follows:

1.    Five miles per hour in picnic areas.

2.    Ten miles per hour in campground, boat range and all other areas.

### SECTION 7 - FIRE AND FLAMMABLES:

A.    Any gasoline and other liquid fuels other than that contained in storage tanks of vehicles and motor-powered water craft shall not be carried onto or stored within the Otter Lake Area.

B.      Fires shall be confined to fireplaces, grills and other facilities designed for and designated by the Commission. Fires shall be attended at all times by a responsible person over 13 years of age and extinguished before leaving.

C.      Propane and other compressed gas tanks are prohibited except those which are part of the standard equipment of a camper, trailer, or gas grill. Such tanks shall not exceed thirty pounds maximum size.

## SECTION 8 - POSSESSION OF FIREARMS; DISCHARGE OF FIREARMS, HUNTING AND TRAPPING:

A.      No person shall possess a loaded firearm, ammunition, loaded projectile, firing devices, bows and arrows, crossbows or explosives of any kind within the Otter Lake Area, except Federal, State and local law enforcement personnel and agents of the Commission.

B.      Except as permitted below in Section 15, hunting and trapping is strictly prohibited within the Otter Lake Area.

## SECTION 9 - SWIMMING, BATHING AND WADING:

Swimming, bathing and wading are prohibited in Otter Lake.

## SECTION 10 - PICNICKING:

Picnicking is prohibited within the Otter Lake area except those specifically posted as picnicking areas by the Commission. All persons using designated picnicking areas shall keep the areas neat and clean by picking up all rubbish while using the area and upon leaving the areas. In areas where rubbish cans are available, they may be used to deposit the rubbish. In areas where cans are not available, the rubbish shall be removed by persons using the picnic area. No wood fires are permitted at any time under any circumstances in picnicking areas. Only charcoal fires are permitted in grills where provided.

03/15/01

## SECTION 11 - FISHING:

A.     All fishing shall be governed by the Fish Code of Illinois except as further regulated by this Ordinance.

B.     Fishing, including ice fishing when in season, is permitted on the entire Otter Lake surface and from the entire shoreline from sunrise until 11:00 p.m., unless posted specifically to the contrary by the Commission.

C.     There shall be no selling of fish caught in Otter Lake without specific written approval of the Commission.

D.     The sole method of fishing shall be that of not more than two hooks attached to a single line, as provided in the Fish Code of Illinois.  Fishing by troutline, jugfishing, banklines, hoopnets, trammel nets or any other fishing devices are specifically prohibited in the Otter Lake Area.

E.     No fish shall be released into Otter Lake, except those fish caught in Otter Lake, without permission of the Otter Lake Water Commission, ADGPTV.

F.     Possession and size limitations on fish caught at Otter Lake shall be as determined from time to time by the Commission and posted.

## SECTION 12 - BOATING:

Rental of boats and passenger carrying for hire are prohibited without specific written approval of the Commission.  All boating shall be governed by the Illinois Boat Registration & Safety Act, except as further regulated herein:

### Boating Operation Requirements

1.     All water craft are to be launched from facilities regulated by the Commission. Boating may be temporarily suspended by the Commission at its discretion.

2.      All boats which are operated on Otter Lake must be licensed and display the current decal type sticker issued by the Commission and sold by the Lessee. The sticker is good from March 1 until February 28. No upgrades or transfers of boat permits shall be permitted. Expired licenses or stickers must be covered or removed before March 1 of each year in accordance. The following schedule of annual fees shall apply:

## BOATING PERMITS

| Class | Type | Customers | Assessment | | Total |
|-------|------|-----------|------------|---|-------|
| A | Boats without combustible engines including kayaks, sailboats and other Coast Guard approved water craft | $5.00 | $5.00 | $10.00 | |
| B | 1 horsepower to 35 horsepower | $20.00 | $10.00 | | $30.00 |
| C | 36 horsepower to 75 horsepower | $30.00 | $10.00 | | $40.00 |
| D | 76 horsepower to 115 horsepower | $40.00 | $10.00 | | $50.00 |
| P | 3 consecutive day permit for Class B, C and D type water craft | $7.50 | $2.50 | | $10.00 |
| P-1 | 1 day permit for Class A, B, C and D type water craft | $7.50 | $2.50 | | $10.00 |

| Class | Type | Non Customers | Assessment | | Total |
|-------|------|---------------|------------|---|-------|
| A | Boats without combustible engines including kayaks, sailboats and other Coast Guard approved water craft | $10.00 | $5.00 | $15.00 | |
| B | 1 horsepower to 35 horsepower | $35.00 | $15.00 | | $50.00 |

03/15/01

| C | 36 horsepower to 75 horsepower | $50.00 | $15.00 | $65.00 |
| D | 76 horsepower to 115 horsepower | $75.00 | $25.00 | $100.00 |
| P | 3 consecutive day permit for Class B, C and D type water craft | $15.00 | $10.00 | $25.00 |
| P-1 | 1 day permit for Class A, B, C and D type water craft | $7.50 | $2.50 | $10.00 |

3.      Personal water craft, including but not limited to Jet Skis and Wave Runners are prohibited on the lake.

4.      Restricted areas, specially zoned areas for fishing and water skiing, and boat speed regulations shall be as follows:

a.      No boating of any type shall be allowed within 100 feet of the water intake tower structure or 100 feet of the spillway structure.  These areas shall be sufficiently posted to indicate the restriction.

b.      Boat speed shall be restricted to the "No Wake" speed in the following areas:

1.      All lake area north of Stamper Hill Road.

2.      The four major inlet areas south of Emmerson Airline Road on the west side of the lake.

3.      The three major inlet areas south of Emmerson Airline Road on the east side of the lake.

4.      Within fifty feet of anchored or oar propelled boats.

5.      When approaching boat docking facilities.

6.      When within 100 feet of the shoreline.

03/15/01

7.    When restrictions are so marked by appropriate signs of the Otter Lake Water Commission, ADGPTV or its enforcement personnel.

8.    In water skiing areas.  Water skiing is permitted on the lake south of Emmerson Airline Road from the marker buoys at the north boundary thereof, extending southward to the dam at the south end of the lake except in those areas zoned as "Fishing Areas".

9.    No wake speed restricted areas.

5.    The Boating season shall be from March 1, until the last day of February.

6.    Hours and Horsepower and Speed Restrictions:

a.    Boats with motors in excess of 115 h.p. are not permitted on the lake.

b.    Hours of permitted boating are sunrise until 11:00 p.m.

c.    The speed limit on the lake is 35 miles per hour, except from the area from Stamper Hill north, where all boats must proceed at a no-wake speed.

d.    The lake south of the Highway, with the exception of some inlets zoned for fishing, is primarily reserved for speed boating and water skiing.  Speed boating and skiing shall not take place within 100 feet of the shoreline and shall proceed in a counterclockwise direction.  No high speed boating shall be permitted in inlets; these are no-wake fishing areas.

e.    Those engaged in speed boating and water skiing shall observe state laws regarding, life jackets, number of persons occupying boats pulling skiers, etc., and shall not operate their boats in a careless or dangerous manner.

f.    All skiers shall hold one ski aloft after falling into water and awaiting pickup, to caution all other users of the lake of their presence.

g.      As a general rule of courtesy and respect for the presence of others, small boats shall stay clear of, and fisherman shall avoid anchoring in, areas of high speed boat traffic. Speed boaters shall stay well clear of small boats and anchored boats.

h.      I/O and jet driven craft are not allowed.

7.      All boaters shall comply with signed rules and regulations supplied when registering. All boaters must immediately comply with instructions of the Patrol Officer. The Patrol Boat is not bound to observe speeds prescribed for other boats.

8.      Boat operators in violation of boating regulations will be issued a warning ticket for the first violation. The second violation will result in suspension of the boating permit for a period of 30 days. A third violation will lead to revocation of the boating permit with no refund of the purchase fee, and expulsion from the lake for a period of one year from the date of the offense. Persons violating regulations or laws which endanger life or property of others may be charged with criminal offenses and prosecuted.

9.      The throwing of litter, garbage, drink cans, can tops, etc., in the lake is prohibited.

10.     Boats shall not be docked around the lake shoreline except in the following public areas:

1.      Along the shore of the boat launch parking area.

2.      Along the shore of the public picnic area, directly south of the lake office.

3.      Where posted at the picnic area northwest (just off the highway) of the Emmerson Airline Bridge.

4.      Along the shore of the designated camping areas, only if assigned to a campsite in that area.

11.    Land vehicular parking at public docking areas shall be limited to boaters currently using the lake.   Boat parking shall be limited to thirty minutes at boat docks.

12.    Inflatable rafts and other inflatable devices not intended for the use of being towed by a water craft are not permitted on the lake.

13.    All inlets are considered "no wake" areas, and boaters must comply with speed limits in these areas as to not endanger other boaters or their property.

14.    Boaters shall proceed in a counterclockwise direction while driving on the south side of Emmerson Airline Bridge.

15.    The Patrol Officer may confiscate any boat and their contents when found in the Otter Lake Area by any necessary force in order to secure that boat in a controlled docking area, when that boat is reasonably believed to be in violation of this Ordinance.  The owner will be contacted if possible, and the boat released to the owner as soon as violation is corrected.

**SECTION 13 - CAMPING**

A.    Camping is prohibited on Commission property, unless prior permission is granted and a camping permit is issued by the Manager designating the specific area to be used and the permitted duration.  Camping permits may be obtained from the Manager's at Otter Lake.

B.    Preference for issuing camping permits will be given to local Boy Scouts, Girl Scouts and other youth organizations.   Responsible supervision shall be provided by the applicant for the camping permit in the designated areas as determined by the Commission.

C.    The preservation of the natural setting of the area and the wildlife habitat must be maintained.  The campsite must be left in a state of cleanliness upon leaving the area.  Sanitation must be adequately provided for.

03/15/01

D.    Any wildlife or soil conservation projects, tree cutting or removal of vegetation, or other similar activity shall have their prior approval of the Commission before being started. Completion of approved conservation projects shall be reason for awarding preference upon re-application for future camping permits.

E.    Camping shall be further regulated by the following specific rules:

1.    Campsites are available by assignment, and only one trailer or other recreational vehicle may occupy a campsite at one time. The campsite includes the area within 12 feet of the camper in all directions or 1/2 the distance to the next camper, whichever is smaller, and shall not include any area within 15 feet of the Otter Lake shoreline. This 15 foot area along the shoreline is useable by anyone.

2.    Only manufactured trailer and camper type vehicles in good condition as determined by Manager are permitted in the camp area.

3.    Converted school buses, and homemade camper vehicles or mobile homes are prohibited. No camper shall be greater than 35 feet in length.

4.    Roofs, decks, and antennas may be constructed to Commission specifications. (See Exhibit A). Fixtures including, but is not limited to concrete patios, fences, trailer skirting, oil drum stands, clothesline, television towers, and the like are not permitted. No stairs, steps or sidewalks, etc., shall be excavated, cut into, protruding, or disturbing existing soil.

5.    All trash and refuse shall be placed in plastic bags, and then in covered trash barrels provided by the concessionaire.

6.    No waste water may be dumped into or onto the ground.

7.    Sewage generated within the trailers must be held in the trailer and may be dumped at dump station provided.

03/15/01

8.      No sanitation waste hose or pipe shall extend from the trailer into the ground at any time.

9.      No gravel pit and dry well connections are allowed.

10.     Cleanliness and sanitation shall be the sole responsibility of the camper and any violation of these rules shall authorize Commission and Manager to revoke the camping permit and privileges without refund.

11.     No person shall bring or allow horses, cattle, or livestock in the camping, picnic, or other recreational areas as designated by the Commission.  Cats and dogs with a maximum of a 10 feet leash are permitted.

12.     All visitors to the campground must leave their cars in designated parking areas.  Visitors shall leave camping areas by 11:00 p.m.

13.     The camping season is from March 1 to November 30,  weather permitting, unless changed by the Commission and Lessee.  No camping will be allowed except during the camping season.

14.     The Manager shall designate a boat and trailer storage area for use by campers, and shall charge a storage fee which will be established from time to time by the Lessee and approved by the Commission.  No storage of boats and trailers is permitted other than in this designated area.  Boats and trailers may be brought into the camping area by campers on a temporary basis, but must be attended at all times and parked within the campers assigned campsite.

15.     Electrical hookups are available at campsites, but the terms and conditions of the provision of electrical energy is between the campsite tenant and the electrical provider and is not the responsibility of the Commission.

03/15/01

16.    Fires shall be confined to fireplaces, grills and other facilities designed for and designated by the Commission. Fires shall be attended at all times by a responsible person over 13 years of age.

17.    Propane and other compressed gas tanks are prohibited except those which are part of the standard equipment of a camper, trailer or gas grill. Such tanks shall not exceed thirty pounds maximum size.

18.    Camping fees, winter storage fee and regulations shall be as follows:

A.    $500.00 per camping season, plus $70.00 for winter storage with the first installment of $320.00 due the first day of November and the second installment of $250.00 due the first day of May each year.

1.    If an installment is not paid when due, a 10% late charge will be added. If payment is not received by the 15th, the lot must be vacated.

2.    The lease fee shall not be pro-rated.

3.    All leases must be signed.

B.    There is hereby created an assessment, an additional revenue source to be known as an Assessment for Lake and Lakeshore Improvements (herein called "Assessment") which will be retained by the Commission for capital improvements to the Otter Lake and Lakeshore, payable by November 1 as follows:

1.    For customers $25.00 annually

2.    For non-customers $75.00 annually

C.    Daily camping fees of $12.50 per night per party of up to five persons including electricity and water, and air conditioning hook-up shall be charged. Any additional persons, including guests, shall pay $1.25 per person per night.

03/15/01

D.    The foregoing camping rates are subject to change by the Commission and Lessee.

E.    All camping fees are non-refundable, regardless of the actual camping time.

19.    The Manager shall have the discretion to determine when the water supply to campers shall be turned on and when the gates to the camping area will be opened each year.

20.    When a trailer is sold, a camping permit may be transferred with approval of Manager, subject to the Seller paying a transfer fee of $300.00 which includes a campsite inspection. Neither the Manager or the Commission is a party to the sale, and thus disclaim any and all liabilities arising from such sale. A waiver of such liability shall be signed by both the Seller and the Buyer at the time of such a transfer. Each campsite will be inspected by the Commission designee to determine compliance of this ordinance. Any items that are out of compliance will be identified on the transfer document, and shall be signed by the new owner of the camper. Furthermore, the new owner will agree to bring the campsite into compliance before January 1, 2008.

### SECTION 14 - BOAT DOCKS

Private boat docks at Otter Lake must be built according to prior written approval and must conform to specifications as established by the Commission, which will be promulgated from time to time and shall include the following conditions: (See Exhibit B)

1.    All boat docks will be issued a number to be displayed on the dock, and identified for periodic inspections;

2.    All boat docks must be maintained on an annual basis according to standards established by the Commission from time to time;

03/15/01

3.    All such boat docks must be used in a safe and proper manner;

4.    Each owner or lessee having a boat dock must pay an initial fee of $150.00 and an annual fee for a boat dock as follows:

Fees:  Customer            $50.00 annually due May 1

       Non-Customer        $50.00 annually due May 1

5.    Landowners and lessees shall maintain their boat docks up to Commission standards. Each dock shall be maintained so that it does not become hazardous or unsightly, and shall be subject to an annual inspection, without prior notice, by the Commission. The annual inspection fee shall be $15.00 and if a re-inspection is required, the fee shall be $15.00. In addition to the annual inspection, the Commission may inspect any dock at any time for no fee, but if the re-inspection is required, the re-inspection fee shall be $15.00. If the dock fails to meet the Commission standards upon any re-inspection, the user shall remove the dock upon 10 days written notice, and upon the failure to do so within 30 days then the Commission may remove the same, and the user shall promptly reimburse the Commission for the cost of removal.

6.    Contract rights of original landowners will be honored with respect to boat docks and other appurtenances to Otter Lake. However, such landowners shall maintain their boat docks as provided herein. Any original owner who has forfeited the right to future boat dock privileges will receive notice of said forfeiture and their rights and privileges will be revoked with respect to said rights and privileges, and where appropriate after notice, said boat dock will be removed.

7.    As a condition of continuing the privilege of allowing a boat dock on Otter Lake to be erected by private landowners (or their lessees), the private landowner (or lessee) shall sign

an agreement in the form prescribed by the Commission stating that the landowner will comply with the following conditions:

a.    There will be a minimum of 300 feet frontage adjacent to the Commission's property on Otter Lake, only one boat dock permit will be issued to each landowner who meets the requirements herein, or to a lessee of 300 feet of frontage owned by the landowner;

b.    The landowner will not cut any fence for access to their dock or alter the fence in any way without Commission approval in writing;

c.    The Commission will supervise and approve the installation of any dock prior to issuing a permit to the user to use the dock;

d.    The landowner will maintain liability insurance in the amount of one million dollars per occurrence for the boat dock structure, the Commission and Manager added as an additional insurer, and will provide proof of insurance to the Commission at least annually;

e.    The landowner will police the area around the dock and also advise the Commission of any illegal activity in the area of the dock;

f.    No one other than the landowner will use the boat dock, unless the landowner is present;

g.    The landowner will not do anything to pollute the lake, such as illegal septic drainage into the lake, and shall to the best of his ability control pollution of Otter Lake.

## SECTION 15 - DUCK AND GOOSE HUNTING

Duck and goose hunting may be permitted on Otter Lake at the discretion of the Commission to be determined on an annual basis. Duck and goose hunting is subject to the following regulations, which may be amended at any time by the Commission.

03/15/01

1.    All hunting will be NORTH of Stamper Hill Buoys.

2.    All boats must have current Otter Lake sticker.

3.    There will be no more than three (3) hunters to a blind.

4.    Blinds can be boat blinds or temporary blinds on shore. All blinds must be within 25 yards of # stake and no further than 6 feet out in the water.

5.    Blinds must have at least twelve (12) decoys. Decoys cannot be left on lake after hunting hours.

6.    A fee of $125.00 will be assessed for each blind. $25.00 will be refunded if blind sites are cleaned--subject to inspection. Fees will be due on day of drawing for blind sites.

7.    Hunting hours will be from legal time set by federal regulations and 12:00 noon.

8.    Drawing for blind sites will be two weeks before start of duck season.

9.    Only duck and geese may be taken at designated areas on Otter Lake Grounds.

10.    NO OPEN FIRES will be permitted. Charcoal or fuel heaters may be used.

11.    Hunters are to report kill at Water Plant or other location to be determined.

12.    All state, local and national hunting and firearm rules and regulations shall be complied with.

13.    All guns and firearms are to be encased going to or from hunting areas.

14.    No alcoholic beverages allowed.

## SECTION 16 - PUBLIC NUISANCE

Any operator of a motor vehicle, boat, vessel, or any aircraft, operating such vehicle in such manner so as to create a public nuisance, disturb peace, destroy public or private property, or otherwise annoy the general public, shall be in violation of this Ordinance and shall be subject

to immediate removal from Commission property by authorized agents of the Commission or other law enforcement agents, and prosecution under state law or county ordinance.

### SECTION 17 - PENALTIES

A.    Any person violating any one or more of the provisions of this Ordinance, any person receiving a citation or compliant issued by an authorized Commission agent or police officer may be immediately removed from the Otter Lake Area as defined herein.  Any person who refuses an order of Commission, Manager or law enforcement agency to leave the Otter Lake Area shall be deemed a trespasser on Commission property and may be prosecuted for trespassing.

B.    Any Lessee of a campsite violating any provision of this Ordinance shall be deemed to be in breach of his lease, subjecting him to termination of the Lease at the discretion of the Commission or Lessee and eviction from the campsite without refund of any prepaid rent.

### SECTION 18 - ENFORCEMENT OF ORDINANCE

A.    It is unlawful of any person to resist or obstruct any officer, deputized police officer, employee or Commissioner of the Otter Lake Water Commission, ADGPTV or the Illinois Department of Natural Resources in the discharge of his duties under the provisions of this Ordinance or the laws of the State of Illinois.

B.    It shall be the duty of all employees of the Department of Natural Resources having proper jurisdiction and all sheriffs, deputy sheriffs, and other deputized police officers, to arrest any person detected in violation of any of the provisions of this Ordinance and also to make a prompt investigation of any reported violations by any other person and to cause a complaint to be filed in the Circuit Court if the grounds for a compliant are justified and evidence to support the complaint is procurable.

03/15/01

C.    All agents of the Illinois Department of Natural Resources and other duly authorized police officers or deputized officers, employees, or Commissioners may inspect any boat or area of the Lake at any time for the purpose of determining if the provisions of this Ordinance and the laws of the State of Illinois are being complied with.

D.    The lake patrol officer may suspend the operation of any boat he reasonably believes to be in violation of boat safety requirements, horsepower limitations, or any state or local law until violation is investigated and/or corrected to the satisfaction of the lake patrol officer.

### SECTION 19 - NONCONFORMING STRUCTURES IN CAMPSITE

A.    Any structure which exists in the campsite lawfully at the time of the adoption of this Ordinance and does not conform to the requirements of this Ordinance, and any such structure which shall become nonconforming upon the adoption hereof or of any subsequent amendment hereto, may continue in existing only in accordance with the regulations in this Section.

B.    Non conforming television antennas, propane tanks and connections to gravel pits and dry wells shall without exception be eliminated on or before June 1, 1998, and are not subject to the protections of this Section.

C.    Any existing structure in the campsite which does not conform with the regulations of this Ordinance shall be subjected to the following provisions:

1.    A nonconforming structure shall not be enlarged, nor shall it be extended to occupy an area greater then the area occupied by it on the effective date hereof.

2.    A nonconforming structure shall not be moved, in whole or in part, to any other location within the campsite.

03/15/01

3.    Should an existing structure deteriorate be damaged or destroyed by fire or other casualty or act of God, it shall not be restored or replaced except to Commission specification.   Routine maintenance and repair of fair wear and tear is not prohibited by this section.

4.    Any existing structure that the Commission determines to be deteriorated or dilapidated shall be the responsibility of the owner to be upgraded within 30 days following notification to eliminate said unsightly conditions; failure to comply will result in mandatory total removal.

D.    All nonconforming structures shall be removed in any event on or before January 1, 2008.

## SECTION 20 - BUILDING PERMITS FOR CAMPSITES

Any construction done at any campsite shall be permitted by the Commission designee. All construction shall be done in accordance to this ordinance.  At the time of issuing a building permit a campsite inspection will be performed to insure compliance with current building specifications.  Any deficiencies will be noted for the campers information.  Furthermore, the camper shall agree in writing that deficiencies will be corrected prior to January 1, 2008.

## SECTION 21 - REPEALER

Ordinances No. 82-1, 93-1, 94-4, 95-3, 97-04, 98-04 and other recreational ordinances prior to the date hereof are hereby repealed.

## SECTION 22 - SEVERABILITY CLAUSE

If any portion of this Ordinance shall be determined to be invalid, said determination shall not effect the validity of any remaining portions of said Ordinance.

03/15/01

## SECTION 23 - LEGAL EFFECT

This Ordinance shall take effect and be in force after its passage, approval and publication, as provided by law.

PASSED this ___ day of _____, 2001.

_____
Commission Chairman

ATTEST:

_____
Commission Clerk

AYES: _____
NAYS: _____

PASSED: _____
APPROVED : _____

ABSENT: _____

## ORDINANCE CERTIFICATE

STATE OF ILLINOIS          )
                           )     SS.
COUNTY OF MACOUPIN  )

I, the undersigned, do hereby certify that I am the duly qualified and acting Clerk of the Otter Lake Water Commission, ADGPTV, Macoupin County, Illinois.

21                                                                03/15/01

I  do further certify that the ordinance attached hereto is a full, true, and exact copy of Ordinance No. _2001-C1_, adopted by the corporate authorities of said Commission on the _8th_ day of ___March___, 2001, said Ordinance being entitled:

## AN ORDINANCE PERTAINING TO RECREATIONAL USES IN OTTER LAKE, MACOUPIN COUNTY ILLINOIS

I do further certify that prior to the making of this certificate, the said Ordinance was spread at length upon the permanent records of said Commission, where it now appears and remains.

IN WITNESS WHEREOF, I have hereunto set my and affixed the official seal of said Commission this _8th_ day of ___March___, 2001.

_____
Commission Clerk

STATE OF ILLINOIS ) 
                          )     SS. 
COUNTY OF MACOUPIN ) 

## CERTIFICATE

I certify that I am the duly elected and acting Clerk of the Otter Lake Water Commission, Macoupin County, Illinois.

I further certify that on ___March 8th___, 2001, the corporate authorities of such Commission passed and approved Ordinance No. _2001·01_ entitled:

## AN ORDINANCE PERTAINING TO RECREATIONAL USES IN OTTER LAKE, MACOUPIN COUNTY, ILLINOIS

which provided by its terms that it should be published in pamphlet form.

The pamphlet form of Ordinance No. _2001·01_ including the Ordinance and a cover sheet thereof, was prepared, and a copy of such Ordinance was posted in the Commission's Business Office, commencing on ___March 8th___, 2001, to continue for at least ten days thereafter. Copies of such Ordinance were also available for public inspection upon request in the office of the Clerk.

DATED at Girard, Illinois, this _8th_ day of ___March___, 2001.

(SEAL)

_Michael T. Smith_

Commission Clerk

**Exhibit A**

No construction will be allowed to any campsite that does not currently meet Commission standards. This includes, but is not limited to campers, roofs, decks, stairs and screened in decks. All construction permits and inspections will be performed by the Commission's designee. All construction and maintenance must be done with new materials.

Camper Roof:
1. Length
    A.    Maximum 35' not to exceed length of camper.  Length not to include hitch.
2. Poles
    A.    4' deep, minimum 4"x4" backfilled with two (2) 60 lb. bags of concrete mix.
    B.    Maximum 8' oc     2 rows pole for roof over camper
                                   3 rows pole for roof over camper & deck
3. Rafters
    A.    2 x 6 minimum
    B.    Low side minimum 12" above camper on the sides.  Maximum 18"
    C.    Roof Pitch
                    2"/12"
4.    Steel Roofing
    A.    1 piece roof steel maximum 12'
    B.    29 ga. factory painted steel
    C.    Factory colored trim to match

5.    Sides, Ends & Gables
    A.    30" maximum on low sides
    B.    Bottom of enclosure to be level around all sides
    C.    Trailer hitch end to be easily removable

Deck Roof
1. Length
    A.    Maximum 35' not to exceed length of camper.  Length includes any steps.
2. Poles
    A.    Minimum 4"x4" backfilled with 4' deep 2-60 lb. bags of concrete mix.
    B.    Maximum 8' oc  2 rows poles for camper
                             3 rows for camper & decks
3. Rafters
    A.    2"x6" minimum

03/15/01

        B.      2"/12" pitch

   4.    Steel Roofing
        A.      1 piece roof steel 10' maximum
        B.      29 ga. factory painted steel
        C.      Factory colored trim to match

## Deck

   1. Made to fit under deck roof
        A.      Joist 2" x 6"  16" oc minimum.
        B.      Joist 2" x 8"  24" oc minimum.
        C.      Floor 5/4" x 6" minimum.
        D.      Lattice exceptable around bottom of deck, under safety rail, also exceptable as skirting around deck.
        E.      Support post to be minimum 4" x 4".  No special backfill material required.
        F.      Safety rail around deck.

## Screening of Decks

1. Screening of "deck area" is defined as, Surrounding of deck parameter using charcoal finish fiberglass screen cloth from deck roof to deck floor.  Screening of trailer and the area below the deck floor to the ground, is not permitted.  Screening of the underside of the deck is allowed, on top or on the underside of floor joist, which must be secured in a manner to prevent sagging.  No screens shall be installed on top of deck floor.

2. Attach screen material to deck structure using either manufactured plastic screen channel and bead stripping, or nail/staple and cover with treated wood or cedar screen bead.  48" maximum width of screen supports.

3. Only pre-manufactured screen doors, which may have a maximum of 48" solid panel measured from floor up, are permitted.

4. Sealing the space between the deck and the camper will be accomplished using either treated material (CCA treated) or soffit material, factory color trim to match, attached to deck structure only.
    A. Attachment of screen material to camper using nails, staples, screws, bonding and/or gluing is not permitted.

5. Screened areas must be maintained at all times.  Rusty, torn and/or sagging screen material will not be tolerated, and shall be repaired at the park Managers discretion.

6. No solid enclosure is permitted.
    A. Enclosing any portion of the deck with any other materials is strictly prohibited.  This includes walls, partitions and plastic/vinyl materials.

03/15/01

Roof & Deck

1. All lumber to be of material treated (CCA treated).  No untreated lumber permitted.

2. All steel for roofing & trim to be 29 ga. factory painted.

**Special Notes**

1.    Outside walls may be covered from top down maximum 30".

2.    Center wall between roof & deck may also be covered.
        A.      Material for above must be 29 ga. factory painted steel & trim.

3.    End to be left open on deck & roof.

4.    Skirting of any type not allowed around camper.

5.    Specifications for TV antenna:
                Minimum 1" galvanized pipe, maximum 2".
                Maximum 20' tall with no guide wire.  Attached only to camper or post of deck, or pole of roof over camper.

03/15/01

NOTE: 12' Sheet of Steel (Max.)

3.0' Max.

12
2

11'-7" (Max.)

NOTE: 10' Sheet of Steel (Max.)

12
2

9'-8½" (Max.)

Exhibit B

## DOCK SPECIFICATIONS



Side rails & center stringer 2" by 10" treated lumber.

Decks to be made of 5/4" boards treated lumber.

Posts to be 2" galvanized pipe, driven to solid ground.

Post to be bolted to side rails with 1/2" carriage bolts.  Post may extend above boat dock for hand rails.