IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| PATSY MESTER, EVERETT LINGLEO, ) <br> TERRY DAVIS and RICHARD HAYNES, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> JAKE RETTBERG, JUDY BIVIN, ) <br> RONALD JOMBOCK, ALLEN BUTCHER, ) <br> FRANK MAYNERICH, TODD HATALLA, ) <br> GARY WHITSON, and MICHAEL ) <br> MCCARTHY, Individually and as Board ) <br> members of the Otter Lake Water ) <br> Commission, OTTER LAKE WATER ) <br> COMMISSION, ADGPTV, ) <br> ) <br> Defendants. ) | Case No. 08-3080 |

**RESPONSE TO MOTION TO DISMISS**

*NOW COMES*, the Plaintiffs, PATSY MESTER, EVERETT LINGLEO, TERRY DAVIS and RICHARD HAYNES, by and through their attorneys, GATES, WISE & SCHLOSSER, P.C., and for their Response to Motion To Dismiss state as follows:

**STANDARD OF REVIEW**

A motion to dismiss under Fed R. Civ. P. 12(b)(6) challenges the complaint on the basis that it fails to state a claim upon which relief may be granted. In assessing the Defendants' motion, this court is required to accept all well-pleaded facts in Plaintiffs' Amended Complaint as true. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir.2002). The court must consider all of the allegations in the Amended Complaint

in the light most favorable to the Plaintiffs. *Christensen v. County of Boone, IL*, 483 F. 3d 454, 457-58 (7th Cir. 2007). The dismissal of Plaintiffs claims is only proper if this court determines that Plaintiffs can prove no set of facts to support those claims. *First Ins. Funding Corp. v. Fed. Ins. Co.,* 284 F.3d 799, 804 (7th Cir. 2002).

In evaluating the completeness of the claims and allegations in Plaintiffs Complaint, this court should apply the pleading articulated in Fed R. Civ. P.8(a). Complaints in federal court need only satisfy a notice pleading standard. Plaintiffs have no obligation to prove their case at the pleading stage. Factual detail is supposed to come at a later stage, either in response to a motion for summary judgment or at trial. *See Vincent v. City Colleges of Chicago*, 485 F.3d 919, 923 (7th Cir. 2007) (noting that "[f]acts that substantiate the claim ultimately must be put into evidence, but the rule 'plaintiff needs to prove Fact Y' does not imply 'plaintiff must allege Fact Y at the outset'"). The Defendants fail to recognize this principle, indeed their Motion To Dismiss does not even describe a standard of review. Contrary to this standard, the Defendants' motion and memorandum rely heavily on factual defenses and arguments.

## ARGUMENT

1.   <u>The Individual Defendants Are Not Immune From Civil Rights Suits.</u>

The individual Defendants assert that they must be dismissed from this case as they enjoy absolute immunity. To make that assertion, the Defendants argue that 1) the commission is a legislative body and that the commissioners are legislators; and 2) that the ordinance in question is legislation. While much general law is cited, Defendants have failed to direct this court to any case law or statute directly on point.

2

The first assertion, that the commission is a legislature, is belied by the enabling act and by the theoretical underpinnings of the doctrine of legislative immunity. Legislative immunity for state and federal legislators is a creation of the courts. The doctrine is based largely on the idea that the citizen's best resource in the face of objectionable legislation is the electoral process. *Tenney v. Brandhove*, 341 U.S. 36 at 378, 71 S.Ct. 783, (1951), ("Self-discipline and the voters must be the ultimate reliance for discouraging or correcting such abuse"). As such, the doctrine assumes that the individuals enacting the objectionable rules are elected.

The Defendant commissioners are not elected. Indeed, even a cursory review of the enabling statute for the water commission reveals many distinctions between these Defendants and the members of a state legislature or even a city council. The first such distinction is that the commissioners are appointed. 65 ILCS 5/11-135-2. Each community or municipality involved in the water commission are entitled to appoint one commissioner. That appointment is made by the "mayor or president, with the approval of corporate authorities" supra. Obviously, with this procedure, the power of the electoral process is so watered down as to be an ineffective check on the acts of these commissioners.

The second distinction is found in the manner in which commissioners can be removed from their position. Unlike a true legislative body which answers to the citizens, a commissioner "may be removed for any cause for which any other municipal officer may be removed." 65 ILCS 5/11-135-1. While the Act does specifically address who or what does the removing, the clear implication is that the power rests with the village mayors and

not with the citizens.

Finally, the statute requires each individual commissioner to post a "bond for the faithful performance of his official duties." 65 ILCS 5/11-135-2. If the commissioner enjoys absolute immunity for his act, what is the purpose of a bond?

None of the cases cited by Defendants find that members of a water commission are legislators or that these members enjoy absolute immunity. Under the Federal Rules of Civil Procedure 12b(6), the movants carry the burden on this issue and the Defendants have failed to do so.

Similarly, the Defendants have failed to support their position that the particular ordinance in question is a legislative act. The applicable code reveals an interesting dichotomy between the commission's powers relative to the water supply versus the powers relative to the campground. As regards the water supply, the "commission has full and complete supervision, management and control of the waterworks system. . ." 65 ILCS 5/11-135-3. As regards to the campground, the commission is authorized to "develop, promote and provide for recreational facilities. . ." supra.

When considered against each other, these provisions suggest that the actual supervision, management and control of the campground is a ministerial or administrative act. The ordinance at issue in this complaint does not "develop, promote or provide" for facilities; it regulates and manages the activities of the campers using the facilities. This ordinance, as applied, is not legislation.

    2.    <u>Count I Properly Alleges a Claim Under 42 U.S.C. §1983 As the Plaintiffs</u>

Have Alleged a Recognized Property Right.

The Defendants are, of course, correct that to state a claim under 42 USC §1983, the Plaintiffs must allege the existence of a recognized property interest. However, the Defendants are mistaken when they assert that Plaintiffs have failed to make that allegation.

At the outset, it is important to remember that this matter reaches the court on a Motion To Dismiss under FRCP 12(b)6. As stated earlier, this procedure precludes analysis of fact issues and assumes that all well pled facts are accurate. This law is particularly crucial here as all of the Defendants' arguments in this section of their motion are fact based and are best presented at trial.

(a)    Plaintiffs, as Tenants Have a Property Right to Their Improvements.

Defendants argue that Plaintiffs have no property rights to the described improvements. This position is first made based on basic landlord tenant law. That law states, in a very general sense, that personal property incorporated into and attached to realty becomes a fixture and that a fixture becomes the landlord's property. However, Defendants neglect the equally well established law that provides that the determination of whether personal property is a fixture is a factual issue. Indeed, the case cited by Defendants explicitly recognizes that law.

Defendants' quote from *Nokomis Quarry Co. v. Dietl*, 333 Ill.App.3d 480, 775 N.E.2d 669, 266 Ill.Dec. 829, (5th Dist., 2002). In that quote, the Nokomis court points out that whether personal property of a tenant is a fixture depends upon the particular facts of the case.

"Whether something is a fixture rather than a piece of personal property depends upon the nature of its attachment to the real estate, its adaptation to and necessity for the purpose for which the premises are devoted, and whether or not it was intended that the item should be considered to be a part of the realty." *Nokomis supra* at 484.

The *Nokomis* opinion further notes that the key element in this analysis is the intent of the parties, i.e. the landlord and the tenant. "Intent is the critical factor to be considered in determining whether the item is a fixture or personal property." *Nokomis supra* at 484.

Questions of intent are always fact based and are rarely, if ever, properly resolved in a 12b(6) motion.

Plaintiffs assert in their complaint that the improvements made to their leased lots were made with the consent and encouragement of the Defendants. (Paragraphs 8 and 9 of Plaintiffs' Complaint). The Plaintiffs further allege that the course of conduct existing for many years was that the Defendants permitted the Plaintiffs and others to sell these improvements to subsequent tenants. (Paragraphs 11 and 12 of Plaintiffs' Complaint). Finally, Plaintiffs allege that they had a reasonable expectation that they could continue to sell these improvements. (Paragraph 12 of the Plaintiffs' Complaint).

Using the factors quoted in *Nokomis*, it is clear that the Plaintiffs have sufficiently alleged that the improvements were not fixtures but rather retained the attributes of personal property belonging to the Plaintiffs. While Defendants may attempt to refute those facts further along in this case, such arguments cannot support a motion to dismiss.

    (b).    <u>The Defendants' Prior Ordinances Do Not Prevent Plaintiffs from Obtaining Property Rights to the Improvements</u>.

Defendants assert that the Plaintiffs' improvements were made contrary to prior

Ordinances issued by Defendant. Defendants then make the leap of logic that therefore Plaintiffs have no protectable interest in those improvements. This argument fails on many levels.

The first problem with the Defendants' position is that the Ordinances cited simply don't say what Defendants want them to say. Defendants quote Section 13E.4 of Ordinance #2001-01.

> "Roofs, decks and antennas may be constructed to Commission specifications (See Exhibit A). Fixtures including, but is [sic] not limited to concrete patios, fences, trailers skirting, oil drum stands, clotheslines, television towers and the like are not permitted. No stairs, steps or sidewalks, etc. shall be excavated, cut into, protruding or disturbing the existing soil. (p.10 of Defendants' Brief)."

From that language, Defendants make the bald statement that "permanent fixtures are not allowed." (pp.10-11 of Defendants' Memorandum of Law). That statement is not supported even by the quoted language. The ordinance specifically permits roofs and decks. Basic rules of physics, let alone accepted construction technology, suggest that neither a roof nor a deck can be constructed without somehow affixing it to the real estate. More importantly, Plaintiffs have alleged in their complaint that these same improvements, i.e. decks and canopies, were in fact affixed to the leased premises (Paragraph 7, 8, 9 and 10 of Plaintiffs' Complaint).

Furthermore, the quoted ordinance does not mention the other types of improvements alleged in Plaintiffs' complaint to wit: covered parking, railings, walkways and landscaping. Whether those improvements were "excavated, cut into, projecting or disturbing the existing

7

soil" is clearly a fact question inappropriate for a 12b(6) motion.

It is also worth noting the vagueness of the quoted ordinance and the internal inconsistencies. How does one construct a deck, which is permitted, without disturbing the existing soil, which is prohibited?

Another defect in the Defendants' position shows itself in Defendants' reliance on Section 19 of the same ordinance.

"All nonconforming structures shall be removed in any event on or before January 1, 2008." Section 19, Ordinance 2001-01.

The first problem for Defendants' argument is that there is no evidence before this court that the improvements alleged in Plaintiffs' complaint are in fact "non-conforming structures." The second problem is that Plaintiffs have alleged that Defendants effectively waived this ordinance. Plaintiffs specifically assert that the Defendants "permitted and encouraged" the Plaintiffs to improve their lots with decks, landscaping, walkways and other permanent and semi-permanent improvements. That permission and encouragement makes the structures "conforming." Further, even if in fact, those improvements were prohibited by the cited ordinance, the Plaintiffs have sufficiently alleged the Defendants' explicit waiver of the enforcement of those ordinances.

The Defendants do not contest that an ownership interest in personal property is a constitutionally protected and recognized property interest. Rather, Defendants assert that, for two reasons, the Plaintiffs do not have such an ownership interest. The Defendants' assertions based on landlord/tenant law are fact based and cannot support a 12b(6) motion.

The Defendants' assertions based on the ordinance rely on a tortured reading of that ordinance and are destroyed by Plaintiffs' well pled facts.

It does appear that Defendants are correct when they argue that a §1983 case cannnot be based on a State constitutional violation. While such cases have clearly made their way into and through the courts, see e.g. *Lamar Whiteco Outdoor Corp. v. The City of West Chicago,* 335 Ill.App.3d 352, 823 N.E.2d 610, (2d Dist., 2005), when directly challenged, the courts have stated the rule espoused in Defendants' motion. As such, subparagraph (b) of paragraph 28 of Plaintiffs' complaint should be stricken. In the alternative, Plaintiffs ask for leave to amend their complaint to remove this subparagraph.

      3.    <u>Count II Properly Pleads a Claim For Insurance Condemnation</u>.

Plaintiffs' complaint alleges that, as a result of actions by the Defendants, the Plaintiffs' property interest in the improvements made on the camping lots has been destroyed. (Paragraphs 10, 11, 12, 16, 17, 29 and 32 of Plaintiffs' Complaint). Despite those straightforward allegations, Defendants now assert that Plaintiffs have **not** alleged a destruction of their property and that the complaint must therefore be dismissed. Defendants are incorrect and the motion should be denied.

In support of their position, the Defendants cite to a single case, *Stahelin v. The Forrest Preserve District of DuPage County*, 376 Ill.App.3d 765, 877 N.E.2d 1121, 315 Ill.Dec. 792, (2d Dist., 2007). Plaintiffs do not dispute that the *Stahelin* opinion provides a concise statement of the law of inverse condemnation, as that law applies to land. However, the case at bar relates to personal property rights, i.e. to the improvements on the land.

Furthermore, Plaintiffs' inverse condemnation claim relies on a particular Illinois statute, the Eminent Domain Act, 735 ILCS 30/10-5-5. Specifically, the Plaintiffs assert that the Defendants, in violating that statute, have taken the Plaintiffs' property.

The Act provides as follows:

"Private property shall not be taken *or damaged* for public use, without just compensation and, in all cases in which compensation is not made by the condemning authority, compensation shall be ascertained by a jury, as provided in this Act." (735 ILCS 30/10-5-5, emphasis added).

Obviously, this statute does not require, as Defendants seem to assert, that the Plaintiffs allege a complete destruction of their property interest.

Even if Plaintiffs' claims were solely constitutional, their complaint must stand. Governmental regulation of property, if it "goes too far," constitutes a taking. *Byron Dragway, v. The County of Ogle*, 326 Ill.App.3d 70 at 73, 759 N.E.2d 595, 259 Ill.Dec. 815, (2d Dist., 2001). For instance, in *Towne v. The Town of Libertyville*, 190 Ill.App.3d 563, 546 N.E.2d 810, 137 Ill.Dec. 865, (2d Dist., 1989), the court found that a taking occurred when the government "radically curtailed the use" of the Plaintiff's property. *Towne supra* at 568. See also *Tim Thompson, Inc. v. The Village of Hinsdale*, 247 Ill.App.3d 863, 617 N.E.2d, 187 Ill.Dec. 506, (2d Dist., 1993), *Byron Dragway, Inc. v. County of Ogle*, 326 Ill.App.3d 70, (2d Dist., 2001), *National Advertising Co. v. The Village of Downers Grove*, 204 Ill.App.3d 499, 561 N.E.2d 1300, 149 Ill.Dec. 604, (2d Dist., 1990) and, *Pete v. The United States*, 209 Ct.Cl. 270, 531 F.2d 1018 at 1031, (1976).

The best law on this question is found in a series of cases brought by billboard

companies. In those cases, ordinances were enacted that prohibited billboards, including existing structures. The court found that, while the actual physical structure could conceivably be disassembled and the parts sold, a taking had occurred. In *The Department of Transportation v. Drury Displays, Inc.*, 327 Ill.App.3d 881, 764 N.E.2d 166, (5th Dist., 2002), the court found a taking as "These outdoor advertising structures could not be disassembled and removed without damaging the integrity of the structures, and such structures could not be economically relocated." *Drury supra* at 884. In *Lamar Whiteco Outdoor Corp. v. City of West Chicago*, 335 Ill.App.3d 352, 823 N.E.2d 610, (2d Dist., 2005), the Plaintiff, as in the case at bar, sued under the Eminent Domain Act. While the opinion was largely centered on a statute of limitation question, the court noted that a taking can occur if the regulation denies the owner "an economically viable" use of their property. *Lamar supra* at 367. In that case, the City issued "tickets" to the Plaintiffs forcing them to remove their billboards. The court found that as a result, the "Plaintiffs are entitled to just compensation under the Eminent Domain Act. . ." *Lamar supra* at 368. This despite the fact that the actual signs did have salvage value.

Plaintiffs clearly have alleged the existence of an ownership interest in the improvements placed on the land and an expectation of a reasonable return on their investment. (Paragraphs 8, 9, 10, 11 and 12 of Plaintiffs' Complaint). Plaintiffs have alleged that the value of that property and the expectation of return has been destroyed or, at a minimum, severely damaged (Paragraphs 10, 16, 17 and 32 of Plaintiffs' Complaint). Nothing more is required to survive a 12b(6) motion.

The Defendants' final argument is that the Plaintiffs' allegation of destruction of their property rights need not be believed. In making that argument, the Defendants miss the point of Plaintiffs' complaint. Count II asserts that, by enacting the offending ordinance, the Plaintiffs are prevented from selling their trailers and improvements on site. And that, as such, the personal property now has at best salvage value. The language of the ordinance is referenced in Paragraph 15 of the complaint. The import of that ordinance is clear on its face: Plaintiffs can no longer reap the value of their improvements. That import is recognized in Paragraph 16 of the complaint and the impact on the value of the improvements is equally obvious and is asserted throughout the complaint.

Defendants' argument that since no Plaintiff has actually been forced to remove his property, no taking has occurred, is a red herring. Since the ordinances are a public record, any potential buyer of the Plaintiff's property is assumed to be aware of the ordinance and its meaning. No reasonably informed buyer would pay a Plaintiff for property that Plaintiff is prohibited from transferring. Plaintiffs have reasonably and properly pled that, as a result of the ordinance, there is simply no market for their property. At trial, Plaintiffs will of course have to prove that allegation with competent evidence. However, Plaintiffs need not produce that evidence at the pleading stage.

## CONCLUSION

Defendants' motion to dismiss is brought pursuant to Federal Rule of Civil Procedure 12(b)6. Under the Standard of Review applicable to this rule, the Defendants' motion must fail. However, Plaintiffs concede the Defendants' motion regarding the unavailability of a

section 1983 claim based on state law. Plaintiffs request leave to either amend their complaint by interlineation or to file an amended complaint.

                                              Respectfully submitted,

                                              PATSY MESTER, EVERETT LINGLEO, TERRY DAVIS and RICHARD HAYNES, Plaintiffs,

                                By:    /s/ Gordon W. Gates
                                       One of Their Attorneys

Gordon W. Gates (#6192861)
***GATES, WISE & SCHLOSSER, P.C.***
1231 South Eighth Street
Springfield, IL 62703
***Telephone: (217) 522.9010***
***Facsimile: (217) 522.9020***

**PROOF OF SERVICE**

The undersigned certifies that on May 27, 2008, the foregoing instrument was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

**John J. Myers**
**Rabin, Myers & Hanken, P.C.**
**1300 South Eighth Street**
**Springfield, IL 62703**

    /s/ Gordon W. Gates

Gordon W. Gates (#6192861)
***GATES, WISE & SCHLOSSER, P.C.***
1231 South Eighth Street
Springfield, IL 62703
***Telephone: (217) 522.9010***
***Facsimile: (217) 522.9020***