E-FILED
Monday, 30 June, 2008  04:13:47 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| PATSY MESTER, EVERETT LINGLEO, TERRY DAVIS and RICHARD HAYNES, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. 08-3080 |
| E. JACOB RETTBURG, JUDI BIVIN, RONALD JOMBOCK, O. ALLEN BUTCHER, FRANK MAYNERICH, M. TODD HATALLA, GARRY WHITSON and MICHAEL McCARTHY, Individually and as Board members of the Otter Lake Water Commission, OTTER LAKE WATER COMMISSION, ADGPTV, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

OPINION

RICHARD MILLS, U.S. District Judge:

This case is before the Court on the Defendants' motion under Federal

Rule of Civil Procedure 12(b)(6) to dismiss the Plaintiffs' complaint.

I. FACTUAL BACKGROUND

In support of their motion to dismiss, the Defendants note that the

Plaintiffs' complaint alleges that Defendant Otter Lake Water Commission, ADGPTV ("the Commission"), is a municipal corporation providing water services to multiple counties in the State of Illinois.  It is governed by Division 135 of Article 11 of the Illinois Municipal Code, 65 ILCS 5/11-135-1, et seq.  The individual Defendants–Jake Rettberg, Judy Bivin, Ronald Jomback, Allen Butcher, Frank Maynerich, Todd Hatalla, Gary Whitson and Michael McCarthy–are members of the Board of the Commission.  The commissioners are appointed to their positions.  They are sued both in their individual and official capacities.[1]

Over the last thirty years, the Commission has leased lots in the campground at Otter Lake to various individuals who include the Plaintiffs. The Plaintiffs are currently tenants at Otter Lake.  Pursuant to their leases, the Plaintiffs have placed camping vehicles on the campsites.

The Plaintiffs were "permitted and encouraged" by "vendors" and by the Commission to improve campground lots with decks, landscaping,

---

[1]Section 1983 actions against individuals in their official capacities are treated as suits brought against the government entity itself.  See Walker v. Sheahan, 526 F.3d 973, 977 (7th Cir. 2008).

2

walkways and other improvements, and the Plaintiffs were permitted to stay on a particular lot for many consecutive years. The improvements were made with the permission and encouragement of the Commission and were made in order to adhere to the ordinances of the Commission. This costs the Plaintiffs "in cash and time."

The improvements are attached to the real estate and are not easily removed. Prior to June 20, 2007, the Plaintiffs bought and sold trailers and improvements on the open market and assigned or sublet leases with the full knowledge and acquiescence and encouragement of the Commission. Thus, the Plaintiffs say they had an expectation of reaping a reasonable return on their investment in the improvements on and to the lots.

Because the "current vendor's lease was scheduled to terminate in 2007," the Commission announced it would be taking over the operations of the campground. On June 20, 2007, the Commission adopted Ordinance No. 2007-02, and the individual Defendants all voted in favor of the measure. The complaint quotes only Section 7(M) of the Ordinance:

> Campsite leases are not assignable, nor may a tenant sublet all or any portion of a Campsite. In no event shall a

3

tenant transfer title to a Permitted Camping Vehicle to a third party while it is on Campsite. However, a tenant may remove and replace the Permitted Camping Vehicle at any time, so long as the tenant produces evidence of ownership of the replacement vehicle prior to placing it on the Campsite.

The Defendants note that the remainder of Ordinance No. 2007-02 is not attached to the complaint, but is attached to the memorandum in support of its motion to dismiss. "In ruling on a 12(b)(6) motion, a district court may take judicial notice of matters of public record without converting the 12(b)(6) motion into a motion for summary judgment." Anderson v. Simon, 217 F.3d 472, 474-75 (7th Cir. 2000).

The Plaintiffs allege that because of the ordinance, "much, if not all of the value of the trailer and the modifications and improvements were destroyed." In Count I of their complaint, the Plaintiffs contend that in adopting Ordinance No. 2007-02, the Commission and its individual members violated the Fifth and Fourteenth Amendments of the Constitution of the United States; Article I, Section 15 of the Illinois Constitution[2] and 42 U.S.C. § 1983 by subjecting "the Plaintiffs to

---

[2]The Plaintiffs acknowledge that a section 1983 claim cannot be based on a state constitutional violation. Thus, subparagraph(b) of paragraph 28 of the

4

deprivation of their constitutional rights by taking, damaging and destroying the Plaintiffs' personal property and expectation of return on investment without just compensation."

Count II is a state law inverse condemnation/regulatory taking count claiming that the private property of the Plaintiffs has been "effectively taken for public use" but that the Commission has "failed to commence eminent domain proceedings, or offer compensation to the Plaintiffs," in violation of 735 ILCS 30/10-5-5. Count II also says that the value of the Plaintiffs' property has been "effectively destroyed and the property is now unsuitable for economically viable purposes."

## II. ANALYSIS

### A. Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), courts construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded facts alleged, while drawing all possible inferences in its favor. See <u>Killingsworth v. HSBC Bank Nevada, N.A.</u>, 507 F.3d 614,

---

complaint will be stricken.

618 (7th Cir. 2007).   The complaint need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief," sufficient to provide the defendant with "fair notice" of the claim and its basis.  See Fed. R. Civ. P. 8(a)(2); see also Bell Atlantic Corp. V. Twombly, __ U.S. __, 127 S. Ct. 1955, 1964 (2007).  The Seventh Circuit recently emphasized that "[a]lthough the opinion contains some language that could be read to suggest otherwise, the Court in Bell Atlantic made clear that it did not, in fact, supplant the basic notice-pleading standard."  Tamayo v. Blagojevich, 526 F.3d 1074, 1082 (7th Cir. 2008) (citations omitted).

B. Immunity

The Defendants assert that Count I must be dismissed because a civil rights lawsuit against the individual Defendants is barred by absolute immunity because Ordinance No. 2007-02 is a legislative act.   "The enactment of an ordinance is a legislative act."  Hawthorne v. Village of Olympia Fields, 204 Ill.2d 243, 253, 790 N.E.2d 832, 839 (2003).

"The doctrine of absolute legislative immunity recognizes that when acting collectively to pursue a view of the public good through legislation,

6

legislators must be free to represent their constituents 'without fear of outside interference' that would result in private lawsuits." <u>Biblia Abierta v. Banks</u>, 129 F.3d 899, 903 (7th Cir. 1997) (citation omitted). "Courts have granted absolute legislative immunity to legislators for various activities which include: (1) core legislative acts such as introducing, debating, and voting on legislation; (2) activities that could not give rise to liability without inquiry into legislative act and the motives behind them; and (3) activities essential to facilitating or preventing the core legislative process." <u>Id.</u> (citations omitted).

The Plaintiffs contend that Defendants have failed to point to any authority tending to show that (1) the commission is a legislative body and the commissioners are legislators; and (2) the ordinance in question is legislation.  The Court granted the Defendants leave to file a reply brief on the issue.

The Defendants allege that in <u>Lake Country Estates, Inc. v. Tahoe Regional Planning Agency</u>, 440 U.S. 391 (1979), the Supreme Court granted legislative immunity to an appointed body to which, in many

respects, the Otter Lake Water Commission is similar, if on a much smaller scale. The body was a regional agency created by interstate compact between California and Nevada and charged with the duty to manage activities in and around Lake Tahoe. See id. at 393-94. The members of the agency were all appointed, some by various county boards in California and Nevada bordering the Lake, and others by the Governors and Speakers of the legislative assembly of each state. See id. at 401-02. The Court held that legislative immunity applied to bar the recovery of federal damages from the members of the appointed body, to the extent the individuals were acting in a legislative capacity. See id. at 405-06.

The Defendants also point to Supreme Court of Virginia v. Consumers Union of United States, Inc., 446 U.S. 719 (1980), wherein the Supreme Court considered whether the Supreme Court of Virginia and its chief justice are immune from suit in a section 1983 action challenging disciplinary rules for members of the state bar. See id. at 721. The Supreme Court observed that the Virginia court was "exercising the State's entire legislative power with respect to regulating the Bar, and its members

8

are the State's legislators for the purpose of issuing the Bar Code." Id. at 734. Thus, the Court concluded that the appointed members of the Virginia court were immune from suit when acting in their legislative capacity. See id.

The Defendants also rely on Bogan v. Scott-Harris, 523 U.S. 44 (1998), wherein the Supreme Court considered whether a city's mayor, vice-president of the city council and other local officials were entitled to legislative immunity. See id. at 46-47. The key inquiry is "the nature of the act" in determining whether it is legislative. See id. at 54. Acts such as voting for an ordinance, introducing a budget and signing into law an ordinance (even by an executive official) are legislative in nature. See id. at 55. "Bogan . . . holds that state and local officials may not be mulcted under § 1983 on account of introducing, voting for, or signing legislation." Nisenbaum v. Milwaukee County, 333 F.3d 804, 808 (7th Cir. 2003).

The Defendants contend, therefore, these Supreme Court cases demonstrate that the Court should look at the functions being carried out by the Otter Lake Water Commission–and not its method of selection--in

adopting the ordinance at issue in this case. Because the Commission adopted an ordinance of general applicability, the Defendants claim the individual members of the Commission are entitled to legislative immunity.

Based on <u>Tahoe Regional Planning Agency</u> and <u>Supreme Court of Virginia</u>, the Plaintiffs' assertion that legislative immunity does not apply because the commissioners are appointed, and not elected, is without merit.

The Plaintiffs further allege a distinction between the commissioners and a legislative body is that, while a true legislative body answers to the citizens, a commissioner "may be removed for any cause for which any other municipal officer may be removed." 65 ILCS 5/11-135-2. They contend that although the Act does not specifically address who or what does the removing, the implication is that the power rests with the village mayors and not with the citizens. However, the Plaintiffs have not pointed to any case which holds that the basis of removal for a commissioner is significant. Rather, it is "the nature of the act." <u>Bogan</u>, 523 U.S. at 54. According to Count I of the Plaintiffs' complaint, the "act" at issue is the legislative act of introducing and/or passing an ordinance.

10

The Plaintiffs also note that the statute requires each individual commissioner to post a "bond for the faithful performance of his official duties." 65 ILCS 5/11-135-2. They question the purpose of a bond if the commissioner enjoys absolute immunity for his acts. The Court is uncertain of the purpose of the bond but that has no apparent relevance to the propriety of damages pursuant to section 1983.

The Plaintiffs further contend that the "applicable code reveals an interesting dichotomy between the commission's powers relative to the water supply versus the powers relative to the campground." Regarding the water supply, "[t]he commission has full and complete supervision, management, and control of the waterworks system." 65 ILCS 5/11-135-3. As for the campground, "[t]he commission is authorized to develop, promote and provide for recreational facilities." Id. The Plaintiffs contend these provisions suggest that the actual supervision, management and control of the campground is a ministerial or administrative act. The ordinance at issue in this case does not "develop, promote or provide" for facilities; it regulates and manages the activities of the campers using the

11

facilities.  Accordingly, the Plaintiffs assert that the ordinance, as applied, is not legislation.  However, the Court finds that the enactment of an ordinance regulating and managing the activities of the campers using the facilities is legislation.

The individual Defendants cannot be held liable under section 1983 for voting for or passing an ordinance.  See Bogan, 523 U.S. at 55; see also Nisebaum, 333 F.3d at 808.  That, in essence, is what Count I of the complaint attempts to do.

The Court concludes that the enactment of an ordinance which prohibits lessees from subletting or assigning a lease and also prohibits them from selling camping vehicles and improvements at the site constitutes a legislative act.  Thus, by enacting Ordinance No. 2007-02, the  Defendant Commissioners engaged in a legislative act.  Accordingly, because the individual Defendants are entitled to legislative immunity, the motion to dismiss Count I will be ALLOWED as to them.

C. Property interest

Count I of the Plaintiffs' complaint includes a section 1983 claim

12

against the Defendant Commission.  The parties note that the Plaintiffs

must allege the existence of a property interest in order to state a claim

under section 1983.  The Defendants say the Plaintiffs have failed to do so

because the property interest they allege does not exist under state law, in

that it is precluded by Illinois landlord-tenant law and by the ordinances of

the Commission.

According to the complaint, the improvements at issue are "attached

to the real estate."  The Defendants note that the Illinois Appellate Court

has stated:

> A fixture is deemed a part of the real estate and therefore cannot
> be removed by a tenant without incurring liability.  Whether
> something is a fixture rather than a piece of personal property
> depends upon the nature of its attachment to the real estate, its
> adaptation to and necessity for the purpose for which the
> premises are devoted, and whether or not it was intended that
> the item should be considered to be a part of the realty.

Nokomis Quarry Co. v. Dietl, 333 Ill. App.3d 480, 484 (5th Dist. 2002).

The Defendants assert that, under Illinois law, a tenant has no right to a

permanent improvement to the landlord's property.  The Plaintiffs contend

that as tenants, they have a right to their improvements.  Although a fixture

attached to realty may become a landlord's property, they assert that the determination of whether personal property is a fixture is a factual issue. The Plaintiffs further allege that the improvements made to their leased lots were made with the consent and encouragement of the Defendants. They claim they had a reasonable expectation that they could sell these improvements to subsequent tenants.

The Plaintiffs contend, moreover, that prior ordinances do not prevent them from obtaining property rights to the improvements. They note that Defendants rely on Section 13E.4 of Ordinance #2001-01, which states:

> Roofs, decks and antennas may be constructed to Commission specifications (See Exhibit A). Fixtures including, but is [sic] not limited to concrete patios, fences, trailers skirting, oil drum stands, clotheslines, television towers, and the like are not permitted. No stairs, steps or sidewalks, etc. shall be excavated, cut into, protruding or disturbing existing soil.

The Plaintiffs claim that the ordinances permitted roofs and decks and that the complaint alleges that decks and canopies were affixed to the leased premises. The ordinance does not mention other types of improvements alleged in the Plaintiffs' complaint, including covered parking, railings, walkways and landscaping. Thus, they allege whether such improvements

14

were "excavated, cut into, protruding or disturbing existing soil" is clearly a factual question that cannot yet be resolved.

The Plaintiffs further assert that the ordinance is vague and includes internal inconsistencies. They question how one can construct a deck, which is permitted, without disturbing the existing soil, which is not.

The Plaintiffs next address the Defendants' reliance on Section 19D, Ordinance 2001-01 which provides, "All nonconforming structures shall be removed in any event on or before January 1, 2008." The Plaintiffs contend there is no evidence the improvements alleged in the complaint are in fact "nonconforming structures." They assert, moreover, that by permitting and encouraging the Plaintiffs to improve their lots, the Defendants in effect waived this ordinance.

The Defendants contend that the combined effect of Sections 13E.4 and 19D of Ordinance No. 2001-01 are that permanent fixtures are not allowed, and any that existed in 2001 had to be amortized over a seven-year period. To the extent that Plaintiffs made permanent improvements to real property after the passage of Ordinance No. 2001-01, the Defendants assert

15

they violated the ordinance.  If the Plaintiffs purchased a preexisting nonconforming improvement, then they took the improvement subject to the amortization period expiring on January 1, 2008.  The Defendants contend that regardless of the timing, there is no "recognized liberty or property interest" at stake for section 1983 purposes.

When the factual allegations are accepted as true and all possible inferences are drawn in favor of the Plaintiffs, the Court finds that Plaintiff has sufficiently alleged the existence of a property interest.  The complaint includes enough allegations to survive a motion to dismiss.  Intent is the most important factor in determining whether something is a fixture or personal property.  See Nokomis Quarry, 333 Ill. App.3d at 484.  The Plaintiffs note they allege in their complaint  that the improvements were made with the encouragement of the Defendants.  The complaint also includes an allegation that Defendants typically permitted the Plaintiffs and others to sell these improvements to subsequent tenants.  For these reasons, the Court cannot conclude, at this stage of the litigation, that Plaintiff is unable to allege a property interest.

The Court will DENY the motion to dismiss the section 1983 claim as to the Commission.  Because this means a federal claim remains pending, the Court will now consider the motion to dismiss the Plaintiffs' state law claim.

### D. Inverse condemnation

Count II of the complaint alleges a claim for inverse condemnation. The Plaintiffs contend that, as a result of the Defendants' actions, their property interest in the improvements made on the camping lots has been destroyed.  "Illinois law provides a judicially-created remedy of inverse condemnation for property owners aggrieved by municipal legislation." Hager v. City of West Peoria, 84 F.3d 865, 869 (7th Cir. 1996).  The Defendants note that the law of inverse condemnation was summarized in Stahelin v. Forest Preserve Dist. Of DuPage County, 376 Ill. App.3d 765 (2d Dist. 2007):

> An inverse condemnation action is a proceeding by a landowner against a responsible government entity to compel the institution of eminent domain proceedings where there has been a taking without just compensation. . . . The takings clause of the fifth amendment provides that private property shall not "be taken for public use, without just compensation." . . . The

17

takings clause is made applicable to the states through the fourteenth amendment. . . .

"A governmental taking of private property for public use can occur in different ways." . . . One manner of taking occurs when there is an actual physical invasion by the government onto an individual's property. . . . Where there is even the slightest physical intrusion onto the property by the government, and despite any legitimate public purpose, a taking requiring just compensation has occurred. . . .

A second manner of taking property occurs where governmental regulation radically curtails a property owner's rights such that "all economically beneficial or productive use of land" is denied. . . . Under this standard, only the most severe governmental regulation amounts to a taking requiring just compensation. The Supreme Court has recognized that governmental regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster, and such "regulatory takings" may be compensable under the fifth amendment.

Id. at 771-72 (internal citations omitted). The Defendants allege that the

individual Commissioners must be dismissed because while Illinois law

permits a unit of government to be the defendant in a regulatory action,

there is no authority to name individual members of the corporate

authority. The Defendants further contend that Count II should be

dismissed for another reason–it alleges neither a physical invasion nor the

18

destruction of the value of the Plaintiffs' property.

The claim against the individual Defendants will be dismissed because inverse condemnation claims are viable only against government entities. The Defendants allege the Court need not accept Plaintiffs' characterization that the value of their property has been "effectively destroyed." They note that the court in <u>Stahelin</u> stated that it "need not accept as true plaintiffs' subjective description of the ordinances' effects upon them;" rather, it must "determine only whether the ordinances' regulation of plaintiffs' property is tantamount to a direct appropriation or ouster." <u>Stahelin</u>, 376 Ill. App.3d at 773.

The Plaintiffs allege they can no longer reap the value of their improvements because of the passage of the "offending ordinance." Because they are prevented from selling their trailers and improvements on site, the Plaintiffs contend that their personal property now has, at best, salvage value.

At this stage of the litigation, the Court is unable to definitively conclude that the ordinance does not deprive the Plaintiffs of "all

economically beneficial or productive use of land." Thus, the motion to dismiss will be DENIED as to the Commission.

## III. CONCLUSION

Because the Plaintiffs' section 1983 claims against the individual Defendants are barred by legislative immunity, and because an inverse condemnation action may not be maintained against individuals, the Court will ALLOW the motion to dismiss both counts as to the individual Defendants. The motion to dismiss Counts I and II as to Defendant Otter Lake Water Commission, ADGPTV, will be DENIED.

Ergo, the Defendants' motion pursuant to Rule 12(b)(6) to dismiss [d/e 2] is ALLOWED as to Defendants Rettberg, Bivin, Jombock, Butcher, Maynerich, Hatalla, Whitson and McCarthy. The motion to dismiss is DENIED as Defendant Otter Lake Water Commission, ADGPTV. Subparagraph 28(b) of the Plaintiffs' complaint is hereby Stricken.

Following the Defendant's service of an answer to the complaint, the parties are DIRECTED to contact United States Magistrate Judge Byron G. Cudmore for the purpose of scheduling a discovery conference.

ENTER: June 30, 2008

FOR THE COURT:

s/Richard Mills
United States District Judge