**E-FILED**
Friday, 18 July, 2008  02:26:01 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| PATSY MESTER, EVERETT LINGLEO, | ) | |
| TERRY DAVIS and RICHARD HAYNES, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.  08-3080 |
| | ) | |
| E. JACOB RETTBERG, JUDI BIVIN, | ) | |
| RONALD JOMBOCK, O. ALLEN BUTCHER, | ) | |
| FRANK MAYNERICH, M. TODD | ) | |
| HATALLA, GARRY WHITSON and | ) | |
| MICHAEL McCARTHY, Individually and | ) | |
| as Board members of the Otter Lake Water | ) | |
| Commission, OTTER LAKE WATER | ) | |
| COMMISSION, ADGPTV, | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER TO COMPLAINT

Defendant, Otter Lake Water Commission, ADGPTV, by its attorney, John M. Myers, answers the Complaint as follows:

1.     Defendant admits the allegations in Paragraph 1.

2.     The individual commissioners having been dismissed, Defendant makes no answer to Paragraph 2.

3.     Defendant admits the allegations in Paragraph 3, except for the allegation that land was "improved by ADGPTV."  To the best belief of the Defendant, the land was improved by persons who leased the land from the Commission and operated the

campground pursuant to the lease (such persons are referred to herein as "Concessionaires").

4.     Defendant admits that it leased the land adjacent to the Lake to the Concessionaires, who in turn sublet lots to individuals, and that in connection with their subleases, the Plaintiffs and other individuals placed camping vehicles on the subleased campsites.   Except as specifically admitted, Defendant denies the allegations in Paragraph 4.

5.     Defendant admits the allegations in Paragraph 5.

6.     Defendant states that prior to October, 2007, it leased the campground to Concessionaires pursuant to long term leases.  The Concessionaires in turn entered into contracts with Plaintiffs and other campers.  The Concessionaires were obliged to enforce Commission ordinances with respect to activities on the lake.   To the extent that the allegations in Paragraph 6 are inconsistent with the foregoing, they are denied.

7.     Defendant admits the allegations in Paragraph 7, except for the allegation that the compliance requirements mandate "improvements", which is denied.

8.     Defendant admits that consistent with Commission ordinances, the Plaintiffs and other sublessees of the Concessionaires were permitted to improve the campground lots with decks, landscaping, walkways, canopies, railings and other permanent and semi-permanent improvements.  Defendant admits that the Concessionaire permitted Plaintiffs and other lessees to renew their annual lot subleases consecutively for extended periods of time.  Defendant is without knowledge as to what activities were "encouraged" by the Concessionaires and therefore denies that allegation.   Defendant

- 2 -

denies "encouraging" the Plaintiffs to make improvements. Defendant denies the remaining allegations in Paragraph 8 to the extent they are inconsistent with the foregoing.

9.    Defendant admits permitting improvements in accordance with Commission ordinances. Defendant admits passing ordinances governing the improvements. Defendant is without knowledge sufficient to form a belief as to the truth of the allegation that the work "cost Plaintiffs in cash and time", and therefore denies the allegation. Defendant denies the remaining allegations contained in Paragraph 9.

10.    Defendant is without knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 10 and therefore denies them.

11.    Defendant admits that from time to time certain sublessees of the Concessionaires sold trailers and improvements on the open market, and that the fact but not the terms of such sales occurred with the knowledge of the Defendant, at least in some cases. Defendant admits from time to time collecting a transfer fee. Defendant lacks knowledge regarding the specific circumstances of the Plaintiffs as to any sales or purchases they may have made, and therefore denies those allegations. Defendant denies the remaining allegations in Paragraph 11.

12.    Defendant denies the allegations contained in Paragraph 12.

13.    Defendant admits that the lease to Concessionaire Peggy Roberts terminated in 2007 and that Defendant announced it would be taking over the campground. Defendant denies that Roberts was a "vendor" as defined in Paragraph 6 of the Complaint; rather, Roberts was a Concessionaire as herein described.

14.     Defendant admits the allegations contained in Paragraph 14 of the Complaint.

15.     Defendant admits the allegations contained in Paragraph 15 of the Complaint, except for the term "sweeping," which is denied.

16.     Defendant states that the quoted provision of Ordinance 2007-02 speaks for itself and that the remaining allegations in Paragraph 16 are legal conclusions as to which no response is required.

17.     Defendant denies the allegations in Paragraph 17 of the Complaint.

18.      Defendant denies the allegations in Paragraph 18 of the Complaint.

19.     Defendant admits the allegations in Paragraph 19 of the Complaint.

20.     Defendant admits the allegations in Paragraph 20 of the Complaint.

21.     Defendant admits the allegations in Paragraph 21 of the Complaint.

22.     Defendant admits the allegations in Paragraph 22 of the Complaint.

23.     Defendant admits the allegations in Paragraph 23 of the Complaint.

24.     Defendant states that it is not governed by Division 126 of the Illinois Municipal Code but is rather governed by Division 135 of the Illinois Municipal Code, 65 ILCS 5/11-135-1 et seq., and consequently, denies the allegations in Paragraph 24.

## COUNT I

1-24.   Defendant realleges and incorporates by reference its answers to Paragraphs 1-24 as and for its answers to Paragraphs 1-24 of Count I.

25.     Defendant admits the allegations in Paragraph 25 insofar as they relate to it. Defendant states that since the individual board members have been dismissed from this case, no response to the remaining allegations in Paragraph 25 is necessary.

26.     Defendant admits the allegations in Paragraph 26 insofar as they relate to it. Defendant states that since the individual board members have been dismissed from this case, no response to the remaining allegations in Paragraph 26 is necessary.

27.     Defendant denies the allegations in Paragraph 27 of the Complaint.

28.     Defendant denies the allegations in Paragraph 28 of the Complaint, except for subparagraph (b) thereof, which has been stricken and therefore requires no answer.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

As and for its First Affirmative Defense, Defendant asserts that is has qualified immunity with respect to its acts as alleged in the Complaint.

### Second Affirmative Defense

As and for its Second Affirmative Defense, Defendant states that the Plaintiffs have not as yet suffered any damage, and consequently the case is not ripe.

### Third Affirmative Defense – Plaintiff Richard Haynes

As and for its Third Affirmative Defense applicable to Plaintiff Richard Haynes, Defendant states as follows.

1.     On October 13, 2001, Haynes executed a document, a copy of which is attached hereto as Exhibit A, as part of his sublease arrangement with the former Concessionaire.  The document states, among other things, as follows:

- 5 -

(a)    'Lots may not be subleased'

(b)    'Concessionaire can terminate a lease, without a refund of fees, if the lessee does not meet or comply with the lake rules and regulations as set forth by the Water Commission and Concessionaire.'

(c)    'No permanent fixture of any nature shall be constructed on any campsite.  Portable patios, porches and any portable roofs will be permanent only if built to the specifications as provided by the Commission and approved by the Concessionaire and the Commission. Maintenance/Building Permits required.'

SALE OF TRAILERS:  When a trailer is sold while on the lot, the Seller must obtain approval of the Buyer from the Concessionaire, and Seller is responsible for a transfer fee of $300.00.  The Seller and Buyer shall sign a Waiver at the time of the transfer acknowledging that neither the Commission or the Concessionaire is a party to such a transfer and indemnifying both the Concessionaire from any and all liability related to such sale or transfer.

2.    On October 21, 2007, Haynes entered into an agreement with Defendant captioned "Camping Lot Lease", a copy of which is attached hereto as Exhibit B.  The Camping Lot Lease says, among other things:

8.    TENANT'S DUTIES:  Tenant shall:

D.    Make no permanent improvements to the Premises, nor erect or place any building, shed or structure that is permanently affixed to the Premises unless specifically permitted in writing by Landlord;

E.    At the expiration of the lease (and subject to the privilege of winter storage as set forth in paragraph 3), remove the Permitted Trailer, all vehicles and all other personally property, and return the Premises to its original condition, fair wear and tear excepted.

13.    RIGHT TO RENEW:  Landlord may elect not to lease the Premises to anyone in the season following the expiration of this Lease.  However, if Landlord elects to lease the Premises in the following season, then Tenant shall have a right to renew this Lease for such season at the current fees established by Ordinance, so long as Tenant is in compliance with all

Ordinances and regulations of the Landlord and has not breached this Lease.

3.    Exhibits A and B bar the relief sought by Plaintiff Haynes.

**<u>Third Affirmative Defendant – Plaintiff Terry Davis</u>**

As and for its Third Affirmative Defense applicable to Plaintiff Terry Davis, Defendant states as follows.

1,    On October 6, 2002, Davis executed a document, a copy of which is attached hereto as Exhibit C, as part of his sublease arrangement with the former Concessionaire.  The document states, among other things, as follows:

(a)    'Lots may not be subleased'

(b)    'Concessionaire can terminate a lease, without a refund of fees, if the lessee does not meet or comply with the lake rules and regulations as set forth by the Water Commission and Concessionaire.'

(c)    'No permanent fixture of any nature shall be constructed on any campsite.  Portable patios, porches and any portable roofs will be permanent only if built to the specifications as provided by the Commission and approved by the Concessionaire and the Commission. Maintenance/Building Permits required.'

SALE OF TRAILERS:  When a trailer is sold while on the lot, the Seller must obtain approval of the Buyer from the Concessionaire, and Seller is responsible for a transfer fee of $300.00.  The Seller and Buyer shall sign a Waiver at the time of the transfer acknowledging that neither the Commission or the Concessionaire is a party to such a transfer and indemnifying both the Concessionaire from any and all liability related to such sale or transfer.

2.    On October 9, 2007, Davis entered into an agreement with Defendant captioned "Camping Lot Lease", a copy of which is attached hereto as Exhibit D.  The Camping Lot Lease says, among other things:

8.    TENANT'S DUTIES:   Tenant shall:

D.    Make no permanent improvements to the Premises, nor erect or place any building, shed or structure that is permanently affixed to the Premises unless specifically permitted in writing by Landlord;

E.    At the expiration of the lease (and subject to the privilege of winter storage as set forth in paragraph 3), remove the Permitted Trailer, all vehicles and all other personally property, and return the Premises to its original condition, fair wear and tear excepted.

13.    RIGHT TO RENEW:  Landlord may elect not to lease the Premises to anyone in the season following the expiration of this Lease.  However, if Landlord elects to lease the Premises in the following season, then Tenant shall have a right to renew this Lease for such season at the current fees established by Ordinance, so long as Tenant is in compliance with all Ordinances and regulations of the Landlord and has not breached this Lease.

3.    Exhibits C and D bar the relief sought by Plaintiff Davis.

**<u>Third Affirmative Defendant – Plaintiff Everett Lingleo</u>**

As and for its Third Affirmative Defense applicable to Plaintiff Everett Lingleo, Defendant states as follows.

1.    On June 30, 2006, Lingleo executed a document, a copy of which is attached hereto as Exhibit E, as part of his sublease arrangement with the former Concessionaire.  The document states, among other things, as follows:

(a)    'Lots may not be subleased'

(b)    'Concessionaire can terminate a lease, without a refund of fees, if the lessee does not meet or comply with the lake rules and regulations as set forth by the Water Commission and Concessionaire.'

(c)    'No permanent fixture of any nature shall be constructed on any campsite.  Portable patios, porches and any portable roofs will be permanent only if built to the specifications as provided by the Commission

and approved by the Concessionaire and the Commission. Maintenance/Building Permits required.'

SALE OF TRAILERS:  When a trailer is sold while on the lot, the Seller must obtain approval of the Buyer from the Concessionaire, and Seller is responsible for a transfer fee of $300.00.  The Seller and Buyer shall sign a Waiver at the time of the transfer acknowledging that neither the Commission or the Concessionaire is a party to such a transfer and indemnifying both the Concessionaire from any and all liability related to such sale or transfer.

2.      On November 25, 2007, Lingleo entered into an agreement with Defendant captioned "Camping Lot Lease", a copy of which is attached hereto as Exhibit F.  The Camping Lot Lease says, among other things:

8.      TENANT'S DUTIES:  Tenant shall:

D.      Make no permanent improvements to the Premises, nor erect or place any building, shed or structure that is permanently affixed to the Premises unless specifically permitted in writing by Landlord;

E.      At the expiration of the lease (and subject to the privilege of winter storage as set forth in paragraph 3), remove the Permitted Trailer, all vehicles and all other personally property, and return the Premises to its original condition, fair wear and tear excepted.

13.     RIGHT TO RENEW:  Landlord may elect not to lease the Premises to anyone in the season following the expiration of this Lease.  However, if Landlord elects to lease the Premises in the following season, then Tenant shall have a right to renew this Lease for such season at the current fees established by Ordinance, so long as Tenant is in compliance with all Ordinances and regulations of the Landlord and has not breached this Lease.

3.      Exhibits E and F bar the relief sought by Plaintiff Lingleo.

**Third Affirmative Defendant – Plaintiff Patsey Mester**

As and for its Third Affirmative Defense applicable to Plaintiff Patsey Mester, Defendant states as follows.

- 9 -

1.      On April 17, 2004, Mester executed a document, a copy of which is attached hereto as Exhibit G, as part of her sublease arrangement with the former Concessionaire.  The document states, among other things, as follows:

(a)     'Lots may not be subleased'

(b)     'Concessionaire can terminate a lease, without a refund of fees, if the lessee does not meet or comply with the lake rules and regulations as set forth by the Water Commission and Concessionaire.'

(c)     'No permanent fixture of any nature shall be constructed on any campsite.   Portable patios, porches and any portable roofs will be permanent only if built to the specifications as provided by the Commission and approved by the Concessionaire and the Commission. Maintenance/Building Permits required.'

SALE OF TRAILERS:  When a trailer is sold while on the lot, the Seller must obtain approval of the Buyer from the Concessionaire, and Seller is responsible for a transfer fee of $300.00.  The Seller and Buyer shall sign a Waiver at the time of the transfer acknowledging that neither the Commission or the Concessionaire is a party to such a transfer and indemnifying both the Concessionaire from any and all liability related to such sale or transfer.

2.      On October 27, 2007, Mester entered into an agreement with Defendant captioned "Camping Lot Lease", a copy of which is attached hereto as Exhibit H.  The Camping Lot Lease says, among other things:

8.      TENANT'S DUTIES:  Tenant shall:

D.      Make no permanent improvements to the Premises, nor erect or place any building, shed or structure that is permanently affixed to the Premises unless specifically permitted in writing by Landlord;

E.      At the expiration of the lease (and subject to the privilege of winter storage as set forth in paragraph 3), remove the Permitted Trailer, all vehicles and all other personally property, and return the Premises to its original condition, fair wear and tear excepted.

13.    RIGHT TO RENEW:   Landlord may elect not to lease the Premises to anyone in the season following the expiration of this Lease.  However, if Landlord elects to lease the Premises in the following season, then Tenant shall have a right to renew this Lease for such season at the current fees established by Ordinance, so long as Tenant is in compliance with all Ordinances and regulations of the Landlord and has not breached this Lease.

3.    Exhibits G and H bar the relief sought by Plaintiff Mester.

**Fourth Affirmative Defense**

As and for its Fourth Affirmative Defense, Defendant states as follows:

1.    Attached hereto as Exhibit I is Ordinance 2001-01.

2.    Section 13E.4 of Ordinance No. 2001-01 provides as follows:

Roofs, decks and antennas may be constructed to Commission specifications (See Exhibit A).  Fixtures including, but is [sic] not limited to concrete patios, fences, trailers skirting, oil drum stands, clotheslines, television towers and the like are not permitted.  No stairs, steps or sidewalks, etc. shall be excavated, cut into, protruding or disturbing the existing soil.

3.    Section 19 of Ordinance No. 2001-01 provided that "all nonconforming structures shall be removed in any event on or before January 1, 2008."

4.    At the time the Plaintiffs purchased or constructed their alleged improvements, they knew or should have known, that the alleged improvements were either forbidden, on the one hand, or had to be removed by January 1, 2008, on the other.

5.    Accordingly, the relief sought by Plaintiffs is barred.

## COUNT II

1-24.  Defendant incorporates its answers to Paragraphs 1-24 as and for its answer to Paragraphs 1-24 of Count II.

- 11 -

25-28. Count II alleges no paragraphs 25-28, and consequently Defendant makes no answer thereto.

29.     Defendant denies the allegations in Paragraph 29.

30.     Defendant admits it has failed to commence eminent domain proceedings or offer compensation to Plaintiffs, and denies that it has taken Plaintiffs' private property.

31.     Defendant denies the allegations in Paragraph 31.

32.     Defendant denies the allegations in Paragraph 32.

33.     Defendant admits the allegations in Paragraph 33.

## **AFFIRMATIVE DEFENSES**

Defendant realleges its First through Fourth Affirmative Defenses to Count I as and for its First through Fourth Affirmative Defenses to Count II.

WHEREFORE, Defendant demands judgment in its favor.

OTTER LAKE WATER COMMISSION,
ADGPTV,

Defendant,

By:   /s/ John M. Myers
        One of Their Attorneys

John M. Myers
Rabin, Myers, Schuering & Hanken, P.C.
1300 South Eighth St.
Springfield, IL 62703
217.544.5000
217.544.5017 (fax)
jmyers@springfieldlaw.com

# OTTER LAKE PARK

**Rural Route 1     Box 127, Girard, IL 62640**

**Phone (217) - 627-2416**

## LOT LEASE AGREEMENT

CAMPING AREA _____WEST_____ CAMP SITE NUMBER _____84_____

THE UNDERSIGNED CAMPER(S) ACCEPTS CAMPING PRIVILEGES ON OTTER LAKE CAMPGROUNDS WITH THE UNDERSTANDING THAT HE DOES HEREBY RELEASE THE OTTER LAKE PARK, ITS OWNERS AND EMPLOYEES OF ALL LIABILITY FOR LOSS OR DAMAGE TO PROPERTY AND INJURY TO HIS PERSON ARISING OUT OF THE USE OF THE CAMPING FACILITIES, AND AGREES TO INDEMNIFY OTTER LAKE PARK, ITS OWNERS AND EMPLOYEES AGAINST CLAIMS RESULTING FROM LOSS OR DAMAGE TO PROPERTY OR INJURY TO THE PERSON OF ANY MEMBER OF THE FAMILY OR GUEST OF THE REGISTERED CAMPER ARISING OUT OF THE USE OF ITS CAMPING FACILITIES.

_____ DATE _10/13/01_
SIGNATURE OF LEASEE

_____ DATE _10/13/01_
SIGNATURE OF SPOUSE (IF APPLICABLE)

PLEASE PRINT NAME(S) IN FULL _Richard R Haynes_

ADDRESS _17016 Kessler Rd._
STREET OR P.O. BOX #

_Divernon_            _Il._        _62530_
CITY                  STATE        ZIP CODE

TELEPHONE _( 217 )· 628· 3495_ _____RESIDENCE

_( 217 )· 789· 2500  X 5200_ _____BUSINESS

IN CASE OF EMERGENCY CONTACT:

NAME _____

TELEPHONE _____

MAKE OF TRAILER _Carri -Lite_

YEAR BUILT _1986_

UNIT LENGTH _30'_

COLOR(S) _White - Maroon_

TYPE OF UNIT _Travel Trailer_

EXHIBIT

_A_

Lot No.: _54 W_

Year: _____2008_____

## CAMPING LOT LEASE
### (Customer)

THIS CAMPING LOT LEASE is made on _OcToBER 21_____, 200_7_, between the Otter Lake Water Commission, an Illinois public corporation, ("Landlord") and the undersigned persons _Richard + LEE ANN HAYNES_ who are referred to herein collectively as "Tenant".

1.    RENTAL OF PREMISES:    Landlord leases to Tenant, and Tenant leases from Landlord, the premises commonly known and described as: Camping Lot # _54 W_, of the Otter Lake Campground, Macoupin County, Illinois (the "Premises").

Tenant may place a single recreational camping trailer on the Premises, VIN _5MGTE272S6500388Z_ (the "Permitted Trailer") and may use the Permitted Trailer, the Premises, and the facilities of the Otter Lake Campground (the "Park") for recreational purposes only.  Up to 2 automobiles belonging to Tenant and the Permitted Trailer may be parked on the Premises, but only when the Tenant is present, but only so long as the automobiles and Permitted Trailer do not interfere with use by others of the campground and roads.

Tenant's guests may park automobiles at the Premises only when Tenant is present, and only if the automobiles do not interfere with use by others of the campground and roads.

Tenant's and Tenant's guests' automobiles shall be registered with the Park Office.

2.    TERM: The term of this Lease shall be from March 1 through November 30, 2008.

3.    RENT PAYMENT:  Rent is _$525.00_ per season.  Rent is payable in advance in two equal installments.  The first installment of $262.50 is due and payable on November 1, 2007, or the date of execution of this Lease, whichever is later.  The second installment of $262.50 is due and payable on May 1, 2008.  Rent shall be paid to the Manager at the Park Office or may be mailed to Otter Lake Water Commission, P.O. Box 468, Virden IL 62690.

Any installment not received by the Commission by the due date shall be subject to a late fee of $10.00 per day.  If an installment is not paid within 15 days after the due date, together with any applicable late fees, Landlord may terminate this Lease by notice to Tenant.

There will be no prorations of rent under any circumstances.

☑ (Check if applicable) For the additional fee of _$70.00_ paid not later than the due date of the first installment, Tenant may store the Permitted Trailer on the Premises from December 1 of the year of this Lease through and including the end of February of the following year.

☑ (Check if applicable) For the additional fee of _$25.00_ paid not later than the due date of the second installment, Tenant may have a boat dock of approved design on the Premises during the term of this Lease.  A limit of two docks per site.  Tenant is assigned dock # _54 W_.

EXHIBIT

_B_

4.    UTILITIES: Landlord will provide potable water to the Premises, the price of which is included in the rent. Landlord will provide garbage services for the Premises, which are included in the rent, consisting of the availability of dumpsters, subject to Park rules and regulations. Landlord shall provide electric services, which shall be metered and charged to Tenant from time to time in separate bills, and shall be payable within 30 days of mailing or delivery.

5.    SECURITY DEPOSIT FOR ELECTRIC SERVICE:  Along with the first installment of rent, Tenant shall pay a security deposit for electric service in the amount of $50.00 , which shall be returned without interest to the Tenant after the Tenant has vacated the Premises, provided that the Tenant has paid all electric charges in full.  If the Tenant leases the Premises for successive and additional terms, Landlord shall apply the deposit to the subsequent term, provided all bills are then current.

6.    LEGAL OCCUPANTS: The legal occupants of the Premises shall be limited to Tenant and Tenant's guests.  Tenant's guests shall be accompanied by Tenant at all times. Guests shall abide by the rules of the Park, and their failure to do so shall be treated as a breach by Tenant of this lease.  All guests shall register themselves, their vehicles and their boat trailers with the Park Office.

7.    ACCEPTANCE OF POSSESSION: Tenant has inspected the Premises and all related areas and grounds.  Tenant is satisfied with the physical condition thereof by accepting possession of the Premises. Tenant agrees that no representations, warranties (expressed or implied) or covenants with respect to the condition, maintenance or improvements of the Premises, or Park have been made to Tenant. TENANT RECOGNIZES THAT THE PREMISES AND PARK FACILITIES ARE INTENDED TO BE PRIMITIVE AND RECREATIONAL, AND NOT INTENDED OR FIT FOR PERMANENT HABITATION, AND THAT LANDLORD HAS MADE NO WARRANTIES OR REPRESENTATIONS AS TO HABITABILITY OF THE PREMISES OR THEIR SUITABILITY FOR ANY PARTICULAR PURPOSE, AND EXPRESSLY DISCLAIMS ANY SUCH WARRANTIES OR REPRESENTATIONS.

8.    TENANT'S DUTIES:  Tenant shall:

A.    Promptly pay rent and electric bills when due;

B.    Abide by Park Rules And Regulations as set forth in Otter Lake Water Commission Ordinance No. _2007-02_ and shall cause all of Tenant's guests to abide by the Park Rules And Regulations.  The Park Rules And Regulations in effect as of the date of this Lease are attached hereto as Exhibit A, and are subject to change from time to time by Landlord in its sole discretion; provided, however, that Landlord shall notify Tenant of any such changes. By signing this Lease, the Tenant acknowledges that Tenant has received and read the Park Rules and Regulations;

C.    Not deliberately or negligently destroy, deface, damage, impair or remove any part of the Premises, Park Facilities (including but not limited to rest rooms, shower facilities, other common areas); Otter Lake, its shoreline, wildlife (except for permitted fishing), trees or other vegetation other than grass on the Premises, or water treatment facilities, or any other of Landlord's property, or knowingly permit any guest to do so;

D.    Make no permanent improvements to the Premises, nor erect or place any building, shed or other structure that is permanently affixed to the Premises unless specifically permitted in writing by Landlord;

E.    At the expiration of the lease (and subject to the privilege of winter storage as set forth in paragraph 3), remove the Permitted Trailer, all vehicles and all other personal property, and return the Premises to its original condition, fair wear and tear excepted.

9.    LANDLORD'S RIGHTS AND REMEDIES.  Landlord may terminate this Lease in the event of any breach by Tenant of any provision of this Lease, or in the event of any violation by Tenant's guests of the Park Rules and Regulations.  Landlord shall terminate this Lease by notice to Tenant in writing, which notice may be hand delivered to Tenant or mailed to Tenant's address specified below Tenant's signature.  Mailing of notice to such address by first class mail shall conclusively be deemed proper service as of a date four days after the date of mailing.  In the event Landlord terminates this Lease, or in the event Tenant holds over after expiration of this Lease, Landlord shall be entitled to all remedies available pursuant to law, including money damages and eviction.  If the Tenant holds over, Landlord shall be entitled, in addition to any other remedies,  (a) to rental in the amount of twice the rental rate specified in this Lease; (b) to move Tenant's trailer and have it towed to a storage lot, in which case Tenant shall be liable to the owner of the lot for all towing and storage expenses and may be subject to a lien therefor; and (c) to remove and dispose of any structures or personal property that have been erected or placed by Tenant on the Premises, without further liability to Tenant.

10.    LEASE BINDING ON ALL TENANTS: This Lease shall be binding upon and inure to the benefit of all Tenants.  Any judgments awarded against any Tenant will be joint and several with all other Tenants.   This Lease may not be assigned by any Tenant, nor may the Premises be subleased by any Tenant, under any circumstances.  Notice to one Tenant is notice to all Tenants.

11.    TENANT'S INSURANCE AND RISK OF LOSS:  Landlord is not an insurer of Tenant's person or property. It is the Tenant's responsibility to procure renter's and premises liability insurance, and the Landlord is not responsible for any property losses from any event relating to the Premises or the facilities in the Park.  Nor shall Landlord shall be liable for any personal injury occasioning from any event relating to the Tenant's occupancy and other use of the Premises or the facilities in the Park.  Tenant agrees that all of Tenant's person and property in or on the Premises (including Tenant's guests and invitees) shall be at the sole risk of Tenant.

12.    PROVISIONS RELATING TO PERMITTED TRAILER: Prior to execution of this Lease, Tenant has provided proof of ownership (a photocopy of a current title) of the Permitted Trailer. Tenant shall remain the owner of the Permitted Trailer at all times during the term of this Lease, and in no event shall Tenant transfer title to the Permitted Trailer to a third party while it is on the Premises. However, Tenant may remove and replace the Permitted Trailer at any time, so long as Tenant produces evidence of ownership of the replacement trailer prior to placing it on the Premises, in which event the replacement trailer shall be deemed the Permitted Trailer for the remainder of the Lease.

13.    RIGHT TO RENEW:  Landlord may elect not to lease the Premises to anyone in the season following the expiration of this Lease.  However, if Landlord elects to lease the Premises in the following season, then Tenant shall have a right to renew this Lease for such season at the current fees established by Ordinance, so long as Tenant is in compliance with all Ordinances and regulations of the Landlord and has not breached this Lease.

*Page 3 of 4*

14.    MISCELLANEOUS:  This is the entire agreement of the parties with respect to its subject matter, and any prior negotiations and representations are disclaimed.  This Lease may be modified only in writing signed by Landlord and Tenant.  This Agreement shall be construed in accordance with Illinois law and enforced only in a court of competent jurisdiction in Macoupin County, Illinois.  Tenant shall be liable for all of the Landlord's costs, expenses and attorney's fees incurred in the enforcement of this Lease.

AGREED AS OF THE DATE ABOVE WRITTEN:

OTTER LAKE WATER COMMISSION
an Illinois Public Corporation

By: _____
　　　Lake Manager

TENANT(S)  (Must be over the age of 21 and members of same household)

Signature: _____

X _____

Print Names:  RICHARD + LEEANN HAYNES

Mailing Address:  12016 KESSLER RD

DIVERNON  IL  62530

_____

Phone: 7-628-3495  Cell phone: 217-741-1855

E-mail: _____

# OTTER LAKE PARK
**13671 Emmerson Airline    Girard, IL 62640**
**Phone (217) 627-2416**

# LOT LEASE AGREEMENT

CAMPING AREA _North_     CAMP SITE NUMBER _159A_

THE UNDERSIGNED CAMPER(S) ACCEPTS CAMPING PRIVILEGES ON OTTER LAKE CAMPGROUNDS WITH THE UNDERSTANDING THAT HE DOES HEREBY RELEASE THE OTTER LAKE PARK, ITS OWNERS AND EMPLOYEES OF ALL LIABILITY FOR LOSS OR DAMAGE TO PROPERTY AND INJURY TO HIS PERSON ARISING OUT OF THE USE OF THE CAMPING FACILITIES, AND AGREES TO INDEMNIFY OTTER LAKE PARK, ITS OWNERS AND EMPLOYEES AGAINST CLAIMS RESULTING FROM LOSS OR DAMAGE TO PROPERTY OR INJURY TO THE PERSON OF ANY MEMBER OF THE FAMILY OR GUEST OF THE REGISTERED CAMPER ARISING OUT OF THE USE OF ITS CAMPING FACILITIES.

_Terry W. Davis_     DATE _04-06-04_
SIGNATURE OF LEASEE

    DATE _____
SIGNATURE OF SPOUSE (IF APPLICABLE)

PLEASE PRINT NAME(S) IN FULL _Terry W. Davis_

ADDRESS _156 Post Rd._
STREET OR P.O. BOX #

_Virden_    _Il_    _62690_
CITY     STATE     ZIP CODE

TELEPHONE ( _217_ ) · _965-9707_    RESIDENCE

( _618_ ) · _462-0545_    BUSINESS

IN CASE OF EMERGENCY CONTACT:

NAME _Doug Davis_

TELEPHONE _618-667-9064_

MAKE OF TRAILER _Pilgrim_

YEAR BUILT _2005_

UNIT LENGTH _35'_

COLOR(S) _White / Cobalt Blue_

TYPE OF UNIT _Travel Trailer_

**EXHIBIT**
_C_

Lot No.: _159 a N_

Year: _____2008_____

## CAMPING LOT LEASE
### (Customer)

THIS CAMPING LOT LEASE is made on __October 9, 2007__, between the Otter Lake Water Commission, an Illinois public corporation, ("Landlord") and the undersigned persons, Terry & Frances Davis_____ who are referred to herein collectively as "Tenant".

1.    **RENTAL OF PREMISES:**    Landlord leases to Tenant, and Tenant leases from Landlord, the premises commonly known and described as: Camping Lot # _159a North____, of the Otter Lake Campground, Macoupin County, Illinois (the "Premises").

Tenant may place a single recreational camping trailer on the Premises, VIN __5L4TP312453003167_____ (the "Permitted Trailer") and may use the Permitted Trailer, the Premises, and the facilities of the Otter Lake Campground (the "Park") for recreational purposes only. Up to 2 automobiles belonging to Tenant and the Permitted Trailer may be parked on the Premises, but only when the Tenant is present, but only so long as the automobiles and Permitted Trailer do not interfere with use by others of the campground and roads.

Tenant's guests may park automobiles at the Premises only when Tenant is present, and only if the automobiles do not interfere with use by others of the campground and roads.

Tenant's and Tenant's guests' automobiles shall be registered with the Park Office.

2.    TERM: The term of this Lease shall be from March 1 through November 30, 2008.

3.    RENT PAYMENT: Rent is _$525.00_ per season. Rent is payable in advance in two equal installments. The first installment of $262.50 is due and payable on November 1, 2007, or the date of execution of this Lease, whichever is later. The second installment of $262.50 is due and payable on May 1, 2008. Rent shall be paid to the Manager at the Park Office or may be mailed to Otter Lake Water Commission, P.O. Box 468, Virden IL 62690.

Any installment not received by the Commission by the due date shall be subject to a late fee of $10.00 per day. If an installment is not paid within 15 days after the due date, together with any applicable late fees, Landlord may terminate this Lease by notice to Tenant.

There will be no prorations of rent under any circumstances.

☑ (Check if applicable) For the additional fee of _$70.00_ paid not later than the due date of the first installment, Tenant may store the Permitted Trailer on the Premises from December 1 of the year of this Lease through and including the end of February of the following year.

☑ (Check if applicable) For the additional fee of _$25.00_ paid not later than the due date of the second installment, Tenant may have a boat dock of approved design on the Premises during the term of this Lease. A limit of two docks per site. Tenant is assigned dock #_159a N_____.

**EXHIBIT**

_D_

4.      UTILITIES:  Landlord will provide potable water to the Premises, the price of which is included in the rent.  Landlord will provide garbage services for the Premises, which are included in the rent, consisting of the availability of dumpsters, subject to Park rules and regulations.  Landlord shall provide electric services, which shall be metered and charged to Tenant from time to time in separate bills, and shall be payable within 30 days of mailing or delivery.

5.      SECURITY DEPOSIT FOR ELECTRIC SERVICE:   Along with the first installment of rent, Tenant shall pay a security deposit for electric service in the amount of $50.00 , which shall be returned without interest to the Tenant after the Tenant has vacated the Premises, provided that the Tenant has paid all electric charges in full.  If the Tenant leases the Premises for successive and additional terms, Landlord shall apply the deposit to the subsequent term, provided all bills are then current.

6.      LEGAL OCCUPANTS:  The legal occupants of the Premises shall be limited to Tenant and Tenant's guests.  Tenant's guests shall be accompanied by Tenant at all times.  Guests shall abide by the rules of the Park, and their failure to do so shall be treated as a breach by Tenant of this lease.  All guests shall register themselves, their vehicles and their boat trailers with the Park Office.

7.      ACCEPTANCE OF POSSESSION:  Tenant has inspected the Premises and all related areas and grounds.  Tenant is satisfied with the physical condition thereof by accepting possession of the Premises. Tenant agrees that no representations, warranties (expressed or implied) or covenants with respect to the condition, maintenance or improvements of the Premises, or Park have been made to Tenant. TENANT RECOGNIZES THAT THE PREMISES AND PARK FACILITIES ARE INTENDED TO BE PRIMITIVE AND RECREATIONAL, AND NOT INTENDED OR FIT FOR PERMANENT HABITATION, AND THAT LANDLORD HAS MADE NO WARRANTIES OR REPRESENTATIONS AS TO HABITABILITY OF THE PREMISES OR THEIR SUITABILITY FOR ANY PARTICULAR PURPOSE, AND EXPRESSLY DISCLAIMS ANY SUCH WARRANTIES OR REPRESENTATIONS.

8.      TENANT'S DUTIES:  Tenant shall:

A.      Promptly pay rent and electric bills when due;

B.      Abide by Park Rules And Regulations as set forth in Otter Lake Water Commission Ordinance No.  2007-02  and shall cause all of Tenant's guests to abide by the Park Rules And Regulations.  The Park Rules And Regulations in effect as of the date of this Lease are attached hereto as Exhibit A, and are subject to change from time to time by Landlord in its sole discretion; provided, however, that Landlord shall notify Tenant of any such changes. By signing this Lease, the Tenant acknowledges that Tenant has received and read the Park Rules and Regulations;

C.      Not deliberately or negligently destroy, deface, damage, impair or remove any part of the Premises, Park Facilities (including but not limited to rest rooms, shower facilities, other common areas); Otter Lake, its shoreline, wildlife (except for permitted fishing), trees or other vegetation other than grass on the Premises, or water treatment facilities, or any other of Landlord's property, or knowingly permit any guest to do so;

D.    Make no permanent improvements to the Premises, nor erect or place any building, shed or other structure that is permanently affixed to the Premises unless specifically permitted in writing by Landlord;

E.    At the expiration of the lease (and subject to the privilege of winter storage as set forth in paragraph 3), remove the Permitted Trailer, all vehicles and all other personal property, and return the Premises to its original condition, fair wear and tear excepted.

9.    LANDLORD'S RIGHTS AND REMEDIES.   Landlord may terminate this Lease in the event of any breach by Tenant of any provision of this Lease, or in the event of any violation by Tenant's guests of the Park Rules and Regulations.  Landlord shall terminate this Lease by notice to Tenant in writing, which notice may be hand delivered to Tenant or mailed to Tenant's address specified below Tenant's signature.  Mailing of notice to such address by first class mail shall conclusively be deemed proper service as of a date four days after the date of mailing.  In the event Landlord terminates this Lease, or in the event Tenant holds over after expiration of this Lease, Landlord shall be entitled to all remedies available pursuant to law, including money damages and eviction.  If the Tenant holds over, Landlord shall be entitled, in addition to any other remedies,  (a) to rental in the amount of twice the rental rate specified in this Lease; (b) to move Tenant's trailer and have it towed to a storage lot, in which case Tenant shall be liable to the owner of the lot for all towing and storage expenses and may be subject to a lien therefor; and (c) to remove and dispose of any structures or personal property that have been erected or placed by Tenant on the Premises, without further liability to Tenant.

10.    LEASE BINDING ON ALL TENANTS: This Lease shall be binding upon and inure to the benefit of all Tenants.  Any judgments awarded against any Tenant will be joint and several with all other Tenants.  This Lease may not be assigned by any Tenant, nor may the Premises be subleased by any Tenant, under any circumstances.  Notice to one Tenant is notice to all Tenants.

11.    TENANT'S INSURANCE AND RISK OF LOSS: Landlord is not an insurer of Tenant's person or property. It is the Tenant's responsibility to procure renter's and premises liability insurance, and the Landlord is not responsible for any property losses from any event relating to the Premises or the facilities in the Park.  Nor shall Landlord shall be liable for any personal injury occasioning from any event relating to the Tenant's occupancy and other use of the Premises or the facilities in the Park.  Tenant agrees that all of Tenant's person and property in or on the Premises (including Tenant's guests and invitees) shall be at the sole risk of Tenant.

12.    PROVISIONS RELATING TO PERMITTED TRAILER: Prior to execution of this Lease, Tenant has provided proof of ownership (a photocopy of a current title) of the Permitted Trailer.  Tenant shall remain the owner of the Permitted Trailer at all times during the term of this Lease, and in no event shall Tenant transfer title to the Permitted Trailer to a third party while it is on the Premises.  However, Tenant may remove and replace the Permitted Trailer at any time, so long as Tenant produces evidence of ownership of the replacement trailer prior to placing it on the Premises, in which event the replacement trailer shall be deemed the Permitted Trailer for the remainder of the Lease.

13.    RIGHT TO RENEW:  Landlord may elect not to lease the Premises to anyone in the season following the expiration of this Lease.  However, if Landlord elects to lease the Premises in the following season, then Tenant shall have a right to renew this Lease for such season at the current fees established by Ordinance, so long as Tenant is in compliance with all Ordinances and regulations of the Landlord and has not breached this Lease.

*Page 3 of 4*

14.    MISCELLANEOUS:  This is the entire agreement of the parties with respect to its subject matter, and any prior negotiations and representations are disclaimed.  This Lease may be modified only in writing signed by Landlord and Tenant.  This Agreement shall be construed in accordance with Illinois law and enforced only in a court of competent jurisdiction in Macoupin County, Illinois.  Tenant shall be liable for all of the Landlord's costs, expenses and attorney's fees incurred in the enforcement of this Lease.


AGREED AS OF THE DATE ABOVE WRITTEN:

OTTER LAKE WATER COMMISSION
an Illinois Public Corporation

By: _Albert Puckett_____
       Lake Manager

TENANT(S)   (Must be over the age of 21 and members of same household)

Signature:        x _Terry W. Davis_____
                      _Frances J. Harden -Davis_

Print Names:        __Terry & Frances Davis_____
Mailing Address:    __156 Post Road_____
                    __Virden, IL 62690_____
                    _____

                    Phone:  _217-965-9707__   Cell phone:__

                    E-mail: _____

# OTTER LAKE PARK

**1367 Emmerson Airline     Girard, IL 62640**
**Phone (217) 627-2416**

## LOT LEASE AGREEMENT

CAMPING AREA _Southside_          CAMP SITE NUMBER _60_

THE UNDERSIGNED CAMPER(S) ACCEPTS CAMPING PRIVILEGES ON OTTER LAKE CAMPGROUNDS WITH THE UNDERSTANDING THAT HE DOES HEREBY RELEASE THE OTTER LAKE PARK, ITS OWNERS AND EMPLOYEES OF ALL LIABILITY FOR LOSS OR DAMAGE TO PROPERTY AND INJURY TO HIS PERSON ARISING OUT OF THE USE OF THE CAMPING FACILITIES, AND AGREES TO INDEMNIFY OTTER LAKE PARK, ITS OWNERS AND EMPLOYEES AGAINST CLAIMS RESULTING FROM LOSS OR DAMAGE TO PROPERTY OR INJURY TO THE PERSON OF ANY MEMBER OF THE FAMILY OR GUEST OF THE REGISTERED CAMPER ARISING OUT OF THE USE OF ITS CAMPING FACILITIES.

_Everett Lingleo_ (signature)          DATE _6-30-06_
SIGNATURE OF LEASEE

_____          DATE _____
SIGNATURE OF SPOUSE (IF APPLICABLE)

PLEASE PRINT NAME(S) IN FULL _Everett John Lingleo_

ADDRESS _404 E. Lincoln_
STREET OR P.O. BOX #

_Riverton_          _IL_          _62561_
CITY          STATE          ZIP CODE

TELEPHONE _(217) ~~538-4334~~ 836-1540_  RESIDENCE _836-2168_
_(217) 306-3916_  BUSINESS

IN CASE OF EMERGENCY CONTACT:

NAME _Annette Fulgenzi_

TELEPHONE _217-414-5115_

MAKE OF TRAILER _Innsbruck_

YEAR BUILT _1990_

UNIT LENGTH _35'_

COLOR(S) _white/maroon_

TYPE OF UNIT _Travel trailer_

EXHIBIT
E

Lot No.: _605_

Year: _2008_

### CAMPING LOT LEASE
### (Non-Customer)

THIS CAMPING LOT LEASE is made on _November 25_, 200_7_, between the Otter Lake Water Commission, an Illinois public corporation, ("Landlord") and the undersigned persons _Everett · Lisa Lingle_ who are referred to herein collectively as "Tenant".

1.    RENTAL OF PREMISES:   Landlord leases to Tenant, and Tenant leases from Landlord, the premises commonly known and described as: Camping Lot # _605_, of the Otter Lake Campground, Macoupin County, Illinois (the "Premises").

Tenant may place a single recreational camping trailer on the Premises, VIN _1NL10TS2340II197_ (the "Permitted Trailer") and may use the Permitted Trailer, the Premises, and the facilities of the Otter Lake Campground (the "Park") for recreational purposes only.  Up to 2 automobiles belonging to Tenant and the Permitted Trailer may be parked on the Premises, but only when the Tenant is present, but only so long as the automobiles and Permitted Trailer do not interfere with use by others of the campground and roads.

Tenant's guests may park automobiles at the Premises only when Tenant is present, and only if the automobiles do not interfere with use by others of the campground and roads.

Tenant's and Tenant's guests' automobiles shall be registered with the Park Office.

2.    TERM: The term of this Lease shall be from March 1 through November 30, 2008.

3.    RENT PAYMENT:  Rent is _$575.00_ per season.  Rent is payable in advance in two equal installments.  The first installment of $287.50 is due and payable on November 1, 2007, or the date of execution of this Lease, whichever is later.  The second installment of $287.50 is due and payable on May 1, 2008.  Rent shall be paid to the Manager at the Park Office or may be mailed to Otter Lake Water Commission, P.O. Box 468, Virden IL 62690.

Any installment not received by the Commission by the due date shall be subject to a late fee of $10.00 per day.  If an installment is not paid within 15 days after the due date, together with any applicable late fees, Landlord may terminate this Lease by notice to Tenant.

There will be no prorations of rent under any circumstances.

☒ (Check if applicable)  For the additional fee of  _$70.00_  paid not later than the due date of the first installment, Tenant may store the Permitted Trailer on the Premises from December 1 of the year of this Lease through and including the end of February of the following year.

☒ (Check if applicable)  For the additional fee of  _$50.00_  paid not later than the due date of the second installment, Tenant may have a boat dock of approved design on the Premises during the term of this Lease.  A limit of two docks per site.  Tenant is assigned dock # _605_.



EXHIBIT
F

4.    UTILITIES: Landlord will provide potable water to the Premises, the price of which is included in the rent. Landlord will provide garbage services for the Premises, which are included in the rent, consisting of the availability of dumpsters, subject to Park rules and regulations. Landlord shall provide electric services, which shall be metered and charged to Tenant from time to time in separate bills, and shall be payable within 30 days of mailing or delivery.

5.    SECURITY DEPOSIT FOR ELECTRIC SERVICE: Along with the first installment of rent, Tenant shall pay a security deposit for electric service in the amount of $50.00 , which shall be returned without interest to the Tenant after the Tenant has vacated the Premises, provided that the Tenant has paid all electric charges in full. If the Tenant leases the Premises for successive and additional terms, Landlord shall apply the deposit to the subsequent term, provided all bills are then current.

6.    LEGAL OCCUPANTS: The legal occupants of the Premises shall be limited to Tenant and Tenant's guests. Tenant's guests shall be accompanied by Tenant at all times. Guests shall abide by the rules of the Park, and their failure to do so shall be treated as a breach by Tenant of this lease. All guests shall register themselves, their vehicles and their boat trailers with the Park Office.

7.    ACCEPTANCE OF POSSESSION: Tenant has inspected the Premises and all related areas and grounds. Tenant is satisfied with the physical condition thereof by accepting possession of the Premises. Tenant agrees that no representations, warranties (expressed or implied) or covenants with respect to the condition, maintenance or improvements of the Premises, or Park have been made to Tenant. TENANT RECOGNIZES THAT THE PREMISES AND PARK FACILITIES ARE INTENDED TO BE PRIMITIVE AND RECREATIONAL, AND NOT INTENDED OR FIT FOR PERMANENT HABITATION, AND THAT LANDLORD HAS MADE NO WARRANTIES OR REPRESENTATIONS AS TO HABITABILITY OF THE PREMISES OR THEIR SUITABILITY FOR ANY PARTICULAR PURPOSE, AND EXPRESSLY DISCLAIMS ANY SUCH WARRANTIES OR REPRESENTATIONS.

8.    TENANT'S DUTIES: Tenant shall:

A.    Promptly pay rent and electric bills when due;

B.    Abide by Park Rules And Regulations as set forth in Otter Lake Water Commission Ordinance No. _2007-02_ and shall cause all of Tenant's guests to abide by the Park Rules And Regulations. The Park Rules And Regulations in effect as of the date of this Lease are attached hereto as Exhibit A, and are subject to change from time to time by Landlord in its sole discretion; provided, however, that Landlord shall notify Tenant of any such changes. By signing this Lease, the Tenant acknowledges that Tenant has received and read the Park Rules and Regulations;

C.    Not deliberately or negligently destroy, deface, damage, impair or remove any part of the Premises, Park Facilities (including but not limited to rest rooms, shower facilities, other common areas); Otter Lake, its shoreline, wildlife (except for permitted fishing), trees or other vegetation other than grass on the Premises, or water treatment facilities, or any other of Landlord's property, or knowingly permit any guest to do so;

D.    Make no permanent improvements to the Premises, nor erect or place any building, shed or other structure that is permanently affixed to the Premises unless specifically permitted in writing by Landlord;

E.    At the expiration of the lease (and subject to the privilege of winter storage as set forth in paragraph 3), remove the Permitted Trailer, all vehicles and all other personal property, and return the Premises to its original condition, fair wear and tear excepted.

9.    LANDLORD'S RIGHTS AND REMEDIES.  Landlord may terminate this Lease in the event of any breach by Tenant of any provision of this Lease, or in the event of any violation by Tenant's guests of the Park Rules and Regulations. Landlord shall terminate this Lease by notice to Tenant in writing, which notice may be hand delivered to Tenant or mailed to Tenant's address specified below Tenant's signature. Mailing of notice to such address by first class mail shall conclusively be deemed proper service as of a date four days after the date of mailing. In the event Landlord terminates this Lease, or in the event Tenant holds over after expiration of this Lease, Landlord shall be entitled to all remedies available pursuant to law, including money damages and eviction. If the Tenant holds over, Landlord shall be entitled, in addition to any other remedies, (a) to rental in the amount of twice the rental rate specified in this Lease; (b) to move Tenant's trailer and have it towed to a storage lot, in which case Tenant shall be liable to the owner of the lot for all towing and storage expenses and may be subject to a lien therefor; and (c) to remove and dispose of any structures or personal property that have been erected or placed by Tenant on the Premises, without further liability to Tenant.

10.    LEASE BINDING ON ALL TENANTS: This Lease shall be binding upon and inure to the benefit of all Tenants.  Any judgments awarded against any Tenant will be joint and several with all other Tenants.   This Lease may not be assigned by any Tenant, nor may the Premises be subleased by any Tenant, under any circumstances.  Notice to one Tenant is notice to all Tenants.

11.    TENANT'S INSURANCE AND RISK OF LOSS: Landlord is not an insurer of Tenant's person or property. It is the Tenant's responsibility to procure renter's and premises liability insurance, and the Landlord is not responsible for any property losses from any event relating to the Premises or the facilities in the Park.  Nor shall Landlord shall be liable for any personal injury occasioning from any event relating to the Tenant's occupancy and other use of the Premises or the facilities in the Park.  Tenant agrees that all of Tenant's person and property in or on the Premises (including Tenant's guests and invitees) shall be at the sole risk of Tenant.

12.    PROVISIONS RELATING TO PERMITTED TRAILER: Prior to execution of this Lease, Tenant has provided proof of ownership (a photocopy of a current title) of the Permitted Trailer.  Tenant shall remain the owner of the Permitted Trailer at all times during the term of this Lease, and in no event shall Tenant transfer title to the Permitted Trailer to a third party while it is on the Premises. However, Tenant may remove and replace the Permitted Trailer at any time, so long as Tenant produces evidence of ownership of the replacement trailer prior to placing it on the Premises, in which event the replacement trailer shall be deemed the Permitted Trailer for the remainder of the Lease.

13.    RIGHT TO RENEW:  Landlord may elect not to lease the Premises to anyone in the season following the expiration of this Lease.  However, if Landlord elects to lease the Premises in the following season, then Tenant shall have a right to renew this Lease for such season at the current fees established by Ordinance, so long as Tenant is in compliance with all Ordinances and regulations of the Landlord and has not breached this Lease.

14.    MISCELLANEOUS:  This is the entire agreement of the parties with respect to its subject matter, and any prior negotiations and representations are disclaimed.  This Lease may be modified only in writing signed by Landlord and Tenant.  This Agreement shall be construed in accordance with Illinois law and enforced only in a court of competent jurisdiction in Macoupin County, Illinois.  Tenant shall be liable for all of the Landlord's costs, expenses and attorney's fees incurred in the enforcement of this Lease.

AGREED AS OF THE DATE ABOVE WRITTEN:

OTTER LAKE WATER COMMISSION
an Illinois Public Corporation

By: _____
        Lake Manager

TENANT(S)  (Must be over the age of 21 and members of same household)

Signature:      _____

                    _____

Print Names:    _Everett & Lisa Lingleo_

Mailing Address:  _404 E. Lincoln_

                    _Riverton IL. 62561_

                    _____

Phone: _836-2468_  Cell phone: _306-3916_ : _836-1540_

E-mail: _mackynickel @ yahoo. com_

# OTTER LAKE PARK

**13671 Emmerson Airline   Girard, IL 62640**
**Phone (217) 627-2416**

# LOT LEASE AGREEMENT

CAMPING AREA _Southeast_ CAMP SITE NUMBER _16_

THE UNDERSIGNED CAMPER(S) ACCEPTS CAMPING PRIVILEGES ON OTTER LAKE CAMPGROUNDS WITH THE UNDERSTANDING THAT HE DOES HEREBY RELEASE THE OTTER LAKE PARK, ITS OWNERS AND EMPLOYEES OF ALL LIABILITY FOR LOSS OR DAMAGE TO PROPERTY AND INJURY TO HIS PERSON ARISING OUT OF THE USE OF THE CAMPING FACILITIES, AND AGREES TO INDEMNIFY OTTER LAKE PARK, ITS OWNERS AND EMPLOYEES AGAINST CLAIMS RESULTING FROM LOSS OR DAMAGE TO PROPERTY OR INJURY TO THE PERSON OF ANY MEMBER OF THE FAMILY OR GUEST OF THE REGISTERED CAMPER ARISING OUT OF THE USE OF ITS CAMPING FACILITIES.

SIGNATURE OF LEASEE _Glen A Mester_          DATE _4-17-04_

SIGNATURE OF SPOUSE (IF APPLICABLE) _Patsy K Mester_   DATE _4/17/04_

PLEASE PRINT NAME(S) IN FULL _Glen A Mester_
_Patsy K Mester_

ADDRESS _5217 Manhattan Dr_
STREET OR P.O. BOX #
_Springfield IL_          _62707_
CITY          STATE          ZIP CODE

TELEPHONE _(217)·787-6237_          RESIDENCE
_(217)·789 0911 Patsy_          BUSINESS

IN CASE OF EMERGENCY CONTACT:

NAME _Melissa Tornoff_

TELEPHONE _217 698 3462_

MAKE OF TRAILER _Coachman_

YEAR BUILT _1992_

UNIT LENGTH _35'_

COLOR(S) _Blue & White_

TYPE OF UNIT

**EXHIBIT**
_G_

Lot No.: _10 S E_

Year: _____2008_____

### CAMPING LOT LEASE
### (Non-Customer)

THIS CAMPING LOT LEASE is made on _OCTOBER 27_, 200 _7_, between the Otter Lake Water Commission, an Illinois public corporation, ("Landlord") and the undersigned persons _GLEN & PATSY MESTER_ who are referred to herein collectively as "Tenant".

1.  **RENTAL OF PREMISES:** Landlord leases to Tenant, and Tenant leases from Landlord, the premises commonly known and described as: Camping Lot #_10 SE_, of the Otter Lake Campground, Macoupin County, Illinois (the "Premises").

Tenant may place a single recreational camping trailer on the Premises, VIN _1TC2857IXN1002635_ (the "Permitted Trailer") and may use the Permitted Trailer, the Premises, and the facilities of the Otter Lake Campground (the "Park") for recreational purposes only. Up to 2 automobiles belonging to Tenant and the Permitted Trailer may be parked on the Premises, but only when the Tenant is present, but only so long as the automobiles and Permitted Trailer do not interfere with use by others of the campground and roads.

Tenant's guests may park automobiles at the Premises only when Tenant is present, and only if the automobiles do not interfere with use by others of the campground and roads.

Tenant's and Tenant's guests' automobiles shall be registered with the Park Office.

2.  **TERM:** The term of this Lease shall be from March 1 through November 30, 2008.

3.  **RENT PAYMENT:** Rent is _$575.00_ per season. Rent is payable in advance in two equal installments. The first installment of $287.50 is due and payable on November 1, 2007, or the date of execution of this Lease, whichever is later. The second installment of $287.50 is due and payable on May 1, 2008. Rent shall be paid to the Manager at the Park Office or may be mailed to Otter Lake Water Commission, P.O. Box 468, Virden IL 62690.

Any installment not received by the Commission by the due date shall be subject to a late fee of $10.00 per day. If an installment is not paid within 15 days after the due date, together with any applicable late fees, Landlord may terminate this Lease by notice to Tenant.

There will be no prorations of rent under any circumstances.

☑ (Check if applicable) For the additional fee of _$70.00_ paid not later than the due date of the first installment, Tenant may store the Permitted Trailer on the Premises from December 1 of the year of this Lease through and including the end of February of the following year.

☑ (Check if applicable) For the additional fee of _$50.00_ paid not later than the due date of the second installment, Tenant may have a boat dock of approved design on the Premises during the term of this Lease. A limit of two docks per site. Tenant is assigned dock #_10 SE_.

**EXHIBIT**

**H**

Page 1 of 4

included in the rent, consisting of the availability of dumpsters, subject to Park rules and regulations. Landlord shall provide electric services, which shall be metered and charged to Tenant from time to time in separate bills, and shall be payable within 30 days of mailing or delivery.

5.    SECURITY DEPOSIT FOR ELECTRIC SERVICE:  Along with the first installment of rent, Tenant shall pay a security deposit for electric service in the amount of $50.00, which shall be returned without interest to the Tenant after the Tenant has vacated the Premises, provided that the Tenant has paid all electric charges in full.  If the Tenant leases the Premises for successive and additional terms, Landlord shall apply the deposit to the subsequent term, provided all bills are then current.

6.    LEGAL OCCUPANTS:  The legal occupants of the Premises shall be limited to Tenant and Tenant's guests.  Tenant's guests shall be accompanied by Tenant at all times. Guests shall abide by the rules of the Park, and their failure to do so shall be treated as a breach by Tenant of this lease.  All guests shall register themselves, their vehicles and their boat trailers with the Park Office.

7.    ACCEPTANCE OF POSSESSION:  Tenant has inspected the Premises and all related areas and grounds.  Tenant is satisfied with the physical condition thereof by accepting possession of the Premises.  Tenant agrees that no representations, warranties (expressed or implied) or covenants with respect to the condition, maintenance or improvements of the Premises, or Park have been made to Tenant. TENANT RECOGNIZES THAT THE PREMISES AND PARK FACILITIES ARE INTENDED TO BE PRIMITIVE AND RECREATIONAL, AND NOT INTENDED OR FIT FOR PERMANENT HABITATION, AND THAT LANDLORD HAS MADE NO WARRANTIES OR REPRESENTATIONS AS TO HABITABILITY OF THE PREMISES OR THEIR SUITABILITY FOR ANY PARTICULAR PURPOSE, AND EXPRESSLY DISCLAIMS ANY SUCH WARRANTIES OR REPRESENTATIONS.

8.    TENANT'S DUTIES:  Tenant shall:

A.    Promptly pay rent and electric bills when due;

B.    Abide by Park Rules And Regulations as set forth in Otter Lake Water Park Rules And Regulations.  The Park Rules And Regulations in effect as of the date of this Commission Ordinance No. 2007-02  and shall cause all of Tenant's guests to abide by the Lease are attached hereto as Exhibit A, and are subject to change from time to time by Landlord in its sole discretion; provided, however, that Landlord shall notify Tenant of any such changes. By signing this Lease, the Tenant acknowledges that Tenant has received and read the Park Rules and Regulations;

C.    Not deliberately or negligently destroy, deface, damage, impair or remove any part of the Premises, Park Facilities (including but not limited to rest rooms, shower facilities, other common areas); Otter Lake, its shoreline, wildlife (except for permitted fishing), trees or other vegetation other than grass on the Premises, or water treatment facilities, or any other of Landlord's property, or knowingly permit any guest to do so;

D.    Make no permanent improvements to the Premises, nor erect or place any building, shed or other structure that is permanently affixed to the Premises unless specifically permitted in writing by Landlord;

E.   At the expiration of the lease (and subject to the privilege of winter storage as set forth in paragraph 3), remove the Permitted Trailer, all vehicles and all other personal property, and return the Premises to its original condition, fair wear and tear excepted.

9.   LANDLORD'S RIGHTS AND REMEDIES.   Landlord may terminate this Lease in the event of any breach by Tenant of any provision of this Lease, or in the event of any violation by Tenant's guests of the Park Rules and Regulations. Landlord shall terminate this Lease by notice to Tenant in writing, which notice may be hand delivered to Tenant or mailed to Tenant's address specified below Tenant's signature. Mailing of notice to such address by first class mail shall conclusively be deemed proper service as of a date four days after the date of mailing. In the event Landlord terminates this Lease, or in the event Tenant holds over after expiration of this Lease, Landlord shall be entitled to all remedies available pursuant to law, including money damages and eviction. If the Tenant holds over, Landlord shall be entitled, in addition to any other remedies,  (a) to rental in the amount of twice the rental rate specified in this Lease; (b) to move Tenant's trailer and have it towed to a storage lot, in which case Tenant shall be liable to the owner of the lot for all towing and storage expenses and may be subject to a lien therefor; and (c) to remove and dispose of any structures or personal property that have been erected or placed by Tenant on the Premises, without further liability to Tenant.

10.   LEASE BINDING ON ALL TENANTS: This Lease shall be binding upon and inure to the benefit of all Tenants. Any judgments awarded against any Tenant will be joint and several with all other Tenants.  This Lease may not be assigned by any Tenant, nor may the Premises be subleased by any Tenant, under any circumstances. Notice to one Tenant is notice to all Tenants.

11.   TENANT'S INSURANCE AND RISK OF LOSS: Landlord is not an insurer of Tenant's person or property. It is the Tenant's responsibility to procure renter's and premises liability insurance, and the Landlord is not responsible for any property losses from any event relating to the Premises or the facilities in the Park. Nor shall Landlord shall be liable for any personal injury occasioning from any event relating to the Tenant's occupancy and other use of the Premises or the facilities in the Park.  Tenant agrees that all of Tenant's person and property in or on the Premises (including Tenant's guests and invitees) shall be at the sole risk of Tenant.

12.   PROVISIONS RELATING TO PERMITTED TRAILER: Prior to execution of this Lease, Tenant has provided proof of ownership (a photocopy of a current title) of the Permitted Trailer.  Tenant shall remain the owner of the Permitted Trailer at all times during the term of this Lease, and in no event shall Tenant transfer title to the Permitted Trailer to a third party while it is on the Premises. However, Tenant may remove and replace the Permitted Trailer at any time, so long as Tenant produces evidence of ownership of the replacement trailer prior to placing it on the Premises, in which event the replacement trailer shall be deemed the Permitted Trailer for the remainder of the Lease.

13.   RIGHT TO RENEW:  Landlord may elect not to lease the Premises to anyone in the season following the expiration of this Lease.  However, if Landlord elects to lease the Premises in the following season, then Tenant shall have a right to renew this Lease for such season at the current fees established by Ordinance, so long as Tenant is in compliance with all Ordinances and regulations of the Landlord and has not breached this Lease.

14.   MISCELLANEOUS: This is the entire agreement of the parties with respect to its subject matter, and any prior negotiations and representations are disclaimed. This Lease may be modified only in writing signed by Landlord and Tenant. This Agreement shall be construed

14. MISCELLANEOUS: This is the entire agreement of the parties with respect to its subject matter, and any prior negotiations and representations are disclaimed. This Lease may be modified only in writing signed by Landlord and Tenant. This Agreement shall be construed in accordance with Illinois law and enforced only in a court of competent jurisdiction in Macoupin County, Illinois. Tenant shall be liable for all of the Landlord's costs, expenses and attorney's fees incurred in the enforcement of this Lease.

AGREED AS OF THE DATE ABOVE WRITTEN:

OTTER LAKE WATER COMMISSION
an Illinois Public Corporation

By: _____
    Lake Manager

TENANT(S) (Must be over the age of 21 and members of same household)

Signature: X _____

           X _____

Print Names: _GLEN + PATSY MESTER_

Mailing Address: _5217 MANHATTAN DR_

_SPRINGFIELD, IL  62711_

_____

Phone: _17-787-6232_ Cell phone: _____

E-mail: _____

# OTTER LAKE WATER COMMISSION

ORDINANCE NO. <u>2001-01</u>

## AN ORDINANCE PERTAINING TO RECREATIONAL USES IN OTTER LAKE MACOUPIN COUNTY, ILLINOIS

ADOPTED BY THE OTTER LAKE WATER COMMISSION, ADGPTV

THIS <u>8'ᵗʰ</u> DAY OF <u>March</u>, 2001

Published in pamphlet form by the authority of the Otter Lake Water Commission, ADGPTV, this <u>8ᵗʰ</u> day of <u>March</u>, 2001.

EXHIBIT
I

Ordinance No. 2CC0 -01

# AN ORDINANCE PERTAINING TO RECREATIONAL USES IN OTTER LAKE, MACOUPIN COUNTY, ILLINOIS

BE IT ORDAINED BY THE Otter Lake Water Commission, ADGPTV, as follows:

## SECTION 1 - DEFINITIONS:

A.     As used herein, "Commission" refers to the Otter Lake Water Commission, ADGPTV, a public corporation of Illinois.

B.     As used herein, "Otter Lake Area" refers to that certain lake known as Otter Lake area which is owned by the Commission in Macoupin County, Illinois, as a source of public water supply, and the lands owned by the Commission surrounding the lake, including but not limited to boat docks, parking lots and campgrounds.

C.     As used herein, "Manager" refers to the person or persons to whom the Otter Lake Area is leased and manages that area on behalf of Commission.

D.     "Customer" means a retail water customer of the Commission or of the municipalities of Auburn, Divernon, Girard, Pawnee, Thayer, Virden and Nilwood.

E.     "Non Customer" is any person who is not a customer.

F.     "Patrol Officer" is an enforcement officer designated by the Commission and deputized by the Sheriff of Macoupin County.

## SECTION 2 - APPLICABILITY

This Ordinance shall apply within the Otter Lake Area.

## SECTION 3 - TRESPASSING PROHIBITED:

Certain grounds within the Otter Lake Area are open to the public. Other grounds within the Otter Lake Area are not open to the public. Such grounds are posted with signs or notices prohibiting public access. No persons shall enter any lands within the Otter Lake Area which are posted with a notice prohibiting public access.

### SECTION 4 - POLLUTION PROHIBITED:

Pollution of Otter Lake is prohibited and will be prosecuted to the maximum extent of the law.

### SECTION 5 - DAMAGE TO PROPERTY:

The Commission and Lessee is not responsible for the safety or custody of private property within the Otter Lake Area, including but not limited to structures, boats, camping gear, personal effects and all other personal property. The Commission and Lessee disclaims any liability for damage of such personal property; all persons using the Otter Lake Area do so at their own risk.

### SECTION 6 - LAND SPEED REGULATIONS:

Speed limits within the Otter Lake Area shall be as follows:

1.      Five miles per hour in picnic areas.

2.      Ten miles per hour in campground, boat range and all other areas.

### SECTION 7 - FIRE AND FLAMMABLES:

A.      Any gasoline and other liquid fuels other than that contained in storage tanks of vehicles and motor-powered water craft shall not be carried onto or stored within the Otter Lake Area.

B.      Fires shall be confined to fireplaces, grills and other facilities designed for and designated by the Commission. Fires shall be attended at all times by a responsible person over 13 years of age and extinguished before leaving.

C.      Propane and other compressed gas tanks are prohibited except those which are part of the standard equipment of a camper, trailer, or gas grill. Such tanks shall not exceed thirty pounds maximum size.

**SECTION 8 - POSSESSION OF FIREARMS; DISCHARGE OF FIREARMS, HUNTING AND TRAPPING:**

A.      No person shall possess a loaded firearm, ammunition, loaded projectile, firing devices, bows and arrows, crossbows or explosives of any kind within the Otter Lake Area, except Federal, State and local law enforcement personnel and agents of the Commission.

B.      Except as permitted below in Section 15, hunting and trapping is strictly prohibited within the Otter Lake Area.

**SECTION 9 - SWIMMING, BATHING AND WADING:**

Swimming, bathing and wading are prohibited in Otter Lake.

**SECTION 10 - PICNICKING:**

Picnicking is prohibited within the Otter Lake area except those specifically posted as picnicking areas by the Commission. All persons using designated picnicking areas shall keep the areas neat and clean by picking up all rubbish while using the area and upon leaving the areas. In areas where rubbish cans are available, they may be used to deposit the rubbish. In areas where cans are not available, the rubbish shall be removed by persons using the picnic area. No wood fires are permitted at any time under any circumstances in picnicking areas. Only charcoal fires are permitted in grills where provided.

## SECTION 11 - FISHING:

A.    All fishing shall be governed by the Fish Code of Illinois except as further regulated by this Ordinance.

B.    Fishing, including ice fishing when in season, is permitted on the entire Otter Lake surface and from the entire shoreline from sunrise until 11:00 p.m., unless posted specifically to the contrary by the Commission.

C.    There shall be no selling of fish caught in Otter Lake without specific written approval of the Commission.

D.    The sole method of fishing shall be that of not more than two hooks attached to a single line, as provided in the Fish Code of Illinois.  Fishing by troutline, jugfishing, banklines, hoopnets, trammel nets or any other fishing devices are specifically prohibited in the Otter Lake Area.

E.    No fish shall be released into Otter Lake, except those fish caught in Otter Lake, without permission of the Otter Lake Water Commission, ADGPTV.

F.    Possession and size limitations on fish caught at Otter Lake shall be as determined from time to time by the Commission and posted.

## SECTION 12 - BOATING:

Rental of boats and passenger carrying for hire are prohibited without specific written approval of the Commission.  All boating shall be governed by the Illinois Boat Registration & Safety Act, except as further regulated herein:

**Boating Operation Requirements**

1.    All water craft are to be launched from facilities regulated by the Commission. Boating may be temporarily suspended by the Commission at its discretion.

5

2.    All boats which are operated on Otter Lake must be licensed and display the current decal type sticker issued by the Commission and sold by the Lessee. The sticker is good from March 1 until February 28. No upgrades or transfers of boat permits shall be permitted. Expired licenses or stickers must be covered or removed before March 1 of each year in accordance. The following schedule of annual fees shall apply:

## BOATING PERMITS

| Class | Type | Customers | Assessment | | Total |
|-------|------|-----------|------------|---|-------|
| A | Boats without combustible engines including kayaks, sailboats and other Coast Guard approved water craft | $5.00 | $5.00 | $10.00 | |
| B | 1 horsepower to 35 horsepower | $20.00 | $10.00 | | $30.00 |
| C | 36 horsepower to 75 horsepower | $30.00 | $10.00 | | $40.00 |
| D | 76 horsepower to 115 horsepower | $40.00 | $10.00 | | $50.00 |
| P | 3 consecutive day permit for Class B, C and D type water craft | $7.50 | $2.50 | | $10.00 |
| P-1 | 1 day permit for Class A, B, C and D type water craft | $7.50 | $2.50 | | $10.00 |

| Class | Type | Non Customers | Assessment | | Total |
|-------|------|---------------|------------|---|-------|
| A | Boats without combustible engines including kayaks, sailboats and other Coast Guard approved water craft | $10.00 | $5.00 | $15.00 | |
| B | 1 horsepower to 35 horsepower | $35.00 | $15.00 | | $50.00 |

6

| C | 36 horsepower to 75 horsepower | $50.00 | $15.00 | $65.00 |
| D | 76 horsepower to 115 horsepower | $75.00 | $25.00 | $100.00 |
| P | 3 consecutive day permit for Class B, C and D type water craft | $15.00 | $10.00 | $25.00 |
| P-1 | 1 day permit for Class A, B, C and D type water craft | $7.50 | $2.50 | $10.00 |

3.    Personal water craft, including but not limited to Jet Skis and Wave Runners are prohibited on the lake.

4.    Restricted areas, specially zoned areas for fishing and water skiing, and boat speed regulations shall be as follows:

a.    No boating of any type shall be allowed within 100 feet of the water intake tower structure or 100 feet of the spillway structure. These areas shall be sufficiently posted to indicate the restriction.

b.    Boat speed shall be restricted to the "No Wake" speed in the following areas:

1.    All lake area north of Stamper Hill Road.

2.    The four major inlet areas south of Emmerson Airline Road on the west side of the lake.

3.    The three major inlet areas south of Emmerson Airline Road on the east side of the lake.

4.    Within fifty feet of anchored or oar propelled boats.

5.    When approaching boat docking facilities.

6.    When within 100 feet of the shoreline.

7

03/15/01

7.    When restrictions are so marked by appropriate signs of the Otter Lake Water Commission, ADGPTV or its enforcement personnel.

8.    In water skiing areas. Water skiing is permitted on the lake south of Emmerson Airline Road from the marker buoys at the north boundary thereof, extending southward to the dam at the south end of the lake except in those areas zoned as "Fishing Areas".

9.    No wake speed restricted areas.

5.    The Boating season shall be from March 1, until the last day of February.

6.    Hours and Horsepower and Speed Restrictions:

a.    Boats with motors in excess of 115 h.p. are not permitted on the lake.

b.    Hours of permitted boating are sunrise until 11:00 p.m.

c.    The speed limit on the lake is 35 miles per hour, except from the area from Stamper Hill north, where all boats must proceed at a no-wake speed.

d.    The lake south of the Highway, with the exception of some inlets zoned for fishing, is primarily reserved for speed boating and water skiing. Speed boating and skiing shall not take place within 100 feet of the shoreline and shall proceed in a counterclockwise direction. No high speed boating shall be permitted in inlets; these are no-wake fishing areas.

e.    Those engaged in speed boating and water skiing shall observe state laws regarding, life jackets, number of persons occupying boats pulling skiers, etc., and shall not operate their boats in a careless or dangerous manner.

f.    All skiers shall hold one ski aloft after falling into water and awaiting pickup, to caution all other users of the lake of their presence.

8

g.    As a general rule of courtesy and respect for the presence of others, small boats shall stay clear of, and fisherman shall avoid anchoring in, areas of high speed boat traffic. Speed boaters shall stay well clear of small boats and anchored boats.

h.    I/O and jet driven craft are not allowed.

7.    All boaters shall comply with signed rules and regulations supplied when registering. All boaters must immediately comply with instructions of the Patrol Officer. The Patrol Boat is not bound to observe speeds prescribed for other boats.

8.    Boat operators in violation of boating regulations will be issued a warning ticket for the first violation. The second violation will result in suspension of the boating permit for a period of 30 days. A third violation will lead to revocation of the boating permit with no refund of the purchase fee, and expulsion from the lake for a period of one year from the date of the offense. Persons violating regulations or laws which endanger life or property of others may be charged with criminal offenses and prosecuted.

9.    The throwing of litter, garbage, drink cans, can tops, etc., in the lake is prohibited.

10.    Boats shall not be docked around the lake shoreline except in the following public areas:

1.    Along the shore of the boat launch parking area.

2.    Along the shore of the public picnic area, directly south of the lake office.

3.    Where posted at the picnic area northwest (just off the highway) of the Emmerson Airline Bridge.

4.    Along the shore of the designated camping areas, only if assigned to a campsite in that area.

9

11.    Land vehicular parking at public docking areas shall be limited to boaters currently using the lake.   Boat parking shall be limited to thirty minutes at boat docks.

12.    Inflatable rafts and other inflatable devices not intended for the use of being towed by a water craft are not permitted on the lake.

13.    All inlets are considered "no wake" areas, and boaters must comply with speed limits in these areas as to not endanger other boaters or their property.

14.    Boaters shall proceed in a counterclockwise direction while driving on the south side of Emmerson Airline Bridge.

15.    The Patrol Officer may confiscate any boat and their contents when found in the Otter Lake Area by any necessary force in order to secure that boat in a controlled docking area, when that boat is reasonably believed to be in violation of this Ordinance.  The owner will be contacted if possible, and the boat released to the owner as soon as violation is corrected.

**SECTION 13 - CAMPING**

A.    Camping is prohibited on Commission property, unless prior permission is granted and a camping permit is issued by the Manager designating the specific area to be used and the permitted duration.  Camping permits may be obtained from the Manager's at Otter Lake.

B.    Preference for issuing camping permits will be given to local Boy Scouts, Girl Scouts and other youth organizations.   Responsible supervision shall be provided by the applicant for the camping permit in the designated areas as determined by the Commission.

C.    The preservation of the natural setting of the area and the wildlife habitat must be maintained.  The campsite must be left in a state of cleanliness upon leaving the area. Sanitation must be adequately provided for.

D.    Any wildlife or soil conservation projects, tree cutting or removal of vegetation, or other similar activity shall have their prior approval of the Commission before being started. Completion of approved conservation projects shall be reason for awarding preference upon re-application for future camping permits.

E.    Camping shall be further regulated by the following specific rules:

1.    Campsites are available by assignment, and only one trailer or other recreational vehicle may occupy a campsite at one time.  The campsite includes the area within 12 feet of the camper in all directions or 1/2 the distance to the next camper, whichever is smaller, and shall not include any area within 15 feet of the Otter Lake shoreline. This 15 foot area along the shoreline is useable by anyone.

2.    Only manufactured trailer and camper type vehicles in good condition as determined by Manager are permitted in the camp area.

3.    Converted school buses, and homemade camper vehicles or mobile homes are prohibited.  No camper shall be greater than 35 feet in length.

4.    Roofs, decks, and antennas may be constructed to Commission specifications. (See Exhibit A).  Fixtures including, but is not limited to concrete patios, fences, trailer skirting, oil drum stands, clothesline, television towers, and the like are not permitted.  No stairs, steps or sidewalks, etc., shall be excavated, cut into, protruding, or disturbing existing soil.

5.    All trash and refuse shall be placed in plastic bags, and then in covered trash barrels provided by the concessionaire.

6.    No waste water may be dumped into or onto the ground.

7.    Sewage generated within the trailers must be held in the trailer and may be dumped at dump station provided.

8.    No sanitation waste hose or pipe shall extend from the trailer into the ground at any time.

9.    No gravel pit and dry well connections are allowed.

10.    Cleanliness and sanitation shall be the sole responsibility of the camper and any violation of these rules shall authorize Commission and Manager to revoke the camping permit and privileges without refund.

11.    No person shall bring or allow horses, cattle, or livestock in the camping, picnic, or other recreational areas as designated by the Commission.  Cats and dogs with a maximum of a 10 feet leash are permitted.

12.    All visitors to the campground must leave their cars in designated parking areas.  Visitors shall leave camping areas by 11:00 p.m.

13.    The camping season is from March 1 to November 30,  weather permitting, unless changed by the Commission and Lessee.  No camping will be allowed except during the camping season.

14.    The Manager shall designate a boat and trailer storage area for use by campers, and shall charge a storage fee which will be established from time to time by the Lessee and approved by the Commission.  No storage of boats and trailers is permitted other than in this designated area.  Boats and trailers may be brought into the camping area by campers on a temporary basis, but must be attended at all times and parked within the campers assigned campsite.

15.    Electrical hookups are available at campsites, but the terms and conditions of the provision of electrical energy is between the campsite tenant and the electrical provider and is not the responsibility of the Commission.

03/15/01

16.    Fires shall be confined to fireplaces, grills and other facilities designed for and designated by the Commission. Fires shall be attended at all times by a responsible person over 13 years of age.

17.    Propane and other compressed gas tanks are prohibited except those which are part of the standard equipment of a camper, trailer or gas grill. Such tanks shall not exceed thirty pounds maximum size.

18.    Camping fees, winter storage fee and regulations shall be as follows:

A.    $500.00 per camping season, plus $70.00 for winter storage with the first installment of $320.00 due the first day of November and the second installment of $250.00 due the first day of May each year.

1.    If an installment is not paid when due, a 10% late charge will be added. If payment is not received by the 15th, the lot must be vacated.

2.    The lease fee shall not be pro-rated.

3.    All leases must be signed.

B.    There is hereby created an assessment, an additional revenue source to be known as an Assessment for Lake and Lakeshore Improvements (herein called "Assessment") which will be retained by the Commission for capital improvements to the Otter Lake and Lakeshore, payable by November 1 as follows:

1.    For customers $25.00 annually

2.    For non-customers $75.00 annually

C.    Daily camping fees of $12.50 per night per party of up to five persons including electricity and water, and air conditioning hook-up shall be charged. Any additional persons, including guests, shall pay $1.25 per person per night.

13                                          03/15/01

D.    The foregoing camping rates are subject to change by the Commission and Lessee.

E.    All camping fees are non-refundable, regardless of the actual camping time.

19.    The Manager shall have the discretion to determine when the water supply to campers shall be turned on and when the gates to the camping area will be opened each year.

20.    When a trailer is sold, a camping permit may be transferred with approval of Manager, subject to the Seller paying a transfer fee of $300.00 which includes a campsite inspection. Neither the Manager or the Commission is a party to the sale, and thus disclaim any and all liabilities arising from such sale. A waiver of such liability shall be signed by both the Seller and the Buyer at the time of such a transfer. Each campsite will be inspected by the Commission designee to determine compliance of this ordinance. Any items that are out of compliance will be identified on the transfer document, and shall be signed by the new owner of the camper. Furthermore, the new owner will agree to bring the campsite into compliance before January 1, 2008.

## SECTION 14 - BOAT DOCKS

Private boat docks at Otter Lake must be built according to prior written approval and must conform to specifications as established by the Commission, which will be promulgated from time to time and shall include the following conditions: (See Exhibit B)

1.    All boat docks will be issued a number to be displayed on the dock, and identified for periodic inspections;

2.    All boat docks must be maintained on an annual basis according to standards established by the Commission from time to time;

3.    All such boat docks must be used in a safe and proper manner;

4.    Each owner or lessee having a boat dock must pay an initial fee of $150.00 and an annual fee for a boat dock as follows:

| Fees: | Customer | $50.00 annually due May 1 |
|-------|----------|---------------------------|
|       | Non-Customer | $50.00 annually due May 1 |

5.    Landowners and lessees shall maintain their boat docks up to Commission standards. Each dock shall be maintained so that it does not become hazardous or unsightly, and shall be subject to an annual inspection, without prior notice, by the Commission. The annual inspection fee shall be $15.00 and if a re-inspection is required, the fee shall be $15.00. In addition to the annual inspection, the Commission may inspect any dock at any time for no fee, but if the re-inspection is required, the re-inspection fee shall be $15.00. If the dock fails to meet the Commission standards upon any re-inspection, the user shall remove the dock upon 10 days written notice, and upon the failure to do so within 30 days then the Commission may remove the same, and the user shall promptly reimburse the Commission for the cost of removal.

6.    Contract rights of original landowners will be honored with respect to boat docks and other appurtenances to Otter Lake. However, such landowners shall maintain their boat docks as provided herein. Any original owner who has forfeited the right to future boat dock privileges will receive notice of said forfeiture and their rights and privileges will be revoked with respect to said rights and privileges, and where appropriate after notice, said boat dock will be removed.

7.    As a condition of continuing the privilege of allowing a boat dock on Otter Lake to be erected by private landowners (or their lessees), the private landowner (or lessee) shall sign

an agreement in the form prescribed by the Commission stating that the landowner will comply with the following conditions:

        a.      There will be a minimum of 300 feet frontage adjacent to the Commission's property on Otter Lake, only one boat dock permit will be issued to each landowner who meets the requirements herein, or to a lessee of 300 feet of frontage owned by the landowner;

        b.      The landowner will not cut any fence for access to their dock or alter the fence in any way without Commission approval in writing;

        c.      The Commission will supervise and approve the installation of any dock prior to issuing a permit to the user to use the dock;

        d.      The landowner will maintain liability insurance in the amount of one million dollars per occurrence for the boat dock structure, the Commission and Manager added as an additional insurer, and will provide proof of insurance to the Commission at least annually;

        e.      The landowner will police the area around the dock and also advise the Commission of any illegal activity in the area of the dock;

        f.      No one other than the landowner will use the boat dock, unless the landowner is present;

        g.      The landowner will not do anything to pollute the lake, such as illegal septic drainage into the lake, and shall to the best of his ability control pollution of Otter Lake.

## SECTION 15 - DUCK AND GOOSE HUNTING

Duck and goose hunting may be permitted on Otter Lake at the discretion of the Commission to be determined on an annual basis. Duck and goose hunting is subject to the following regulations, which may be amended at any time by the Commission.

          03/15/01

1.    All hunting will be NORTH of Stamper Hill Buoys.

2.    All boats must have current Otter Lake sticker.

3.    There will be no more than three (3) hunters to a blind.

4.    Blinds can be boat blinds or temporary blinds on shore. All blinds must be within 25 yards of # stake and no further than 6 feet out in the water.

5.    Blinds must have at least twelve (12) decoys. Decoys cannot be left on lake after hunting hours.

6.    A fee of $125.00 will be assessed for each blind. $25.00 will be refunded if blind sites are cleaned--subject to inspection. Fees will be due on day of drawing for blind sites.

7.    Hunting hours will be from legal time set by federal regulations and 12:00 noon.

8.    Drawing for blind sites will be two weeks before start of duck season.

9.    Only duck and geese may be taken at designated areas on Otter Lake Grounds.

10.    NO OPEN FIRES will be permitted. Charcoal or fuel heaters may be used.

11.    Hunters are to report kill at Water Plant or other location to be determined.

12.    All state, local and national hunting and firearm rules and regulations shall be complied with.

13.    All guns and firearms are to be encased going to or from hunting areas.

14.    No alcoholic beverages allowed.

**SECTION 16 - PUBLIC NUISANCE**

Any operator of a motor vehicle, boat, vessel, or any aircraft, operating such vehicle in such manner so as to create a public nuisance, disturb peace, destroy public or private property, or otherwise annoy the general public, shall be in violation of this Ordinance and shall be subject

to immediate removal from Commission property by authorized agents of the Commission or other law enforcement agents, and prosecution under state law or county ordinance.

### SECTION 17 - PENALTIES

A.    Any person violating any one or more of the provisions of this Ordinance, any person receiving a citation or compliant issued by an authorized Commission agent or police officer may be immediately removed from the Otter Lake Area as defined herein. Any person who refuses an order of Commission, Manager or law enforcement agency to leave the Otter Lake Area shall be deemed a trespasser on Commission property and may be prosecuted for trespassing.

B.    Any Lessee of a campsite violating any provision of this Ordinance shall be deemed to be in breach of his lease, subjecting him to termination of the Lease at the discretion of the Commission or Lessee and eviction from the campsite without refund of any prepaid rent.

### SECTION 18 - ENFORCEMENT OF ORDINANCE

A.    It is unlawful of any person to resist or obstruct any officer, deputized police officer, employee or Commissioner of the Otter Lake Water Commission, ADGPTV or the Illinois Department of Natural Resources in the discharge of his duties under the provisions of this Ordinance or the laws of the State of Illinois.

B.    It shall be the duty of all employees of the Department of Natural Resources having proper jurisdiction and all sheriffs, deputy sheriffs, and other deputized police officers, to arrest any person detected in violation of any of the provisions of this Ordinance and also to make a prompt investigation of any reported violations by any other person and to cause a complaint to be filed in the Circuit Court if the grounds for a compliant are justified and evidence to support the complaint is procurable.

C.    All agents of the Illinois Department of Natural Resources and other duly authorized police officers or deputized officers, employees, or Commissioners may inspect any boat or area of the Lake at any time for the purpose of determining if the provisions of this Ordinance and the laws of the State of Illinois are being complied with.

D.    The lake patrol officer may suspend the operation of any boat he reasonably believes to be in violation of boat safety requirements, horsepower limitations, or any state or local law until violation is investigated and/or corrected to the satisfaction of the lake patrol officer.

## SECTION 19 - NONCONFORMING STRUCTURES IN CAMPSITE

A.    Any structure which exists in the campsite lawfully at the time of the adoption of this Ordinance and does not conform to the requirements of this Ordinance, and any such structure which shall become nonconforming upon the adoption hereof or of any subsequent amendment hereto, may continue in existing only in accordance with the regulations in this Section.

B.    Non conforming television antennas, propane tanks and connections to gravel pits and dry wells shall without exception be eliminated on or before June 1, 1998, and are not subject to the protections of this Section.

C.    Any existing structure in the campsite which does not conform with the regulations of this Ordinance shall be subjected to the following provisions:

1.    A nonconforming structure shall not be enlarged, nor shall it be extended to occupy an area greater then the area occupied by it on the effective date hereof.

2.    A nonconforming structure shall not be moved, in whole or in part, to any other location within the campsite.

03/15/01

3.    Should an existing structure deteriorate be damaged or destroyed by fire or other casualty or act of God, it shall not be restored or replaced except to Commission specification.    Routine maintenance and repair of fair wear and tear is not prohibited by this section.

4.    Any existing structure that the Commission determines to be deteriorated or dilapidated shall be the responsibility of the owner to be upgraded within 30 days following notification to eliminate said unsightly conditions; failure to comply will result in mandatory total removal.

D.    All nonconforming structures shall be removed in any event on or before January 1, 2008.

## SECTION 20 - BUILDING PERMITS FOR CAMPSITES

Any construction done at any campsite shall be permitted by the Commission designee. All construction shall be done in accordance to this ordinance.  At the time of issuing a building permit a campsite inspection will be performed to insure compliance with current building specifications.  Any deficiencies will be noted for the campers information.  Furthermore, the camper shall agree in writing that deficiencies will be corrected prior to January 1, 2008.

## SECTION 21 - REPEALER

Ordinances No. 82-1, 93-1, 94-4, 95-3, 97-04, 98-04 and other recreational ordinances prior to the date hereof are hereby repealed.

## SECTION 22 - SEVERABILITY CLAUSE

If any portion of this Ordinance shall be determined to be invalid, said determination shall not effect the validity of any remaining portions of said Ordinance.

03/15/01

## SECTION 23 - LEGAL EFFECT

This Ordinance shall take effect and be in force after its passage, approval and publication, as provided by law.

PASSED this ___8th___ day of ___March___, 2001.

_____
Commission Chairman

ATTEST:

_____
Commission Clerk

AYES: ___6___
NAYS: ___0___

PASSED: _____
APPROVED : _____

ABSENT: ___3___

## ORDINANCE CERTIFICATE

STATE OF ILLINOIS          )
                           )    SS.
COUNTY OF MACOUPIN  )

I, the undersigned, do hereby certify that I am the duly qualified and acting Clerk of the Otter Lake Water Commission, ADGPTV, Macoupin County, Illinois.

I  do further certify that the ordinance attached hereto is a full, true, and exact copy of

Ordinance No. _2001-C.L._, adopted by the corporate authorities of said Commission on the

_8th_ day of _March(1)_, 2001, said Ordinance being entitled:

## AN ORDINANCE PERTAINING TO RECREATIONAL USES IN OTTER LAKE,
## MACOUPIN COUNTY ILLINOIS

I do further certify that prior to the making of this certificate, the said Ordinance was

spread at length upon the permanent records of said Commission, where it now appears and

remains.

IN WITNESS WHEREOF, I have hereunto set my and affixed the official seal of said

Commission this _9th_ day of _March(1)_, 2001.

_Micheli Parrett_

Commission Clerk

STATE OF ILLINOIS      )
                     )    SS.
COUNTY OF MACOUPIN   )

### CERTIFICATE

I certify that I am the duly elected and acting Clerk of the Otter Lake Water Commission, Macoupin County, Illinois.

I further certify that on ___March 8th___, 2001, the corporate authorities of such Commission passed and approved Ordinance No. _2001·01_ entitled:

### AN ORDINANCE PERTAINING TO RECREATIONAL USES IN OTTER LAKE, MACOUPIN COUNTY, ILLINOIS

which provided by its terms that it should be published in pamphlet form.

The pamphlet form of Ordinance No. _2001·01_ including the Ordinance and a cover sheet thereof, was prepared, and a copy of such Ordinance was posted in the Commission's Business Office, commencing on ___March 8th___, 2001, to continue for at least ten days thereafter. Copies of such Ordinance were also available for public inspection upon request in the office of the Clerk.

DATED at Girard, Illinois, this _8th_ day of ___March___, 2001.

(SEAL)

_Mike T. Smith_
                **Commission Clerk**

Exhibit A

No construction will be allowed to any campsite that does not currently meet Commission standards. This includes, but is not limited to campers, roofs, decks, stairs and screened in decks. All construction permits and inspections will be performed by the Commission's designee. All construction and maintenance must be done with new materials.

Camper Roof:
  1. Length
        A.    Maximum 35' not to exceed length of camper. Length not to include hitch.
  2. Poles
        A.    4' deep, minimum 4"x4" backfilled with two (2) 60 lb. bags of concrete mix.
        B.    Maximum 8' oc        2 rows pole for roof over camper
                                           3 rows pole for roof over camper & deck
  3. Rafters
        A.    2 x 6 minimum
        B.    Low side minimum 12" above camper on the sides. Maximum 18"
        C.    Roof Pitch
                            2"/12"
  4.    Steel Roofing
        A.    1 piece roof steel maximum 12'
        B.    29 ga. factory painted steel
        C.    Factory colored trim to match
  5.    Sides, Ends & Gables
        A.    30" maximum on low sides
        B.    Bottom of enclosure to be level around all sides
        C.    Trailer hitch end to be easily removable

Deck Roof
  1. Length
        A.    Maximum 35' not to exceed length of camper. Length includes any steps.
  2. Poles
        A.    Minimum 4"x4" backfilled with 4' deep 2-60 lb. bags of concrete mix.
        B.    Maximum 8' oc  2 rows poles for camper
                                     3 rows for camper & decks
  3. Rafters
        A.    2"x6" minimum

    B.    2"/12" pitch

  4.    **Steel Roofing**
      A.    1 piece roof steel 10' maximum
      B.    29 ga. factory painted steel
      C.    Factory colored trim to match

## Deck
  1. Made to fit under deck roof
      A.    Joist 2" x 6"  16" oc minimum.
      B.    Joist 2" x 8"  24" oc minimum.
      C.    Floor 5/4" x 6" minimum.
      D.    Lattice exceptable around bottom of deck, under safety rail, also exceptable as skirting around deck.
      E.    Support post to be minimum 4" x 4".  No special backfill material required.
      F.    Safety rail around deck.

## Screening of Decks
  1.  Screening of "deck area" is defined as, Surrounding of deck parameter using charcoal finish fiberglass screen cloth from deck roof to deck floor.  Screening of trailer and the area below the deck floor to the ground, is not permitted.  Screening of the underside of the deck is allowed, on top or on the underside of floor joist, which must be secured in a manner to prevent sagging.  No screens shall be installed on top of deck floor.

  2.  Attach screen material to deck structure using either manufactured plastic screen channel and bead stripping, or nail/staple and cover with treated wood or cedar screen bead.  48" maximum width of screen supports.

  3.  Only pre-manufactured screen doors, which may have a maximum of 48" solid panel measured from floor up, are permitted.

  4.  Sealing the space between the deck and the camper will be accomplished using either treated material (CCA treated) or soffit material, factory color trim to match, attached to deck structure only.
      A.  Attachment of screen material to camper using nails, staples, screws, bonding and/or gluing is not permitted.

  5.  Screened areas must be maintained at all times.  Rusty, torn and/or sagging screen material will not be tolerated, and shall be repaired at the park Managers discretion.

  6. No solid enclosure is permitted.
      A. Enclosing any portion of the deck with any other materials is strictly prohibited.  This includes walls, partitions and plastic/vinyl materials.

**Roof & Deck**

1. All lumber to be of material treated (CCA treated).  No untreated lumber permitted.

2. All steel for roofing & trim to be 29 ga. factory painted.

**Special Notes**

1. Outside walls may be covered from top down maximum 30".

2. Center wall between roof & deck may also be covered.
   A.    Material for above must be 29 ga. factory painted steel & trim.

3. End to be left open on deck & roof.

4. Skirting of any type not allowed around camper.

5. Specifications for TV antenna:
   Minimum 1" galvanized pipe, maximum 2".
   Maximum 20' tall with no guide wire.  Attached only to camper or post of deck, or pole of roof over camper.

NOTE: 12' Sheet of Steel (Max.)

30" Max.

12 | 2

11'-7" (Max.)

NOTE: 10' Sheet of Steel (Max.)

12 | 2

9'-8¼" (Max.)

Grade

**Exhibit B**

## DOCK SPECIFICATIONS



Side rails & center stringer 2" by 10" treated lumber.

Decks to be made of 5/4" boards treated lumber.

Posts to be 2" galvanized pipe, driven to solid ground.

Post to be bolted to side rails with 1/2" carriage bolts. Post may extend above boat dock for hand rails.